**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE JDS UNIPHASE CORPORATION          No. C 02-1486 CW
SECURITIES LITIGATION
                                        ORDER GRANTING
                                        OKLAHOMA FUND
                                        LEAVE TO
                                        INTERVENE AS
                                        NAMED PLAINTIFF

_____/

        Proposed Intervenor Oklahoma Firefighters Pension and

Retirement System (Oklahoma Fund) moves for leave to intervene as

an additional named plaintiff in this securities action.  Lead

Plaintiff Connecticut Retirement Plans and Trust Funds has filed a

memorandum in support of the motion.  Defendants JDS Uniphase

Corporation (JDS), Jozef Straus, Anthony R. Muller and Charles Abbe

(JDS Defendants) oppose the motion to intervene.  Defendant Kevin

Kalkhoven joins JDS Defendants' opposition.  Pursuant to the

Court's July 15, 2005 order and JDS Defendants' request, the matter

was taken under submission on the papers.  Having considered all of

the papers filed by the parties, the Court GRANTS Oklahoma Fund

1  leave to intervene.

2  BACKGROUND

3  According to the second amended consolidated complaint (SACC),

4  JDS manufactures and supplies components of fiber-optic networks to

5  telecommunications and cable television system providers.  Messrs.

6  Straus, Muller, Abbe and Kalkhoven are current and former executive

7  officers and directors of JDS.

8  Lead Plaintiff purports to represent a class of persons and

9  entities who purchased or otherwise acquired securities of JDS

10 between October 28, 1999 and July 26, 2001.  Lead Plaintiff itself

11 purchased and sold JDS securities during that period, as did other

12 Plaintiffs named in the SACC.  See SACC, Ex. B, Listing of Other

13 Plaintiffs and Their Counsel.

14 Lead Plaintiff alleges that, during the class period,

15 Defendants engaged in a scheme to inflate artificially the price of

16 JDS stock by fraudulently recognizing revenue, falsely representing

17 that demand for JDS products was strong, and overstating the value

18 of its inventory by failing to write off excess inventory.  Lead

19 Plaintiff further alleges that Defendants benefitted from this

20 scheme by selling stock at inflated prices and by using the value

21 of JDS stock to purchase other companies for less than their worth.

22 On November 4, 1999, JDS acquired Optical Coating Laboratory,

23 Inc. (OCLI).  Lead Plaintiff alleges that prior to acquiring OCLI,

24 JDS engaged in fraudulent revenue recognition practices that

25 artificially inflated its sales statistics and, thus, its stock

26 price.  Defendants made the OCLI acquisition by exchanging shares

27 of stock with the acquired companies, and it was thus in

28

2

United States District Court

For the Northern District of California

Defendants' best interest to keep the JDS stock price artificially high in order to secure a more favorable exchange rate.  JDS's stock price increased significantly just before the OCLI acquisition.  Additionally, Lead Plaintiff alleges that the proxy-prospectus that JDS filed with the Securities and Exchange Commission (SEC) in connection with the OCLI acquisition was fraudulent in that it identified strong demand based in part on JDS's faulty accounting practices.

Oklahoma Fund is a former OCLI shareholder.  On February 4, 2000, in connection with JDS' acquisition of OCLI, Oklahoma Fund exchanged 2,400 shares of OCLI for 4,454 share of JDS.  Jones Decl. ¶ 4.  Oklahoma Fund adopts the allegations of the SACC, including Lead Plaintiff's claims on behalf of former OCLI shareholders.  Id. ¶ 7.

On March 27, 2002, Lead Plaintiff filed the complaint that initiated this lawsuit, one of twenty-seven related securities fraud class actions then pending before this Court.  On July 26, 2002, the Court held a hearing to determine which of six applicants should be appointed lead plaintiff.  At the hearing, now-Lead Plaintiff Connecticut Retirement Plans acknowledged that it had not purchased or exchanged all of the securities encompassed by its complaint, and stated its intention to designate other plaintiffs to represent different subgroups.  Fernandez Decl., Ex. A, July 26, 2002 Hearing Tr. at 19.

On October 11, 2002, Lead Plaintiff filed the first amended consolidated complaint (FACC), which alleged causes of action under the Securities Act of 1933 (Securities Act) and the Securities

3

Exchange Act of 1934 (Exchange Act).  Defendants moved to dismiss the FACC and, on November 3, 2003, the Court issued an order denying Defendants' motion to dismiss the Securities Act claims and granting the motion to dismiss the Exchange Act claims.  The Court granted Lead Plaintiff leave to amend these claims.

On January 9, 2004, Lead Plaintiff filed the SACC.  The SACC alleges that JDS, Straus, Muller and Kalkhoven violated section 11 of the Securities Act; JDS violated section 12(a)(2) of the Securities Act; Straus, Kalkhoven and Muller violated section 15 of the Securities Act; JDS, Kalkhoven, Muller, Abbe and Straus violated section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; Kalkhoven, Muller and Straus violated section 14 of the Exchange Act and Rule 14a-9 promulgated thereunder; Kalkhoven, Muller, Straus and Abbe violated section 20(a) of the Exchange Act; and Kalkhoven, Muller, Straus and Abbe violated section 20A of the Exchange Act.

On March 9, 2004, Defendants moved to dismiss the SACC.  On January 6, 2005, the Court granted the motion to dismiss one of the Securities Act claims against Kalkhoven, and denied the motion to dismiss the remaining claims.  Lead Plaintiff's motion for class certification has been noticed for November 18, 2005.

LEGAL STANDARD

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), "an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without" the applicant.  Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489,

4

United States District Court

For the Northern District of California

1493 (9th Cir. 1995).[1]  The Ninth Circuit applies a four-part test
to motions under Rule 24(a).  An applicant seeking intervention as
of right must show that:

> (1) it has a significant protectable interest relating to the
> property or transaction that is the subject of the action;
> (2) the disposition of the action may, as a practical matter,
> impair or impede the applicant's ability to protect its
> interest; (3) the application is timely; and (4) the existing
> parties may not adequately represent the applicant's interest.

Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998) (citing

Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1061 (9th

Cir. 1997), cert. denied, 524 U.S. 926 (1998)).

The Ninth Circuit interprets Rule 24(a) broadly in favor of

intervention.  Id.  In evaluating a motion to intervene under Rule

24(a), a district court is required "to take all well-pleaded,

nonconclusory allegations in the motion . . . as true absent sham,

frivolity or other objections."  Southwest Ctr. for Biological

Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

The most important consideration in evaluating the timeliness

of a motion to intervene is whether any delay in moving for

intervention may prejudice existing parties; as long as prejudice

is not likely to result from the timing of the motion, courts

interpret the timeliness requirement liberally.  See, e.g.,

Cummings v. United States, 704 F.2d 437, 439 (9th Cir. 1983)

(motion to intervene timely even though made after interrogatories

---

[1]Lead Plaintiff characterizes Oklahoma Fund as an "unnamed
class member," and suggests that intervention is proper under
Federal Rule of Civil Procedure 23(d), which permits unnamed class
members "to intervene and present claims or defenses, or otherwise
come into the action."  The characterization of Oklahoma Fund as an
"unnamed class member" is premature, as a class has not yet been
certified.

5

1  and two weeks before date set for close of discovery).  The Court

2  considers three factors in evaluating whether a motion to intervene

3  is timely:  "(1) the stage of the proceeding at which an applicant

4  seeks to intervene; (2) the prejudice to other parties; and (3) the

5  reason for and length of the delay." California Dep't of Toxic

6  Substances Control v. Commercial Realty Projects, Inc., 309 F.3d

7  1113, 1119 (9th Cir. 2002) (quoting United States v. State of

8  Washington, 86 F.3d 1499, 1503 (9th Cir. 1996)).

9      A court may also at its discretion permit intervention "when

10  an applicant's claim or defense and the main action have a question

11  of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  In

12  exercising its discretion, a court is to "consider whether the

13  intervention will unduly delay or prejudice the adjudication of the

14  rights of the original parties." Id.

15                          DISCUSSION

16  I.  Standing

17      Defendants argue that the motion should be denied because

18  intervention cannot be used to cure an existing plaintiff's lack of

19  standing.  See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d

20  1018, 1022 (9th Cir. 2003) (vacating class certification where sole

21  named plaintiff could not state a claim and therefore lacked

22  standing to sue).  As Lead Plaintiff notes, Defendants' standing

23  argument is inapposite.  Defendants do not claim that Lead

24  Plaintiff's standing suffers the same constitutional defect as did

25  the class representative in Lierboe, who never had a case or

26  controversy sufficient to bring suit in federal court.  See

27  generally Baker v. Carr, 369 U.S. 186, 204 (1962) (explaining that

28

United States District Court

For the Northern District of California

6

the gist of standing is whether plaintiffs have a personal stake in the outcome sufficient "to assure that concrete adverseness which sharpens the presentation of issues").

Instead, Defendants argue only that the named Plaintiffs lack standing to bring claims on behalf of the OCLI Subclass, because no named Plaintiff exchanged OCLI stock for JDS stock.  In the absence of a successful motion to dismiss the case for lack of standing, the authority cited by Defendants is inapposite.  Cf., e.g., Krim v. pcOrder.com, 402 F.3d 489, 495 (5th Cir. 2005) (affirming district court's dismissal of plaintiffs' claims for lack of standing under Section 11 and subsequent denial of a motion to intervene); Lidie v. State of California, 478 F.2d 552 (9th Cir. 1973) ("where the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted").  Defendants' attack on the standing of the current named Plaintiffs to bring claims on behalf of the OCLI Subclass actually bolsters the motion to intervene, because it illustrates why Oklahoma Fund seeks, in an abundance of caution, to intervene to protect its interests.

II.  Intervention as of Right

Defendants do not dispute that Oklahoma Fund has a significant, protectable interest relating to the property or transaction that is the subject of this action.  Defendants do contest the other three prongs of the test for intervention as of right under Rule 24(a).  Defendants' arguments are taken in turn.

7

United States District Court
For the Northern District of California

1    A.   Timeliness

2    Defendants argue that the motion to intervene is untimely,

3    based on both the length of time between the original complaint and

4    the instant motion and the running of the statute of limitations on

5    the claims of the OCLI Subclass.

6    As Defendants note, more than three years have passed since

7    the filing of the original complaint, and Lead Plaintiff and

8    Oklahoma Fund provide no justification for their delay.  However,

9    these facts alone are not dispositive, because the other relevant

10   factors weigh in favor of allowing intervention.  Despite several

11   years of litigation, the proceedings are still at a relatively

12   early stage: the class has not yet been certified; discovery is

13   still underway; and the deadline for dispositive motions is not yet

14   imminent.  Oklahoma Fund is willing to rest upon the allegations of

15   the SACC.  Defendants identify no actual prejudice likely to result

16   from the timing of the motion, apart from their allegations that

17   the OCLI claims are time-barred.  Defendants have been on notice

18   since the July 26, 2002 hearing that Lead Plaintiff intended to

19   designate other entities to represent different subgroups.  On

20   balance, the factors weigh in favor of granting the motion to

21   intervene.  See In re Initial Public Offering Sec. Litig., 214

22   F.R.D. 117, 122 (S.D.N.Y. 2002) (allowing additional named

23   plaintiffs to intervene for purposes of curing alleged pleading

24   deficiencies where material allegations of complaint not affected

25   and defendants had notice of plaintiffs' intentions "well in

26   advance of the filing of their motions to dismiss"); cf. Smith v.

27   Marsh, 194 F.3d 1045 (9th Cir. 1999) (affirming denial of motion to

28                                     8

**United States District Court**
For the Northern District of California

intervene where district court found that motion occurred at a late stage in the proceedings, had been unduly delayed and if granted would cause prejudice to existing parties).

Defendants argue further that the motion to intervene is untimely because the statute of limitations on the OCLI claims has passed.  However, the motion to intervene does not seek to add new claims to the SACC.  Both the FACC and SACC already set forth the claims which Defendants now argue are time-barred, well within the limitations period alleged by Defendants to have ended on February 4, 2003.  None of the case law cited by Defendants suggests that intervenors cannot be allowed to bolster claims brought within the statute of limitations and not already subject to dismissal.  See In re Elscint, Ltd., Sec. Litig., 674 F. Supp. 374, 378 (D. Mass. 1987) (denying motion to intervene filed after court issued tentative conclusion regarding dismissal of claims); Fleming v. Bank of Boston Corp., 127 F.R.D. 30, (D. Mass. 1989) (holding motions to intervene untimely when filed after court found original plaintiff lacked standing to bring claims).  The Court therefore need not reach the question of whether the statute of limitations was tolled, pursuant to Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553-54 (1974), by the filing of the class action.

Defendants argue that they would be prejudiced by Oklahoma Fund's intervention and that allowing intervention would set a "dangerous precedent."  Defendants' claim of prejudice rests on the the assumption that intervention would allow Plaintiffs to circumvent the statute of limitations.  See Defs.' Opp. at 16 ("Defendants will be prejudiced if the Court allows the Oklahoma

Fund to intervene and revive the time-barred OCLI Claims.")
However, Defendants' complaint is significantly undercut by their
own failure to address the potential standing issue in either of
their previous motions to dismiss.

For these reasons, the Court finds that the motion to
intervene is timely.

B.   Impairment of Oklahoma Fund's Interests and Adequacy of
     Representation

Defendants argue that the disposition of the action will not
impair or impede Oklahoma Fund's ability to protect its interests,
and that the existing named Plaintiffs will adequately represent
Oklahoma Fund.

Here, Defendants note that Oklahoma Fund and Lead Plaintiff do
not concede that Lead Plaintiff lacks standing to represent the
OCLI Subclass, and argue that failure to concede this fact is fatal
to a motion for mandatory intervention.  Defendants also argue that
Oklahoma Fund's interests are already being pursued in State court
in Pang v. Dwight, Case No. 231989 (Sonoma County Sup. Ct., filed
Feb. 3, 2003).

The standard for intervention as of right is only whether
disposition of an action "may, as a practical matter, impair or
impede the applicant's ability to protect its interest" and whether
"existing parties may not adequately represent the applicant's
interest." Donnelly, 159 F.3d at 409 (emphasis added).  The Ninth
Circuit's language does not suggest that proposed intervenors must
concede that their interests will certainly be harmed.  Moreover,
Defendants provide no authority for the proposition that proposed

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

intervenors must concede that intervention is essential, or that the availability of State remedies obviates the need for intervention.  The fact that the parties dispute the validity of the OCLI Subclass' claims is sufficient to show both that disposition of the action may impair or impede Oklahoma Fund's interest, and that the current named Plaintiffs may not adequately represent that interest.

For the foregoing reasons, the Court finds that Oklahoma Fund may intervene as of right, pursuant to Rule 24(a).  It does not reach the issue of permissive intervention.

III.   Futility

Defendants maintains that Oklahoma Fund's intervention is futile because it is subject to a unique defense and therefore it cannot be an adequate representative of the OCLI Subclass.  Lead Plaintiff and Oklahoma Fund argue that futility is irrelevant to the motion to intervene.  The Court agrees.  Oklahoma Fund's adequacy as a representative of the OCLI Subclass is more properly tested in the context of the motion for class certification.

CONCLUSION

For the foregoing reasons, the Court GRANTS Lead Plaintiff's motion (Docket No. 289) and allows Oklahoma Fund to intervene as a named Plaintiff in this action.

IT IS SO ORDERED.

Dated: 10/12/05

_____
CLAUDIA WILKEN
United States District Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28