United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JDS UNIPHASE CORPORATION SECURITIES LITIGATION | No. C 02-1486 CW<br><br>ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

_____/

Lead Plaintiff Connecticut Retirement Plans and Trust Funds moves pursuant to Federal Rule of Civil Procedure 23 for certification of a plaintiff class as well as three subclasses. Defendants JDS Uniphase Corporation (JDS), Jozef Straus, Anthony R. Muller and Charles Abbe (JDS Defendants) oppose the motion. Defendant Kevin Kalkhoven joins JDS Defendants' opposition. The matter was heard on November 18, 2005. Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants the motion for class certification.

BACKGROUND

Lead Plaintiff alleges that Defendants engaged in a scheme to

1  inflate artificially the price of JDS stock by fraudulently
2  recognizing revenue, falsely representing that demand for JDS
3  products was strong, and overstating the value of its inventory by
4  failing to write off excess inventory.  Lead Plaintiff further
5  alleges that Defendants benefitted from this scheme by selling
6  stock at inflated prices and by using the value of JDS stock to
7  purchase other companies for less than their worth.
8       Lead Plaintiff now seeks certification to represent a class
9  defined as "persons and entities, other than Defendants and their
10 affiliates, who purchased or otherwise acquired the publicly traded
11 securities of [JDS] between October 28, 1999 and July 26, 2001,
12 inclusive ('the class period')."  Excluded from the proposed class
13 are Defendants, members of the families of each of the individual
14 Defendants, any parent, subsidiary, affiliate partner, officer,
15 executive or director of any Defendant, any entity in which any
16 such excluded person has a controlling interest, and the legal
17 representatives, heirs, successors and assigns of any such excluded
18 person or entity.
19      Plaintiff-Intervenor Oklahoma Firefighters Pension and
20 Retirement System (Oklahoma), Plaintiff Dennis McCool and Plaintiff
21 Houston Municipal Exployees Pension System (Houston) seek to
22 represent the subclasses of persons and entities who exchanged the
23 common stock of Optical Coating Laboratory, Inc. (OCLI), E-TEK
24 Dynamics, Inc. (E-TEK) and SDL, Inc. (SDL), respectively, for JDS
25 common stock, in connection with JDS's acquisition of those
26 companies.  Lead Plaintiff's counsel Labaton Sucharow & Rudoff, LLP
27 (Labaton Sucharow) seeks appointment as class counsel; Berman

2

1  DeValerio Pease Tabacco Burt & Pucillo represents Oklahoma and
2  seeks appointment as counsel for the OCLI subclass; Glancy Binkow &
3  Goldberg, LLP seeks appointment as counsel for the E-TEK subclass;
4  and Cohen, Milstein, Hausfeld & Toll, PLLC, seeks appointment as
5  counsel for the SDL subclass.
6     Defendants oppose the motion for class certification on the
7  grounds that (1) Oklahoma and McCool are inadequate subclass
8  representatives because they are subject to unique defenses;
9  (2) the proposed class and subclasses are too broad because they
10 include investors who have no claims; and (3) Lead Plaintiff is an
11 inadequate class representative.

## DISCUSSION

13    A plaintiff seeking to represent a class must satisfy the
14 threshold requirements of Federal Rule of Civil Procedure 23(a) as
15 well as the requirements for certification under one of the
16 subsections of Federal Rule of Civil Procedure 23(b).

I.  Rule 23(a)

18    Rule 23(a) permits district courts to certify class action
19 lawsuits if: (1) the class is so numerous that joinder of all class
20 members is impracticable ; (2) there are questions of law or fact
21 common to the class; (3) the claims or defenses of the
22 representative parties are typical of the claims or defenses of the
23 class; and (4) the representative parties will fairly and
24 adequately protect the interests of the class.  Fed. R. Civ. P.
25 23(a).

3

A.  Class Definition

Defendants claim that the class as defined is too broad in that it includes investors who have no claims because they sold their JDS stock prior to the first alleged revelations of misconduct.  Plaintiffs argue that class certification is not the appropriate time to exclude certain potential class members' damages claims, and that exclusion is inappropriate because all class members have alternative § 10(b) claims which may be proved.

"[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." DeBremaeker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) (citing Weisman v. MCA Inc., 45 F.R.D. 258 (D. Del. 1968)).  However, Rule 23 does not give "a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  The question is not "whether plaintiffs have stated a cause of action, but rather whether the requirements of Rule 23 have been met." Id. at 178.

Where a clearly ascertainable segment of a proposed class cannot recover for the alleged wrong, courts have redefined the class to exclude that segment.  See, e.g., In re Bank One Sec. Litig., 2002 WL 989454, *8 (N.D. Ill. May 14, 2002) (excluding from certified class with claims under Sections 11 and 12 those investors who profited on their stock purchase by selling prior to a specified date).  Other courts have postponed similar determinations until a later stage and declined to exclude particular segments.  See Wade v. Indus. Funding Corp., 1993 WL

4

594019, *10 (N.D. Cal. 1993) (declining to limit class to those who sold securities after the alleged fraudulent disclosure was subsequently cured); Tucker v. Arthur Andersen Co., 67 F.R.D. 482 (S.D. N.Y. 1975) (noting that defendants' request to exclude class members who sold securities prior to alleged public awareness of defect "has merit," but deciding class certification not appropriate time to exclude class members or define calculation of damages); In re Boesky Litig., 120 F.R.D. 626, 628 (S.D. N.Y. 1988) (declining to decide issue of loss causation for "in-and-out traders" on motion for class certification). Excluding certain class members would require the Court to determine a cut-off date prior to which class members who sold JDS stock could not recover damages. The Court declines to exclude such class members at this time, on the grounds that doing so would involve factual determinations related to damages that are not appropriately dealt with in the context of this class certification.[1]

---

[1] The Court notes that, to the extent that Lead Plaintiff relies on the Court's July 21, 2005 order for the proposition that any investors who profited by selling prior to a corrective disclose can recover damages in a § 10(b) action, Lead Plaintiff misconstrues that order. The Court found that Lead Plaintiff adequately alleged economic harm when it claimed that Defendants artificially boosted the price of JDS stock, which then fell due to subsequent disclosures regarding Defendants' misrepresentations and JDS' true financial state. See In re Daou Sys., Inc., 411 F.3d 1006, 1027 (9th Cir. 2005) (holding in the context of a motion to dismiss that plaintiffs' economic loss adequately alleged due to decline in stock value resulting from defendant's misrepresentations) (citing Dura Pharms., Inc., v. Broudo, 125 S. Ct. 1627, 1631-32 (2005)). To the extent that class members purchased JDS stock at an allegedly inflated price and then sold it for a profit before any public awareness of fraud or misrepresentation, they will not demonstrate economic loss as described In re Daou Sys.

B. Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). During the class period, JDS had more then 1.3 billion shares of common stock outstanding and traded on the NASDAQ stock market. Defendants do not deny the numerosity of either the class or any subclass. This requirement is satisfied.

C. Commonality

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" Id. (quoting Fed. R. Civ. P. 23(a)(2)). "All questions of fact and law need not be common to satisfy this rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Here, the claims of all class members "stem from the same source," id. at 1019-20, namely, Defendants' alleged scheme to inflate artificially the price of JDS stock; Defendants do not deny that both the class and subclasses share sufficient commonality. The Court finds that the allegations against Defendants are sufficient to satisfy the commonality requirement of Rule 23(a)(2).

C. Typicality

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" Id. at 1020 (quoting Fed. R. Civ. P. 23(a)(3)). The test for typicality is "whether

1  other members have the same or similar injury, whether the action
2  is based on conduct which is not unique to the named plaintiffs,
3  and whether other class members have been injured by the same
4  course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508
5  (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282
6  (C.D. Cal. 1985)).  "[R]epresentative claims are 'typical' if they
7  are reasonably co-extensive with those of absent class members;
8  they need not be substantially identical."  Hanlon, 150 F.3d at
9  1020.  However, "a named plaintiff's motion for class certification
10 should not be granted if 'there is a danger that absent class
11 members will suffer if their representative is preoccupied with
12 defenses unique to it.'"  Hanon, 976 F.2d at 508 (quoting Gary
13 Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2nd
14 Cir. 1990)).

15     Defendants do not dispute that Lead Plaintiff is sufficiently
16 typical of the proposed class, and that Houston is sufficiently
17 typical of the proposed SDL subclass.  In the cases of Lead
18 Plaintiff and Houston, the typicality requirement is satisfied
19 because they and the other members of the proposed class and
20 subclass "all have claims arising from the [same] fraudulent
21 scheme."  In re: Prudential Ins. Co. of Am. Sales Practices Litig.,
22 148 F.3d 283, 311 (3rd Cir. 1998) (noting that "cases challenging
23 the same unlawful conduct which affects both the named plaintiffs
24 and the putative class usually satisfy the typicality requirement
25 irrespective of the varying fact patterns underlying the individual
26 claims").

27     The claims of Oklahoma and Mr. McCool also arise out of the

7

same fraudulent scheme and challenge the same unlawful conduct. Defendants argue that they are subject to unique defenses and therefore are not sufficiently typical to represent the OCLI and E-TEK subclasses. Oklahoma and Mr. McCool may be subject to defenses regarding some of their Section 11 and 12 claims. However, as Lead Plaintiff notes, many class members will have sold securities prior to some or all disclosures of JDS' unlawful conduct; neither Oklahoma nor Mr. McCool is necessarily atypical. Defendant has not shown that these defenses will so preoccupy Oklahoma and Mr. McCool that the interests of absent class members will suffer. If conflicts do arise within the class or subclasses relating to damages, the Court may subdivide the class or appoint additional class representatives, as appropriate. The Court also notes that the parties have not shown that subclasses are necessary at this stage.

D. Adequacy

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" Hanlon, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. Here, there is no evidence that proposed class representatives or their counsel have any conflicts of interest with other class members.

Defendants maintain that Lead Plaintiff is an inadequate

8

representative of the class because it lacks legal authority under the Private Securities Litigation Reform Act (PSLRA) and because it has ceded control of the case to its counsel.[2]  These arguments are addressed in turn.

Defendants note that the purpose of the PSLRA was to address the perceived problem of "lawyer-driven" securities lawsuits, and claim that Lead Plaintiff, a retirement fund for Connecticut State employees, is therefore an inadequate class representative because it is subject, by statute, to the supervision of the Connecticut Attorney General.  See Conn. Gen. Stat. § 3-125 ("The Attorney General shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction.")  The purpose of the PSLRA was to

> protect investors who join class-actions against lawyer-driven lawsuits by increasing the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and action of plaintiff's counsel.  In particular, Congress sought to encourage institutional investors to take a more active role [].

In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002) (internal quotations and citations omitted).  The fact that the Connecticut Attorney General is responsible for supervising Lead Plaintiff's litigation does not violate the PSLRA.  See In re Gemstar-Tv Guide Int'l Sec. Litig., 209 F.R.D. 447 (C.D. Cal. 2002) (approving as lead plaintiff Louisiana pension fund and noting that the PSLRA

---

[2] Defendants do not dispute the adequacy of Oklahoma, Mr. McCool or Houston as subclass representatives.

9

"was not intended to prevent institutional investors from acting through their representatives, often in-house counsel"); Feder v. Elec. Data Sys., 429 F.3d 125, 129-134 (5th Cir. 2005) (approving Department of Treasury of the State of New Jersey as adequate lead plaintiff despite oversight of New Jersey's litigation interest by retired judge paid by class counsel).  Indeed, a determination that a State institutional investor such as Lead Plaintiff was inadequate would be a perverse result, in light of the purpose of the PSLRA.

Somewhat inconsistently, Defendants also claim that Lead Plaintiff has "abdicated responsibility for case management" to its outside counsel, Labaton Sucharow.  In order to be an adequate representative, Lead Plaintiff "must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation."  Sullivan v. Chase Investment Serv. of Boston, Inc., 79 F.R.D. 246, 259 (N.D. Cal. 1978).  A proposed class representative "who is unfamiliar with the case will not serve the necessary role of 'check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit.'"  Welling v. Alexy, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (quoting Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D. N.Y. 1978)).  "Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit."  Id.

Denise Nappier, Treasurer of the State of Connecticut, is the Trustee for Lead Plaintiff.  Her fiduciary duties include recovery of losses incurred due to corporate malfeasance and safeguarding of

assets under her care. Harwood Decl., Ex. A, Nappier Dep. 25:10-25. Her general counsel, Catherine LaMarr, assisted by the Connecticut Attorney General's office, oversees the work of outside counsel. Nappier Dep. 49:13-23. Treasurer Nappier relies "heavily" on the recommendations of Ms. LaMarr, and assumes that Ms. LaMarr considers the opinion of outside counsel in making decisions. Id. 44:7-24. The fact that the Treasurer of Connecticut derives her knowledge of the lawsuit from her in-house counsel does not mean that Lead Plaintiff is insufficiently informed to represent the class. The case law cited by Defendants is inapposite because it reflects concerns regarding plaintiffs whose knowledge of a case may be entirely derived from outside counsel. E.g., Berger v. Compaq Computer Corp., 257 F.3d 475, 483 n.18 (5th Cir. 2001).

Ms. LaMarr states that she herself is in frequent, sometimes daily contact with Labaton Sucharow, to "develop strategy, approve decisions, and actively supervise and monitor the case." LaMarr Decl. ¶ 4. She directed preservation of evidence, reviews and frequently comments on most pleadings before they are filed, participates in conference calls and sat for depositions. Id. ¶¶ 5-8. The fact that Ms. LaMarr may have relied on outside counsel for verification of the truth of some pleadings, such as statements of confidential witnesses, Patz Decl., Ex. A, LaMarr Dep. 145:13-148:9, does not mean that she is unfamiliar with the case or that Lead Plaintiff is an inadequate class representative. The Court finds that Lead Plaintiff is sufficiently familiar with the case to fulfill the adequacy requirement.

11

## II. Rule 23(b)(3)

Having met the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification, Lead Plaintiff and the other named Plaintiffs are entitled to proceed on a class basis if they meet the requirements of one of the subsections of Federal Rule of Civil Procedure 23(b). Here, Lead Plaintiff seeks to proceed under Federal Rule of Civil Procedure 23(b)(3). "To qualify for certification under this subsection, a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of claims.'" Hanlon, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). Here, common questions include whether Defendants' acts or omissions violated applicable portions of the Exchange Act and the Securities Act, whether the individual Defendants were liable for the acts and omissions of JDS, and whether statements made by Defendants during

12

the class period misrepresented material facts about JDS' business prospects, performance and financial condition. Common questions thus predominate over individual questions in this case.

B. Superiority

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Id. at 1023 (quoting Fed. R. Civ. P. 23(b)(3)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem, 521 U.S. at 617. In securities cases such as this, the damages of smaller investors are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress. A class action is the superior method of resolving this controversy.

CONCLUSION

For the foregoing reasons, the Court GRANTS Lead Plaintiff's motion (Docket No. 309) for class certification and appointment of class representatives and class counsel. Lead Plaintiff shall submit a proposed class notice plan within one month of the date of this order.

IT IS SO ORDERED.

Dated: 12/21/05

CLAUDIA WILKEN
United States District Judge

13