**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: JDS UNIPHASE CORPORATION SECURITIES LITIGATION | No. C-02-1486 CW (EDL) |
| | **ORDER GRANTING DEFENDANT JDSU'S MOTION TO ALLOW PARTICIPATION OF CONSULTANT** |
| This document relates to ALL ACTIONS / | |

On August 22, 2006, Defendant JDS Uniphase filed a motion to allow participation of Deloitte Financial Advisory Services (Deloitte FAS) as Defendant's consultant.  Lead Plaintiff had previously raised the issue of a possible conflict of interest that would preclude Defendant's continued use of Deloitte FAS in this case as a consultant on, *inter alia*, Lead Plaintiff's electronic data retention.  The motion was fully briefed and the Court held a hearing on September 26, 2006.

Courts apply a two-part test to the issue of disqualification of an expert: (1) whether it was objectively reasonable for the party alleging a conflict of interest to believe that it had a confidential relationship with the challenged expert; and (2) whether that party in fact disclose confidential information to the expert that is relevant to the current litigation.  See, e.g., Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092-93 (N.D. Cal. 2004).  Disqualification is inappropriate if either inquiry is answered in the negative.  Greene, Tweed of Delaware v. DuPont Dow Elastomers, 202 F.R.D. 426, 429 (E.D. Pa. 2001).  The party seeking disqualification has the burden of showing the existence of confidentiality and its non-waiver.  Greene, Tweed, 202 F.R.D. at 429 ("Furthermore, the party requesting disqualification may not meet its burden with 'mere conclusory or *ipse dixit* assertions.'").  In addition to these two inquiries, courts should also consider whether disqualification would be fair to the affected party and would promote the integrity of the legal

process.  See Hewlett-Packard, 330 F. Supp. 2d at 1094.  Disqualification, however, is a "drastic

measure that courts should impose only hesitantly, reluctantly and rarely."  Id. at 1092.

Under the first prong of the test, whether a confidential relationship exists, courts should

consider

> whether the relationship was one of long standing and involved frequent
> contacts instead of a single interaction with the expert, whether the expert
> is to be called as a witness in the underlying case, whether alleged
> confidential communications were from expert to party or vice-versa, and
> whether the moving party funded or directed the formation of the opinion
> to be offered at trial.

Hewlett-Packard, 330 F. Supp. 2d at 1093 (quoting Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080,

1083 (C.D. Cal. 2001)).  Other factors to consider are whether there was a formal confidentiality

agreement, whether the expert was retained for litigation, the number of meetings between expert

and attorney, whether work product was discussed or documents were provided to the expert,

whether the expert was paid, whether the expert was asked to agree not to discuss the case with the

opposing party and whether the expert derived any of his specific ideas from work done under the

direction of the retaining party.  Id. ("The emphasis, as stated above, is not on whether the expert

was retained per se but whether there was a relationship that would permit the litigant reasonably to

expect that any communication would be maintained in confidence.").

Lead Plaintiff points to the contracts between Deloitte & Touche and its predecessor,

Deloitte, Haskins & Sells, to establish that the Connecticut Office of the Treasurer (OTT) had a

confidential relationship with Deloitte.  Declaration of Catherine LaMarr Ex. A.  Some of the

contracts contain confidentiality provisions that generally provide that Deloitte & Touche and/or

Deloitte, Haskins & Sells promise to treat information provided by OTT as proprietary to the OTT

and to hold the information forever in confidence.  See, e.g., LaMarr Decl. Ex. A at LP 04286.  In

particular, Lead Plaintiff points to three contracts that it contends continue through the present day

(see LaMarr Decl. Ex. A. at LP 04282, LP 04516, LP 04566), two of which Lead Plaintiff states

concern implementation of the computer systems about which Deloitte seeks to provide advice to

JDSU.  See LaMarr Decl. Ex. A. at LP 04282, LP 04516.  The two contracts, however, were entered

into many years ago on December 4, 1989 and January 15, 1987, respectively.  Although Lead

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Plaintiff states that the contract regarding the Master Plan is still open and therefore it is possible

2   that OTT could request work under that contract (see Declaration of Leon Rippel ¶ 9), Lead Plaintiff

3   does not state that it intends to do so.  Lead Plaintiff argues that the engagements under the contracts

4   were substantial and performed over many years, and that the relationship has been "attended by

5   frequent contact," but there is no indication that any work has been undertaken under those contracts

6   recently.  In fact, Lead Plaintiff's declarant says that Deloitte & Touche continued active work on

7   the Master Plan for the OTT only through 1992.  Rippel Decl. ¶¶ 4, 5.

8          Moreover, the two contracts relating to computer systems specifically engage Deloitte &

9   Touche and/or Deloitte, Haskins & Sells to "develop an integrated data and imaging processing

10  system for the Second Injury Fund" (LP 04282) and to "expedite the development of an enhanced

11  automated system to replace the current system for recording State receipts and disbursements" (LP

12  04520).  Lead Plaintiff has not made a showing that either of these engagements is related to the

13  computer system about which Defendant seeks discovery.  Plaintiff contends that Deloitte has been

14  paid over $1 million dollars for its services rendered pursuant to contracts from 2000 through 2003

15  (see LaMarr Decl. Ex. B), but based on the titles of the contracts in the payment schedule, it is

16  unclear whether any payments have been made on contracts relating to development of computer

17  systems during that time.

18         In addition, there has been no showing that Deloitte FAS will be called as a witness in this

19  case, nor is there any indication that Defendant funded or directed the formation of an opinion to be

20  offered at trial.  To the contrary, Defendants engaged Deloitte FAS as a consultant, not as a

21  testifying expert.  See Declaration of Sydney Firestone ¶ 1 ("In June 2005, Deloitte FAS accepted an

22  engagement to provide consulting services to Morrison & Foerster LLP ("Counsel") on behalf of its

23  client, JDS Uniphase Corporation, in connection with certain securities litigation (the

24  "Proceedings")).

25         On balance, Lead Plaintiff has not made a strong showing of a confidential relationship under

26  the first prong of the test.  Even assuming *arguendo* that Lead Plaintiff has met its burden of

27  showing a confidential relationship, it has not met its burden under the second prong of the test of

28  showing that OTT disclosed confidential information to Deloitte that is relevant to the current

3

**United States District Court**
For the Northern District of California

1  litigation.

2       Confidential information essentially is "information 'of either particular significance or [that]

3  which can be readily identified as either attorney work product or within the scope of the attorney-

4  client privilege.'"  Hewlett-Packard, 330 F. Supp. 2d at 1094 (quoting Paul v. Rawlings Sporting

5  Goods Co., 123 F.R.D. 271, 278 (S.D. Ohio 1988)); see also Stencel, 174 F. Supp. 2d at 1083

6  ("Courts are more likely to find for the [party seeking disqualification] if any of the following

7  information is shared: legal strategies, the types of experts to be called, the attorney's views on the

8  relative strengths or merits of a claim or defense, the role of other witnesses at trial or anticipated

9  defenses.").  "Unlike attorney-client communications, discussions between parties or counsel and

10  experts do not carry the presumption that confidential information was exchanged."  Hewlett-

11  Packard, 330 F. Supp. 2d at 1094 (quoting Stencel, 174 F. Supp. 2d at 1083)).  Because the burden is

12  on the party seeking to disqualify the expert, that party should point to "specific and unambiguous

13  disclosures that if revealed would prejudice the party."  Id.; see also Greene, Tweed, 202 F.R.D. at

14  430 (". . . that the proposed experts were involved in the development of technology which was

15  'operationally similar' to the infringing products or 'which evolved into the [technology] used in the

16  [infringing products] is not enough.") (quoting Space Systems/Loral, 1995 WL 686369, *2-3)).

17  Conclusory assertions are not enough.  Greene, Tweed, 202 F.R.D. 429.

18       None of the information that Lead Plaintiff points to as confidential comes close to

19  constituting attorney work product or falling within the scope of the attorney-client privilege as

20  discussed in the relevant caselaw.  There has been no showing that Deloitte and OTT exchanged

21  information about legal strategies under any of the contracts, or that this litigation or any related

22  litigation was pending while Deloitte worked on any aspect of Lead Plaintiff's computer system,

23  much less that Deloitte personnel discussed with Lead Plaintiff the merits of particular claims or

24  defenses, the role of witnesses at trial or anticipated defenses in this case.

25       Instead, Lead Plaintiff argues that all information given from OTT to Deloitte & Touche and

26  Deloitte, Haskins & Sells during the contractual periods was confidential.  Yet Lead Plaintiff has

27  provided no specific disclosures of relevant confidential information.  Lead Plaintiff only states that

28  the engagement of Deloitte was to work on the "function and structure of the computer systems for

the OTT, including design of programs for each of the Treasury's 6 divisions," and that "Deloitte designed the entire structure of the OTT computer systems in use to this day." Rippel Decl. ¶¶ 5-6. However, information exchanged during the development of the basic structure of a computer system approximately fourteen years ago would have little relevance today in the context of this litigation. Moreover, Lead Plaintiff's evidence shows that the systems have been upgraded, but does not state whether Deloitte participated in the upgrades. See Rippel Decl. ¶ 7 ("While the programming software and hardware may have been updated, all internal systems currently employ the structure originally designed by Deloitte."). In addition, Ms. La Marr testified that the Pension Fund Management Division is the relevant division of the OTT for this case, and that the Second Injury Fund is separate. Reply Hasu Decl. Ex. B at 46:9-47:5. Therefore, even if Deloitte has confidential information about the Second Injury Fund computer system based on a contract with OTT, that would not be relevant to this action.

Lead Plaintiff argues that simply being privy or having access to confidential information in general is enough to satisfy the second prong of the test, citing Space Systems/Loral v. Martin Marietta Corp., 1995 U.S. Dist. LEXIS 22305 (N.D. Cal. Nov. 15, 1995). Space Systems does not stand for that proposition. There, the expert who was disqualified was a former employee of the defendant's predecessor, named inventor of several relevant patents, worked as the head of the group responsible for satellite navigation, had significant involvement in the design of the satellite at issue in that case and continued to consult for the defendant after his retirement. Thus, the expert had access to recent relevant confidential information.

By contrast, here, Deloitte's involvement in this case is at least as attenuated as that of the other expert in Space Systems whom the court refused to disqualify. That expert was involved in the development of "operationally similar" earlier versions of the technology at issue and had signed numerous confidential agreements, but his involvement ended fifteen years before and he possessed no confidential information about the technology at issue in the current litigation. Space Systems, 1995 WL 686369, *3-4. Similarly, there has been no showing that anyone at Deloitte FAS obtained information from anyone involved in the OTT contracts. Defendant has provided evidence that no person working at Deloitte FAS on this matter has ever had any involvement with the services

United States District Court
For the Northern District of California

provided by any Deloitte entity to OTT, and no person obtained any confidential information from the OTT contracts.  Firestone Decl. ¶ 3; Reply Declaration of Sydney Firestone ¶ 1.  Except for Ms. Firestone, no person working on this matter was employed by any Deloitte entity before 1996, and she has never been involved in any services provided to the OTT.  Reply Firestone Decl. at ¶¶ 2-3. Although one person employed by Deloitte managed projects for the OTT, his employment with Deloitte ended in 1991.  Firestone Decl. ¶¶ 5-6.  Further, Deloitte searched for documents showing the engagements with OTT in several databases used for identifying conflicts and found no engagements with OTT, although there were some engagements with the State of Connecticut, none of which were related to the OTT or to computer or other information technology services. Firestone Decl. ¶ 4.

Lead Plaintiff argues that it need not show that any specific Deloitte personnel acquired information from Plaintiff, and that because of the extensive services performed by Deloitte, the entire organization is disqualified.  This argument relies on the imputed disqualification doctrine that applies to attorneys in law firms, but which does not apply to experts.  Stencel, 174 F. Supp. 2d at 1085 ("The same considerations [regarding imputed disqualification] do not apply to experts, simply because they perform a very different function in litigation than do lawyers. [citation omitted]. Attorneys are advocates, charged with selflessly serving their client's interests.  Expert witnesses, on the other hand, are employed to assist the parties in their pretrial preparation, and if called to testify, to give their unbiased opinion in order to assist the trier of fact in understanding the relevant evidence.").

Further, principles of fairness weigh against disqualification in this case.  See Hewlett-Packard, 330 F. Supp. 2d at 1094.  Here, there are less than six weeks remaining in written fact discovery and only four months until the close of deposition discovery.  Lead Plaintiff does not dispute that information about its computer systems is discoverable and there has been no showing that Lead Plaintiff would be prejudiced even if Deloitte had gained some confidential information about those systems.  At most, if Lead Plaintiff were correct that Deloitte learned something relevant about its computer system from its prior work, Defendant's use of Deloitte as a consultant would enable Defendant to discover more effectively information that the Court has ruled that it is entitled

6

to discover.  Further, Lead Plaintiff characterizes the discovery into its computer systems as "a sideshow with no conceivable bearing on the serious fraud charges at issue in this case."  Opp'n at 13:10-11; n. 7.

On balance, even if a confidential relationship did exist between Deloitte and Lead Plaintiff, Lead Plaintiff has not met its burden of demonstrating that confidential information that is relevant to the current litigation was exchanged.  Accordingly, Defendant's motion to allow participation of Deloitte FAS as its consultant is granted.

IT IS SO ORDERED.

Dated: September 29, 2006

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California

7