IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: JDS UNIPHASE CORPORATION SECURITIES LITIGATION<br><br>This document relates to ALL ACTIONS<br>_____ / | No. C-02-1486 CW (EDL)<br><br>**ORDER DENYING LEAD PLAINTIFF'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY AND TO REQUIRE CISCO TO SEARCH FOR DOCUMENTS** |

Lead Plaintiff served subpoenas on Cisco for production of documents on Jan.18, 2006, and for a 30(b)(6) deposition on Nov. 13, 2006. Lead Plaintiff contends that Cisco's 30(b)(6) witness, Moises Mares, had limited or no knowledge of numerous topics on which he was designated, and seeks a motion to compel Cisco to provide additional testimony and documents.

Cisco contends that Lead Plaintiff's motion to compel is untimely, as Cisco produced its documents in February and March 2006. Lead Plaintiff conducted the 30(b)(6) deposition on November 27, 2006, attempted to meet and confer, and filed the present motion on December 12, 2006. Dispositive motions are due on April 13, 2007. In light of this schedule, the Court does not deny the motion based on undue delay. See Gault v. Nabisco Biscuit Co., 184 F.R.D. 620, 622 (D.Nev. 1999).

Lead Plaintiff seeks additional testimony from Cisco on the following topics of examination pursuant to its 30(b)(6) subpoena:

Topic 1: Cisco's search for documents pursuant to January 18, 2006 subpoena.

Topic 4: Cisco's return of JDSU products

Topic 5: Cisco's orders for JDSU products and modifications to orders

|   |   |   |
|---|---|---|
| 1 | Topic 7: | Quantity and value of JDSU products held by Cisco in its inventory. |
| 2 | Topic 8: | Quantity and value of consignment sales of JDSU products to Cisco |
| 3 | Topic 9: | Recognition of revenue by JDSU based on transactions between Cisco and JDSU and any requests by JDSU for Cisco to modify agreements based on SEC Staff Accounting Bulletin 101. |
| 6 | Topic 10: | Communications between Cisco and JDSU relating to topics 2 through 9. |

Under Rule 30(b)(6), a corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." Bank of New York v. Meridien BIAL Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (citations omitted). "The deponent must prepare the designee to the extent matters are <u>reasonably available</u>, whether from documents, past employees, or other sources." Id. (citations omitted) (emphasis added). While a corporation is not relieved from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, even when it no longer employs individuals who remember earlier events, see United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996), it need not make extreme efforts to obtain all information possibly relevant to the requests.

Mares is a Commodity Manager at Cisco, and was responsible for selecting suppliers and negotiating pricing, delivery, and the like with suppliers to secure the technology needed for optics. Mares Decl., ¶ 2. During the relevant time period, he was one of the individuals at Cisco most involved with JDSU, Cisco's orders of JDSU products, Cisco's cancellations of JDSU products, and other deposition topics. Id., ¶ 5. At deposition, Plaintiffs' counsel, Mark Labaton, asked Mares to review the subpoena and identify the areas as to which he did not have knowledge. Mares responded: "4, 5, other than I know when we were trying to cancel things, but if there was any modulation of orders in or out, I would not have that detail. So 6 is probably more prevalent than 5, I would say, the cancellation. I would not know anything about 7 or 8. And I do not know when JDS recognized revenue in 9. Those are the main ones I would not have any information on. . . . Or would have very little knowledge of those." Labaton Decl., Ex. 7 ("Mares Depo.") at 47-48.

2

1    Lead Plaintiff complains that Cisco did not object prior to the deposition that no one at the
2 company could testify fully to all the topics at issue. Mot. at 7. Cisco demonstrates that it did,
3 however, notify Lead Plaintiff in advance of the deposition. Prior to conducting the 30(b)(6)
4 deposition, Lead Plaintiff contacted Cisco's outside counsel, Courtney Cruz, about its intention to
5 subpoena two Cisco employees, Ashley and Wholley, about certain topics. Cruz interviewed them
6 and determined that they did not remember any interactions with JDSU related to the topics raised
7 by Lead Plaintiff's counsel. Opp. at 3; Cruz Decl., ¶ 10. Cruz informed Lead Plaintiff's counsel,
8 and offered to find a person most knowledgeable. Cruz Decl., ¶ 10. Lead Plaintiff provided a list of
9 proposed topics to Cisco. Cruz Decl. ¶ 11 and Ex. C (11/10/06 email from Harris to Cruz). Cruz,
10 spoke to several individuals at Cisco and determined that Mares was the person most knowledgeable
11 at Cisco. Id., ¶ 12. Cruz states that she informed Lead Plaintiff's counsel, Daniel Harris, that no one
12 at Cisco would be able to answer every question fully as to each of the topics, because of the seven
13 years that had passed since the events occurred, but that Mares was the most knowledgeable. Id., ¶
14 13. On November 13, 2006, Cruz accepted service of the 30(b)(6) subpoena from Lead Plaintiff,
15 which proposed November 28, 2006 as the deposition date, leaving only seven business days for
16 Mares to prepare for the deposition. Id., ¶ 14.

17    Under the circumstances, and for the reasons set forth below, Cisco made reasonably diligent
18 efforts to prepare its 30(b)(6) designee, Mares, to answer the questions regarding the topics at issue.
19 Cisco has demonstrated that it has made reasonable efforts to prepare Mares for the 30(b)(6)
20 deposition. Cisco's outside counsel states that she has spent about forty-five hours reviewing Lead
21 Plaintiff's subpoenas, meeting and conferring as to the scope of the subpoenas and the deposition
22 topics, interviewing Cisco employees to collect documents, reviewing thousands of documents,
23 producing two sets of document productions (on Feb. 23 and March 13, 2006), locating and
24 preparing a knowledgeable 30(b)(6) witness and attending a full-day deposition. Cruz Decl., ¶ 26.
25 Lead Plaintiff has not demonstrated through documents or other evidence that another Cisco
26 employee recalls more than Mares about events that happened over seven years ago. Further, as
27 discussed below, Mares testified as to topics as to which matters were reasonably available to Cisco,
28 and, not surprisingly, was unable to answer questions about matters which were not reasonably

3

available, such as JDSU's own revenue.

As to Topic 1 (Cisco's search for documents pursuant to January 18, 2006 subpoena), Cisco objected to Lead Plaintiff's question at Mares' 30(b)(6) deposition on the grounds that legal counsel conducted the search, which was therefore privileged. Mares Depo. at 49. Cisco counsel subsequently provided Lead Plaintiff with a list of employees who were contacted about the search. Cruz Decl., ¶ 17; Labaton Decl., Ex. 3 (11/28/06 letter from Cruz to Harris). Lead Plaintiff argues that this is not a substitute for a witness's testimony, nor does it provide information as to how Cisco conducted the search. Lead Plaintiff has not, however, demonstrated lack of diligence by Cisco or the need for information beyond the list of individuals who were contacted and who searched their files for documents during the course of Cisco's investigation.

As to Topic 4 (Cisco's return of JDSU products during the Relevant Time Period), Mares testified, "Other than I know there were some returns for very specific technical issues, I don't know what they are, I couldn't explain them." Mares Depo. at 68. Lead Plaintiff argues that Mares could not answer the questions. Mot. at 8. In fact, Mares did testify further, albeit briefly, as to technical issues with JDSU products that were returned. Mares Depo. at 68-69.

As to Topic 5 (Cisco's orders for JDSU products and modifications to orders), Lead Plaintiff points out that Mares testified that he had "[l]imited knowledge due to the fact that when I became involved in this was around the end of calendar year '00, when we had major cancellations." Mares Depo. at 70. Mares went on to testify, however, as to some relevant areas, such as negotiating prices on a quarterly basis, and cancellations. Mares Depo. at 70-74.

As to Topic 7 (quantity and value of JDSU products held by Cisco in its inventory), when asked whether Cisco had three to four months of inventory as of Dec. 19, 2000, Mares testified, "I have no idea what we had on hand." Lead Plaintiff showed him an email document, which Mares understood to mean that "the forecast went down," but he had not seen the document before and testified "I don't know where they get their assumptions or how they calculated it." Mares Depo. at 112-113. Cisco argues persuasively that no one could provide substantive testimony without referring to documents to refresh their recollection, and it has been unable to locate any such documents. Opp. at 8. See Mares Decl. ¶ 10 ("this is not the type of information that a Commodity

4

1  Manager or anyone else with knowledge of the JDSU relationship would likely remember").

2  As to Topic 8 (quantity and value of consignment sales of JDSU products to Cisco), Mares
3  testified that he did not recall whether JDSU made any consignment sales to Cisco. Mares Depo. at
4  61. In response to being asked whether anyone at Cisco is likely to have knowledge of Topic 8,
5  Mares testified, "I don't think we ever did any type of consignment, so I would say no one." Mares
6  Depo. at 84. With respect to Topic 8, Mares states that at least one document was produced that
7  referenced inventory, but that there are no other records detailing the quantity and value of JDSU
8  products held in Cisco's inventory; absent such records, this is not the type of information that
9  anyone would likely remember. Mares Decl., ¶ 10.

10  As to Topic 9 (recognition of revenue by JDSU based on transactions between Cisco and
11  JDSU and any requests by JDSU for Cisco to modify agreements based on SEC Staff Accounting
12  Bulletin 101), the Court accepts Cisco's plausible contention that this information is outside Cisco's
13  possession, custody or control. Labaton Decl., Ex. 6 (12/6/06 letter from Cruz to Labaton); Mares
14  Decl., ¶ 9 ("no one at Cisco would know when JDSU recognized its revenue"). Mares testified that
15  no one at Cisco would know when JDSU recognized its revenue. Mares Depo. at 84.

16  As to Topic 10 (communications between Cisco and JDSU relating to topics 2 through 9),
17  Mares testified as to communications between JDSU and Cisco engineers. See Mares Depo. at 69.
18  Mares was also shown and asked about emails and other documents, including JDSU documents.
19  Id. at 114-126. Lead Plaintiff admits that Mares had limited knowledge as to Topic 10, and has not
20  demonstrated or argued how Mares' answers are insufficient. See Mot. at 4.

21  For the foregoing reasons, Lead Plaintiff's motion to compel is DENIED.

22  This order terminates Docket No. 720.

23  IT IS SO ORDERED.

24  Dated: January 29, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

5