IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: JDS UNIPHASE CORPORATION SECURITIES LITIGATION<br><br>This document relates to ALL ACTIONS<br>_____/ | No. C-02-1486 CW (EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART LEAD PLAINTIFF'S MOTION TO COMPEL** |

On January 23, 2007, Lead Plaintiff's Motion to Compel (docket no. 798) came on for hearing. Lead Plaintiff seeks further discovery on the following matters: (1) records of transactions in JDSU's securities by forty current or former JDSU employees; (2) deposition testimony regarding such trades by current and former JDSU employees who testified at deposition; (3) records of transactions in JDSU's securities by current or former employees who reside outside the United States but who enter the jurisdiction to testify at trial; (4) verbatim witness statements; (5) further deposition testimony by Maurice Tavares, the former president of JDSU's Fiber Optics Product Group. Upon consideration of the papers submitted on the matter and the argument of counsel, it is hereby ORDERED as follows:

**Trading Records and Depositions of Current and Former JDSU Employees**

Lead Plaintiff asks the Court to compel JDSU to comply with a request for production of the trading records of forty current and former JDSU employees, and to compel six of those non-party individuals (Chandran, Chase, Crawford, Day, Johnson and Parker) to comply with subpoenas similarly demanding the production of trading records. See Amended Proposed Order. Lead Plaintiff's First Request for Production of Documents to JDSU, Request No. 45, sought documents

1 reflecting JDSU securities transactions by high level employees only. Harwood Reply Decl., Ex. 2
2 ("by any Individual Defendant or any other JDS director, officer, or executive"). As the requests
3 themselves are limited to JDSU executives and above, Lead Plaintiff is not entitled to the records of
4 lower level employees such as forecast analysts, executive assistants, and account managers. For
5 purposes of this motion, the Court concludes that only those JDSU employees who held a position of
6 Vice-President or higher fall within the scope of the request.

7 Lead Plaintiff agreed at oral argument that for non-parties who filed Forms 4, those
8 documents would suffice. JDSU agreed to produce the documents filed with the SEC to report
9 transactions for these non-parties during the time that they were Section 16 officers or directors of
10 JDSU. See 1/29/07 Letter from T. Garland to the Court (naming Cobb, Day, Guglielmi, Phillips and
11 Sinclair as reporting throughout the class period and Deffebach, R. Johnson, Lefebvre, S. Parker,
12 Scifres as reporting during some portion of the class period). JDSU shall produce the Forms 4 as to
13 the officers and directors identified in its January 29, 2007 Letter to the Court by February 2, 2007.

14 Defendants argue that disclosure of trading records for other non-parties violates their right
15 to privacy in their financial information, and that the trading records of these individuals are not
16 sufficiently relevant to meet the heightened standard for discovery of private matters. Federal law
17 determines issues concerning evidentiary privileges. See, e.g., Humphreys v. Regents of the Univ.
18 of Cal., 2006 WL 335275 at *1 (N.D. Cal. 2006). While federal law grants some protection to
19 privacy interests, that interest must be balanced against the need for disclosure. Further, trading
20 records by high-level employees involve less sensitive personal information than, for example,
21 highly personal medical information. As to whether the trading records at issue are sufficiently
22 relevant to outweigh the privacy interest in the non-party individuals' financial records, Lead
23 Plaintiff does not rely on the discredited "collective scienter" theory that somehow a corporation
24 could have the requisite scienter even though none of its top employees did. Nordstrom, Inc. v.
25 Chubb & Son, Inc., 54 F.3d 1424, 1435-36 (9th Cir. 1995) (rejecting that theory). Rather, Lead
26 Plaintiff argues that evidence of non-party trading may be highly probative circumstantial evidence
27 of the individual defendants' scienter and useful for impeachment. Indeed, Lead Plaintiff was
28 willing to limit disclosure of trading records to trial witnesses. Reply at 8, n.9. Lead Plaintiff relies

2

on the reasoning of Fecht v. The Price Co., 70 F.3d 1078, 1084 (9th Cir. 1995), which reinstated a complaint:

> evidence that . . . sales represented significant retrenchments of the Company executives' own positions in the Company's stock: The sales by the COO for the West Coast involved all of the Company stock he had acquired by option during the period in which the optimistic statements were being made; the sales by the COO for the East Coast halved his total holdings in the Company. These sales are circumstantial evidence that the defendants knew or had reason to know that the financial condition of the Company was deteriorating well before they disclosed the problems with the expansion program.[1]

Defendants argue that Fecht was decided before the enactment of the Private Securities Litigation Reform Act ("PSLRA") and is therefore no longer good law, yet Defendants themselves rely upon a decision of this Court which in turn relied on a pre-PSLRA decision of the Ninth Circuit. See 1/25/07 Letter from T. Garland to the Court; In re Apple Computer, Inc.,Sec. Litig., 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("Apple I") (citing Nordstrom, 54 F.3d at 1435-36).  In a subsequent decision in that litigation, Judge Wilken did not hold that stock sales by non-parties, or those who did not themselves make the allegedly misleading statements at issue, would always be irrelevant; rather, she held more narrowly that the plaintiffs there had not related the stock sales of any insider to any allegedly false or misleading statement in the context of a motion to dismiss. In Re Apple Computer, Inc., Sec. Litig., No. C01-3667 CW, slip op. at 11 (N.D. Cal. Aug. 13, 2003) ("Apple II"). Judge Wilken explained: "'stock sales are helpful only . . . when those sales are able to be related to the challenged statements.' In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1093 (9th Cir. 2002). Plaintiffs have not related Rubinstein's stock sales or the stock sales of any other insider to any allegedly false or misleading statement. Accordingly, these sales do not support an inference of scienter." Apple II, slip op. at 11. This motion concerns the standard of relevance in discovery of

---

[1] Fecht's recognition of the relevance of trade by Chief Operating Officers does not aid Lead Plaintiff as to records of non-executive employees .

3

1  a case that has survived a motion to dismiss, not the sufficiency of allegations to withstand a motion
2  to dismiss under the PSLRA, which imposes a heightened pleading standard.
3        Lead Plaintiff's motion to compel JDSU to produce trading records is granted as to the
4  following individuals to the extent that they have been disclosed as likely trial witnesses, on the
5  ground that Lead Plaintiff has sufficiently shown that the trading records for these individuals fall
6  within the scope of its document requests and has made a sufficient showing that the discovery is
7  reasonably calculated to lead to the discovery of admissible evidence to outweigh their privacy
8  interests, especially in light of the Stipulated Protective Order:
9  Rebecca Browne (VP);
10 Ashok Chandran (VP);
11 Ken Crawford (controller);
12 Bob Daly (VP);
13 Kerry Dehority (VP);
14 Steve Fife (VP);
15 Russell Johnson (VP);[2]
16 Mario Leduc (VP);
17 Leo Lefebvre (VP);
18 Peter Moore (VP);
19 Steve Moore (VP);
20 Scott Parker (VP Global Sales);
21 Katherine Payne (VP);
22 Donald Scifres (Co-Chair, Chief Strategy Officer);
23 Sanjay Subhedar (COO, CFO, E-tek Div.);
24 Maurice Tavares (Pres., FPG Div.);
25 Kumar Visvanatha. (VP, division Pres.)
26 JDSU shall produce the trading records in JDSU securities for these listed individuals by February 2,

---

[2] The privacy objection is moot as to Russell Johnson, who voluntarily testified as to his usual practices and was willing to testify about his securities transactions, thereby waiving his privacy objection. See Harwood Moving Decl., Ex. 17 (Johnson Depo. at 275-279).

4

2007.

Lead Plaintiff's motion to compel non-party witnesses Chandran, Crawford, Day, Johnson and Parker to produce their trading records is denied in light of the order to JDSU to produce their trading records. Lead Plaintiff's motion to compel Chase to produce his trading records is denied on the ground that Lead Plaintiff has not demonstrated that Chase was a sufficiently high-level employee. The parties previously met and conferred as to the records for Deffebach, Phillips and Gertel, and the motion to compel their records beyond the parties' agreement is denied. See Orion Decl., Ex. 6. Trading records produced to Lead Plaintiff shall be subject to the Stipulated Protective Order in this action. The issue of their admissibility is, of course, solely for Judge Wilken to decide.

In addition to trading records, Lead Plaintiff seeks to compel further deposition testimony by certain current and former JDSU employees who refused to answer questions about trading in JDSU securities (Lead Plaintiff has withdrawn its motion as to Jay Abbe, see Reply at 13). Lead Plaintiff has not sufficiently demonstrated the need to reopen deposition testimony, which would be unduly burdensome. Lead Plaintiff's motion to compel additional deposition testimony by Chase, Crawford, Gertel, Johnson, and Steve Moore is therefore denied.

As to Jozef Straus, Lead Plaintiff contends that Straus has not produced records of the family trust. Harwood Reply Decl., ¶ 22. At the January 23, 2007 hearing, JDSU represented that Straus is not a trustee and does not have custody or control of the trust documents, which are controlled by the trustees in Canada for the benefit of his three children, including a 14-year-old child. Lead Plaintiff's motion to compel Straus' family trust records is denied without prejudice to reopening the motion to compel based upon legal authority, if any, that demonstrate that Straus has control over the trust documents.

Lead Plaintiff's motion to compel current or former employees who reside outside the United States, but who enter the jurisdiction to testify at trial, to produce records of their transactions in JDSU's securities is denied.

**Witness Declarations**

Lead Plaintiff seeks to compel Defendants to produce declarations by confidential witnesses that are in their possession which have not yet been filed in support of any motion. These

5

declarations were prepared by defense counsel and are protected work product unless and until they are filed. See Hickman v. Taylor, 329 U.S. 495, 509 (1947); Intel Corp. v. VIA Technologies, Inc., 204 F.R.D. 450, 452 (N.D. Cal. 2001). They differ from the e-mail messages from witnesses to Lead Plaintiff's counsel that were the subject of the Court's September 23, 2005 Order ("Only the e-mail messages from counsel to the witness are protected by the work product doctrine and JDSU has not demonstrated substantial need for those documents. See Fed. R. Civ. P. 26(b)(3). E-mail messages from the witness to counsel, however, must be produced because they are verbatim statements by the witness that reflect the witnesses', not counsel's, mental impressions."). Lead Plaintiff's motion to compel the witness declarations is denied.

**Additional Deposition Testimony by Maurice Tavares**

In the September 7, 2005 Order, the Court ordered Defendants to produce diaries and appointment calendars for specific individuals named in the document requests, which did not include Tavares. Rather, Defendants produced Tavares' diary among 19,900 pages of documents on October 20, 2006, in response to the subpoena on Morrison & Foerster requesting documents produced to the Department of Justice. Lead Plaintiff argues that defense counsel did not advise Plaintiffs' counsel that Tavares' diary was contained among the documents, although when Plaintiffs' counsel asked for the Bates numbers of the diary on November 1, defense counsel provided the Bates numbers within an hour of the request. Orion Decl., ¶ 13. Lead Plaintiff argues that counsel "did not locate the diary sufficiently in advance" of Tavares' deposition on November 3, 2006, to permit it to conduct a complete examination on this document. Harwood Decl., ¶ 4. Defendants point out that Lead Plaintiff questioned Tavares about the diary for 45 minutes at deposition. Lead Plaintiff asks that it be allowed to further examine Tavares about his diary. Because the Court cannot compel the appearance of Tavares, a resident of Canada, Plaintiff proposes that Defendants be prohibited from calling Tavares at trial if he refuses to appear for deposition. Orion Decl., ¶ 13 and Ex. 16. The Court does not conclude that Lead Plaintiff was insufficiently diligent under the circumstances. However, Lead Plaintiff at this point has not made the strong showing required to reopen discovery, much less to issue the order that Lead Plaintiff seeks precluding him from testifying at trial if he does not testify further at deposition. Therefore, Lead

6

Plaintiff's motion to compel further deposition testimony by Tavares is denied without prejudice.

This order terminates Docket No. 798.

IT IS SO ORDERED.

Dated: January 31, 2007

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge