1   [COUNSEL LISTED ON SIGNATURE
2   PAGES]

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       OAKLAND DIVISION

11   In re JDS UNIPHASE CORPORATION          Master File No. C–02–1486 CW (EDL)
     SECURITIES LITIGATION
12                                           **JOINT PROPOSED JURY**
     This Document Relates To:  All Actions  **INSTRUCTIONS**
13
                                             Pre-trial Conference:  October 9, 2007
14                                           Time:          2:00 p.m.
                                             Ctrm:          2, 4th Floor
15                                           Before:        Hon. Claudia Wilken
                                             Trial Date:    October 22, 2007
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY INSTRUCTIONS ........................................................................................... 1

JURY INSTRUCTION NO. 1
Introduction ............................................................................................................. 2

JURY INSTRUCTION NO. 2
Duty of Jury ............................................................................................................. 4

JURY INSTRUCTION NO. 3
Parties and Claims [Plaintiffs' Version] (*DISPUTED*)........................................... 6

JURY INSTRUCTION NO. 4
Parties and Claims [Defendants' Version] (*DISPUTED*) ....................................... 8
Plaintiffs' Argument........................................................................................... 10
Defendants' Argument........................................................................................ 10

JURY INSTRUCTION NO. 5
Defendants' Defenses.............................................................................................. 12

JURY INSTRUCTION NO. 6
Burden Of Proof — Preponderance Of The Evidence (*DISPUTED*) .................... 13
Plaintiffs' Argument........................................................................................... 14
Defendants' Argument........................................................................................ 14

JURY INSTRUCTION NO. 7
What Is Evidence .................................................................................................... 15

JURY INSTRUCTION NO. 8
What Is Not Evidence ............................................................................................. 16

JURY INSTRUCTION NO. 9
Evidence for Limited Purpose................................................................................. 18

JURY INSTRUCTION NO. 10
Direct and Circumstantial Evidence ....................................................................... 19

JURY INSTRUCTION NO. 11
Ruling on Objections .............................................................................................. 20

JURY INSTRUCTION NO. 12
Credibility of Witnesses.......................................................................................... 21

JURY INSTRUCTION NO. 13
Conduct of the Jury ................................................................................................. 22

JURY INSTRUCTION NO. 14
No Transcript Available to Jury.............................................................................. 24

JURY INSTRUCTION NO. 15
Taking Notes ........................................................................................................... 25

JURY INSTRUCTION NO. 16
Bench Conferences and Recesses ........................................................................... 26

JURY INSTRUCTION NO. 17
Outline of Trial........................................................................................................ 27

JURY INSTRUCTION NO. 18
Activities Not At Issue (*DISPUTED*) .................................................................... 29
Defendants' Argument For Instruction No. 18 .................................................. 30

Plaintiffs' Argument Against Instruction No. 18 ............................................................... 30

JURY INSTRUCTION NO. 19
Discredited Testimony (*DISPUTED)* ................................................................................. 31
    Defendants' Argument For Instruction No. 19 .................................................................. 32
    Plaintiffs' Argument Against Instruction No. 19 .............................................................. 32

JURY INSTRUCTION NO. 20
Defendant's Financial or Job Status (*DISPUTED*) ........................................................... 34
    Defendants' Argument For Instruction No. 20 .................................................................. 35
    Plaintiffs' Argument Against Instruction No. 20 .............................................................. 36

JURY INSTRUCTION NO. 21
Stipulated Testimony ........................................................................................................... 37

JURY INSTRUCTION NO. 22
Stipulations of Fact ............................................................................................................. 38

JURY INSTRUCTION NO. 23
Judicial Notice ..................................................................................................................... 39

JURY INSTRUCTION NO. 24
Deposition in Lieu of Live Testimony ................................................................................ 40

JURY INSTRUCTION NO. 25
Use Of Interrogatories Of A Party ...................................................................................... 41

JURY INSTRUCTION NO. 26
Use Of Admissions Of A Party ........................................................................................... 42

JURY INSTRUCTION NO. 27
Transcript of Tape Recording ............................................................................................. 43

JURY INSTRUCTION NO. 28
Impeachment Evidence — Witness ..................................................................................... 44

JURY INSTRUCTION NO. 29
Missing Witness (*DISPUTED*) ......................................................................................... 45
    Plaintiffs' Argument For Instruction No. 29 ..................................................................... 46
    Defendants' Argument Against Instruction No. 29 .......................................................... 46

JURY INSTRUCTION NO. 30
Electronic Mail (Email) Presumptively Received (*DISPUTED*) ...................................... 48
    Plaintiffs' Argument For Instruction No. 30 ..................................................................... 49
    Defendants' Argument Against Instruction No. 30 .......................................................... 49

JURY INSTRUCTION NO. 31
Expert Opinion .................................................................................................................... 50

JURY INSTRUCTION NO. 32
Liability Of Corporations — Scope Of Authority Not In Issue (*DISPUTED*) ..................... 51
    Plaintiffs' Argument For Instruction No. 32 ..................................................................... 52
    Defendants' Argument Against Instruction No. 32 .......................................................... 52

JURY INSTRUCTION NO. 33
Agent — Scope Of Authority Defined (*DISPUTED*) ....................................................... 54
    Plaintiffs' Argument For Instruction No. 33 ..................................................................... 55
    Defendants' Argument Against Instruction No. 33 .......................................................... 55

JURY INSTRUCTION NO. 34
Act Of Agent Is Act Of Principal — Scope Of Authority Not In Issue (*DISPUTED*) .......... 56
    Plaintiffs' Argument For Instruction No. 34 ..................................................................... 57
    Defendants' Argument Against Instruction No. 34 .......................................................... 57

JURY INSTRUCTION NO. 35
Charts and Summaries Not Received in Evidence.................................................................. 58

JURY INSTRUCTION NO. 36
Charts and Summaries in Evidence........................................................................................ 59

JURY INSTRUCTION NO. 37
Duty to Deliberate ................................................................................................................. 60

JURY INSTRUCTION NO. 38
Unanimity Required (*DISPUTED*) ...................................................................................... 61
    Defendants' Argument For Instruction No. 38 ............................................................... 62
    Plaintiffs' Argument Against Instruction No. 38 ............................................................ 62

JURY INSTRUCTION NO. 39
Communication With Court.................................................................................................... 63

JURY INSTRUCTION NO. 40
Return of Verdict................................................................................................................... 64

SECTION 10(b) INSTRUCTIONS ............................................................................................... 65

JURY INSTRUCTION NO. 41
Elements Of Liability Under Section 10(b) [Plaintiffs' Version] (*DISPUTED*) ................... 66

JURY INSTRUCTION NO. 42
Elements Of Liability Under Section 10(b) [Defendants' Version] (*DISPUTED*)................ 68
    Plaintiffs' Argument .................................................................................................... 69
    Defendants' Argument ................................................................................................. 69

JURY INSTRUCTION NO. 43
Element 1 Of Section 10(b) — Misstatement Or Omission .................................................. 71

JURY INSTRUCTION NO. 44
Statements Must Be Considered In Context (*DISPUTED*) .................................................. 72
    Defendants' Argument For Instruction No. 44 ............................................................... 73
    Plaintiffs' Argument Against Instruction No. 44 ............................................................ 73

JURY INSTRUCTION NO. 45
Projections (*DISPUTED*) .................................................................................................... 74
    Defendants' Argument For Instruction No. 45 ............................................................... 75
    Plaintiffs' Argument Against Instruction No. 45 ............................................................ 76

JURY INSTRUCTION NO. 46
Statements Of Opinion Or Belief (*DISPUTED*) ................................................................. 77
    Defendants' Argument For Instruction No. 46 ............................................................... 78
    Plaintiffs' Argument Against Instruction No. 46 ............................................................ 78

JURY INSTRUCTION NO. 47
Meaningful Cautions (*DISPUTED*) .................................................................................... 79
    Defendants' Argument For Instruction No. 47 ............................................................... 81
    Plaintiffs' Argument Against Instruction No. 47 ............................................................ 82

JURY INSTRUCTION NO. 48
Forward Looking Statements & Meaningful Cautions (*DISPUTED*) .................................. 84
    Plaintiffs' Argument For Instruction No. 48................................................................... 85
    Defendants' Argument Against Instruction No. 48 ........................................................ 85

JURY INSTRUCTION NO. 49
Risks Adequately Disclosed (*DISPUTED*)......................................................................... 86
    Defendants' Argument For Instruction No. 49 ............................................................... 87

Plaintiffs' Argument Against Instruction No. 49 ........................................................... 88

JURY INSTRUCTION NO. 50
Historical Statements (*DISPUTED*) ............................................................................ 89
    Defendants' Argument For Instruction No. 50 ......................................................... 90
    Plaintiffs' Argument Against Instruction No. 50 ..................................................... 90

JURY INSTRUCTION NO. 51
Element 2 Of Section 10(b) — Materiality ................................................................... 92

JURY INSTRUCTION NO. 52
Truth-on-the-Market (*DISPUTED*) ............................................................................ 93
    Defendants' Argument For Instruction No. 52 ......................................................... 94
    Plaintiffs' Argument Against Instruction No. 52 ..................................................... 95

JURY INSTRUCTION NO. 53
Puffery (*DISPUTED*) ................................................................................................. 96
    Defendants' Argument For Instruction No. 53 ......................................................... 97
    Plaintiffs' Argument Against Instruction No. 53 ..................................................... 97

JURY INSTRUCTION NO. 54
Element 3 Of Section 10(b) — Scienter (*DISPUTED*) ............................................... 98
    Plaintiffs' Argument ............................................................................................... 100
    Defendants' Argument ............................................................................................ 100

JURY INSTRUCTION NO. 55
Good Faith (*DISPUTED*) .......................................................................................... 103
    Defendants' Argument For Instruction No. 55 ....................................................... 104
    Plaintiffs' Argument Against Instruction No. 55 ................................................... 104

JURY INSTRUCTION NO. 56
Stock Sales (*DISPUTED*) ......................................................................................... 106
    Defendants' Argument For Instruction No. 56 ....................................................... 107
    Plaintiffs' Argument Against Instruction No. 56 ................................................... 108

JURY INSTRUCTION NO. 57
Access To Information (*DISPUTED*) ........................................................................ 109
    Defendants' Argument For Instruction No. 57 ....................................................... 110
    Plaintiffs' Argument Against Instruction No. 57 ................................................... 110

JURY INSTRUCTION NO. 58
Specific Details (*DISPUTED*) ................................................................................... 111
    Defendants' Argument For Instruction No. 58 ....................................................... 112
    Plaintiffs' Argument Against Instruction No. 58 ................................................... 112

JURY INSTRUCTION NO. 59
Application of GAAP (*DISPUTED*) .......................................................................... 113
    Defendants' Argument For Instruction No. 59 ....................................................... 114
    Plaintiffs' Argument Against Instruction No. 59 ................................................... 114

JURY INSTRUCTION NO. 60
Awareness of Problems (*DISPUTED*) ....................................................................... 116
    Defendants' Argument For Instruction No. 60 ....................................................... 117
    Plaintiffs' Argument Against Instruction No. 60 ................................................... 117

JURY INSTRUCTION NO. 61
Element 4 Of Section 10(b) — Loss Causation [Plaintiffs' Version] (*DISPUTED*) ........... 118

JURY INSTRUCTION NO. 62
Element 4 Of Section 10(b) — Loss Causation [Defendants' Version] (*DISPUTED*) ....... 119
    Plaintiffs' Argument ............................................................................................... 120

Defendants' Argument ................................................................................ 121

JURY INSTRUCTION NO. 63
Loss Causation — Intervening Cause (*DISPUTED*) ............................................ 123
    Defendants' Argument For Instruction No. 63 ............................................ 124
    Plaintiffs' Argument Against Instruction No. 63 ........................................ 124

JURY INSTRUCTION NO. 64
Section 10(b) — Damages (*DISPUTED*) ...................................................... 125
    Defendants' Argument For Instruction No. 64 ............................................ 127
    Plaintiffs' Argument Against Instruction No. 64 ........................................ 128

JURY INSTRUCTION NO. 65
Section 10(b) — Aggregate Damages (*DISPUTED*) .......................................... 129
    Plaintiffs' Argument For Instruction No. 65 ............................................. 131
    Defendants' Argument Against Instruction No. 65 ....................................... 131

JURY INSTRUCTION NO. 66
Section 10(b) — Per Share Damages (*DISPUTED*) .......................................... 133
    Plaintiffs' Argument For Instruction No. 66 ............................................. 134
    Defendants' Argument Against Instruction No. 66 ....................................... 135

JURY INSTRUCTION NO. 67
Section 10(b) — Apportionment of Responsibility (*DISPUTED*) ........................... 136
    Plaintiffs' Argument For Instruction No. 67 ............................................. 137
    Defendants' Argument Against Instruction No. 67 ....................................... 137

JURY INSTRUCTION NO. 68
Insider Trading Under Section 10(b) (*DISPUTED*) .......................................... 139
    Plaintiffs' Argument For Instruction No. 68 ............................................. 140
    Defendants' Argument Against Instruction No. 68 ....................................... 141

JURY INSTRUCTION NO. 69
Damages for Insider Trading Under Section 10(b) (*DISPUTED*) ........................... 143
    Plaintiffs' Argument For Instruction No. 69 ............................................. 144
    Defendants' Argument Against Instruction No. 69 ....................................... 144

SECTION 14(a) INSTRUCTIONS ......................................................................... 146

JURY INSTRUCTION NO. 70
Elements Of Liability Under Section 14(a) (*DISPUTED*) ................................... 147
    Plaintiffs' Argument ........................................................................ 149
    Defendants' Argument ....................................................................... 149

JURY INSTRUCTION NO. 71
Element 1 Of Section 14(a) — Misstatements Or Omission ................................... 151

JURY INSTRUCTION NO. 72
Element 2 Of Section 14(a) — Materiality ...................................................... 152

JURY INSTRUCTION NO. 73
Element 3 Of Section 14(a) — Knowing, Reckless, Or Negligent Conduct ................... 153

JURY INSTRUCTION NO. 74
Element 4 Of Section 14(a) — Essential Link ................................................... 154

JURY INSTRUCTION NO. 75
Element 5 Of Section 14(a) — Causation (*DISPUTED*) ...................................... 155
    Defendants' Argument For Instruction No. 75 ............................................ 156
    Plaintiffs' Argument Against Instruction No. 75 ........................................ 156

JURY INSTRUCTION NO. 76
    Element 6 Of Section 14(a) — Damages ............................................................................ 158

JURY INSTRUCTION NO. 77
    No Double Damages (*DISPUTED*) ................................................................................ 159
        Defendants' Argument For Instruction No. 77 .......................................................... 160
        Plaintiffs' Argument Against Instruction No. 77 ...................................................... 160

SECTION 20(a) INSTRUCTIONS ................................................................................................ 162

JURY INSTRUCTION NO. 78
    Elements Of Liability Under Section 20(a) ...................................................................... 163

JURY INSTRUCTION NO. 79
    Definition Of Controlling Person (*DISPUTED*) ......................................................... 164
        Defendants' Argument For Instruction No. 79 .......................................................... 165
        Plaintiffs' Argument Against Instruction No. 79 ...................................................... 165

JURY INSTRUCTION NO. 80
    Violation of Section 20(a) (*DISPUTED*) ..................................................................... 166
        Plaintiffs' Argument For Instruction No. 80 ............................................................ 168
        Defendants' Argument Against Instruction No. 80 .................................................. 168

JURY INSTRUCTION NO. 81
    Defense To Section 20(a) Liability — Good Faith [Plaintiffs' Version] (*DISPUTED*) ...... 169

JURY INSTRUCTION NO. 82
    Defense To Section 20(a) Liability — Good Faith [Defendants' Version] (*DISPUTED*) .. 170
        Plaintiffs' Argument ................................................................................................ 171
        Defendants' Argument ............................................................................................. 171

SECTION 20A INSTRUCTIONS ................................................................................................ 173

JURY INSTRUCTION NO. 83
    Elements Of Liability Under Section 20A [Plaintiffs' Version] (*DISPUTED*) .................. 174

JURY INSTRUCTION NO. 84
    Elements Of Liability Under Section 20A [Defendants' Version] (*DISPUTED*) ............... 175
        Plaintiffs' Argument ................................................................................................ 176
        Defendants' Argument ............................................................................................. 176

JURY INSTRUCTION NO. 85
    Materiality (*DISPUTED*) ............................................................................................ 180
        Plaintiffs' Argument ................................................................................................ 181
        Defendants' Argument ............................................................................................. 181

JURY INSTRUCTION NO. 86
    Contemporaneous Trading (*DISPUTED*) ................................................................... 182
        Plaintiffs' Argument For Instruction No. 86 ............................................................ 183
        Defendants' Argument Against Instruction No. 86 .................................................. 183

JURY INSTRUCTION NO. 87
    Damages ......................................................................................................................... 185

SECTION 11 INSTRUCTIONS ................................................................................................... 186

JURY INSTRUCTION NO. 88
    Elements Of Liability Under Section 11 .......................................................................... 187

JURY INSTRUCTION NO. 89
Element 1 Of Section 11 — Misstatements Or Omissions ................................................. 189

JURY INSTRUCTION NO. 90
Materiality — Voting Decision ......................................................................................... 190

JURY INSTRUCTION NO. 91
Section 11 — Damages .................................................................................................... 191

JURY INSTRUCTION NO. 92
Defense To Section 11 Liability — Negative Causation ................................................... 193

JURY INSTRUCTION NO. 93
Defense To Section 11 Liability — Reasonable Reliance ................................................. 194

JURY INSTRUCTION NO. 94
Defense To Section 11 Liability — Due Diligence .......................................................... 195

SECTION 12(a) INSTRUCTIONS ......................................................................................... 196

JURY INSTRUCTION NO. 95
Elements Of Liability Under Section 12(a) ...................................................................... 197

JURY INSTRUCTION NO. 96
Element 1 Of Section 12(a) — Misstatements Or Omissions ........................................... 199

JURY INSTRUCTION NO. 97
Element 2 Of Section 12(a) — Materiality — Voting Decision ........................................ 200

JURY INSTRUCTION NO. 98
Element 3 Of Section 12(a) — Damages .......................................................................... 201

JURY INSTRUCTION NO. 99
Defense To Section 12(a) Liability — Negative Causation ............................................... 202

JURY INSTRUCTION NO. 100
Defense To Section 12(a) Liability — Reasonable Care ................................................... 203

SECTION 15 INSTRUCTIONS .............................................................................................. 204

JURY INSTRUCTION NO. 101
Elements Of Liability Under Section 15 ........................................................................... 205

JURY INSTRUCTION NO. 102
Definition Of Controlling Person (*DISPUTED*) ................................................................ 206
Plaintiffs' Argument ......................................................................................................... 207
Defendants' Argument ..................................................................................................... 207

ACCOUNTING-RELATED INSTRUCTIONS ........................................................................ 208

JURY INSTRUCTION NO. 103
Generally Accepted Accounting Principles (*DISPUTED*) ................................................ 209
Defendants' Argument For Instruction No. 103 ............................................................... 210
Plaintiffs' Argument Against Instruction No. 103 ............................................................ 210

JURY INSTRUCTION NO. 104
Unqualified Audit Opinion (*DISPUTED*) ........................................................................ 212
Defendants' Argument For Instruction No. 104 ............................................................... 213
Plaintiffs' Argument Against Instruction No. 104 ............................................................ 213

1   **PRELIMINARY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 1**

**Introduction**

Members of the jury:[1]

Now that you have been sworn in as jurors, I will present you with the following preliminary instructions regarding the nature of this case and your role as jurors. To help you understand the evidence that is presented during this trial, I will instruct you as to some key statutes, terms, and concepts that may be referred to by the court and by the attorneys during their presentations.

I emphasize that these instructions are preliminary — that is, they do not cover all of the legal and factual issues and principles involved in this trial. Rather, these preliminary instructions are intended to provide you with a legal and factual structure for what you will see and hear during these proceedings. I will give you final instructions at the conclusion of this trial, which will govern your deliberations.

Authority:    *See Annotated Manual For Complex Litig.* (Fourth Ed., 2007).

---

[1] The parties have not included in this set of Joint Proposed Jury Instructions all instructions that may be needed in subsequent phases of the trial. The Defendants anticipate that additional and different instruction will be needed after the initial phase. Lead Plaintiff anticipates that the second phase will not involve a trial. In Lead Plaintiff's view, after the trial there will be a Court administered claims proceedings.

GIVEN:

          _____

REFUSED:

          _____

MODIFIED:

          _____

WITHDRAWN:

          _____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 2**

2

**Duty of Jury**

3      Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on

4  the law.

5      These instructions are preliminary instructions to help you understand the principles that

6  apply to civil trials and to help you understand the evidence as you listen to it.  You will be

7  allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be

8  taken home and must remain in the jury room when you leave in the evenings.  At the end of the

9  trial, I will give you a final set of instructions.  It is the final set of instructions which will govern

10  your deliberations.

11      You must not infer from these instructions or from anything I may say or do as indicating

12  that I have an opinion regarding the evidence or what your verdict should be.

13      It is your duty to find the facts from all the evidence in the case.  To those facts you will

14  apply the law as I give it to you.  You must follow the law as I give it to you whether you agree

15  with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

16  prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

17  you.  You will recall that you took an oath to do so.

18      In following my instructions, you must follow all of them and not single out some and

19  ignore others; they are all important.

20

21  Authority:      Ninth Circuit Model Instruction 1.1A, *Ninth Circuit Manual of Model Jury*

22                  *Instructions — Civil* (West Group 2007 ed.).

23

24

25

26

27

28

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____

United States District Judge

1

2

**JURY INSTRUCTION NO. 3**

**Parties and Claims [Plaintiffs' Version] (*DISPUTED*)**

3      This case has been brought as a class action.  A class action is a type of proceeding in

4  which one plaintiff, called the Lead Plaintiff, represents all persons or institutions with similar

5  claims.  I have appointed the Connecticut Retirement Plans and Trust Fund to serve as Lead

6  Plaintiff.  Connecticut represents all persons or institutions that purchased or otherwise acquired

7  JDSU common stock between April 25, 2000, and July 26, 2001 other than the defendants and

8  their affiliates. Connecticut also represents two subclasses of JDSU stockholders. One subclass

9  became stockholders when they exchanged their shares of SDL's stock for JDSU's stock as part

10  of JDSU's acquisition of SDL.  This subclass is called the SDL subclass. The other subclass

11  because stockholders when they exchanged their shares of E-TEK's stock for JDSU's stock as

12  part of JDSU's acquisition of E-TEK. This subclass is called the E-TEK subclass.  I will use the

13  term plaintiffs to refer to Lead Plaintiff and the members of the class.  Any class member who did

14  not wish to be part of this lawsuit was allowed to "opt-out." Whatever verdict you reach will be

15  binding on each and every class member, except for those who opted out.

16      The defendants in this case are JDS Uniphase Corporation (which I will refer to as JDSU),

17  and four individuals, Jozef Straus, Anthony Muller, Jay Abbe, and Kevin Kalkhoven.  When I

18  refer to the defendants I will be referring to all of these parties.  When I refer to the individual

19  defendants, I will be referring to all of the defendants except JDSU.  JDSU, is a corporation.  A

20  corporation is considered a "person" under the law and is entitled to the same fair and impartial

21  treatment that you would give to an individual.

22      The plaintiffs claim to have suffered a loss caused by the defendants' alleged violation of

23  the federal securities laws.  The securities laws govern the buying and selling of securities, such

24  as stocks and bonds.  The plaintiffs have brought claims under Sections 10(b), 14(a), 20(a), and

25  20A of the Securities Exchange Act of 1934 and under Sections 11, 12(a), and 15 of the

26  Securities Act of 1933.  Some of the claims apply to all of the defendants, while other claims

27  apply to some defendants and not others.  You must consider each claim against each defendant

28  separately.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 4**

2

**Parties and Claims [Defendants' Version] (*DISPUTED*)**

3   This case has been brought as a class action. A class action is a type of proceeding in

4 which one plaintiff, called the Lead Plaintiff, represents all persons or institutions with similar

5 claims. The Lead Plaintiff here is the Connecticut Retirement Plans and Trust Fund. Lead

6 Plaintiff represents persons or institutions that purchased or otherwise acquired JDSU common

7 stock between April 25, 2000, and July 26, 2001. Lead Plaintiff also represents a subclass of

8 JDSU stockholders who became stockholders when they exchanged their shares of SDL stock for

9 JDSU stock as part of JDSU's acquisition of SDL. This subclass is called the SDL subclass. I

10 will use the term plaintiffs to refer to Lead Plaintiff and the members of the class.

11   The defendants in this case are JDS Uniphase Corporation (which I will refer to as JDSU),

12 and four individuals, Jozef Straus, Anthony Muller, Jay Abbe, and Kevin Kalkhoven. When I

13 refer to the defendants I will be referring to all of these parties. When I refer to the individual

14 defendants, I will be referring to all of the defendants except JDSU. There are multiple

15 defendants in this case, but it is not necessarily true that if one is liable, then all are liable. Each

16 defendant is entitled to a fair consideration of that defendant's own case. Also, one of the

17 defendants, JDSU, is a corporation. A corporation is considered a "person" under the law and is

18 entitled to the same fair and impartial treatment that you would give to an individual.

19   The plaintiffs claim to have suffered a loss caused by the defendants' alleged violation of

20 the federal securities laws. The securities laws govern the buying and selling of securities, such

21 as stocks and bonds. The plaintiffs have brought claims under Sections 10(b), 14(a), 20(a), and

22 20A of the Securities Exchange Act of 1934 and under Sections 11, 12(a), and 15 of the

23 Securities Act of 1933. Some of the claims apply to all of the defendants, while other claims

24 apply to some defendants and not others. You must consider each claim and the evidence on each

25 claim separately, as if each claim had been tried separately. You must also consider each claim

26 against each defendant separately.

27

28

1

2   GIVEN:

3   REFUSED:   _____

4   MODIFIED:   _____

5

6   WITHDRAWN:   _____

7   _____

8

9                                    _____
                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Argument**

The defendants object to the Court informing the jury that Connecticut was appointed by the Court to act as Lead Plaintiff. The jury should not have to speculate why that is the case and should be told. Defendants cite no authority to suggest that the jury should be kept in the dark as to why Connecticut appears in this case as Lead Plaintiff. Nor is there any reason why the jury should not be told generally about the right to opt out of participating in a class action.

The E-Tek sub-class does indeed still have a claim: namely those who were mislead by the false statements made in the April 25, 2000 conference call.

The defendants' proposed instruction regarding the consideration of each claim and the evidence on each claim separately is not a correct statement of the law. Various pieces of evidence, especially with respect to scienter, are applicable to many or all of the claims. There is no logical or appropriate reason to ask the jury to do the impossible: try each claim against each defendant in an isolation chamber.

**Defendants' Argument**

After meeting and conferring, Defendants proposed a neutral introductory instruction that accurately describes the parties and claims in this action. Instead of agreeing to this, Plaintiffs have taken the opportunity to propose prejudicial, irrelevant, and misleading changes to Defendants' instruction. First, Plaintiffs proposal changes the instruction that "The Lead Plaintiff here is the Connect Retirement Plans and Trust Fund" to state: "I have appointed the Connecticut Retirement Plans and Trust Fund to serve as Lead Plaintiff." The fact that the Court appointed Lead Plaintiff is irrelevant, and the only possible reason for Plaintiffs to suggest the change is to mislead the jury into believing that the Court approves of the Lead Plaintiff or its claims.

Second, Plaintiffs add two sentences to the end of the first paragraph explaining that class members were allowed to "opt-out" of the class. Again, the instruction has no possible relevance to the jury's understanding of the parties or claims in this action. It serves only to confuse the jury.

Third, Plaintiffs add a number of sentences regarding the claims of the E-TEK subclass even though the Court dismissed all claims brought by the E-TEK subclass on summary

judgment.  Plaintiffs' instructions regarding the E-TEK subclass thus do not relate to any claims or issues in this case and would only confuse the jury.

Finally, Plaintiffs delete instructions in the second and third paragraphs regarding the multiple claims and defendants at issue in this case.  These instructions are accurate and necessary.  This case involves multiple complex and potentially confusing claims, each against different sets of Defendants.  An explanation of how the jury should approach considering the claims is therefore necessary.  Both sentences are neutral, accurate, and supported by applicable model jury instructions.  *See, e.g.*, ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 1.04 (1996).

Defendants' instruction should therefore be given to the jury, and Plaintiffs' competing proposal should be rejected.

**JURY INSTRUCTION NO. 5**

**Defendants' Defenses**

On any claim, if you find that each of the elements on which the plaintiffs have the burden of proof has been proved, your verdict should be for the plaintiffs on that claim, unless you also find that any defendant has proved a defense, in which event your verdict should be for that defendant on that claim.


Authority:      Ninth Circuit Model Instruction 5.3, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2001 ed.) (modified).

GIVEN:
                _____

REFUSED:
                _____

MODIFIED:
                _____

WITHDRAWN:
                _____


_____
                                    United States District Judge

**JURY INSTRUCTION NO. 6**

**Burden Of Proof — Preponderance Of The Evidence (*DISPUTED*)**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than false.  **[If the evidence appears to be equally balanced, the question must be resolved against the party upon which the burden of proof rests.]**

You should base your decision on all of the evidence, regardless or which party presented it.

GIVEN:                 _____

REFUSED:             _____

MODIFIED:           _____

WITHDRAWN:       _____

_____
United States District Judge

1

**Plaintiffs' Argument**

2       The defendants' proposed instruction adds unauthorized language to Instruction 1.3 of the

3   Ninth Circuit's Model Jury Instruction (2007 ed.) on the burden of proof and preponderance of

4   the evidence.  The unauthorized language should not be added.  Tinkering with the Model

5   Instruction would open the door to other points.  For example, if the jury is told that equally

6   balanced evidence is insufficient to satisfy the burden, the jury should also be told that what is

7   required to satisfy the burden is only a scintilla greater than equally balanced.  These

8   philosophical distinctions are unhelpful.  Plaintiffs request that the Model Instruction be used.

9

**Defendants' Argument**

10       The portion of this instruction in boldface and brackets is an accurate statement of the law

11   and should be included.  In *Burch v. Reading Co.*, the Court reviewed a trial court's jury

12   instruction on the preponderance of the evidence that said that if the evidence is "so evenly

13   balanced in your mind that you have no conviction, then you must find for the defendant."

14   240 F.2d 574, 577 (3d Cir. 1957).  The Court held that the trial court was within its discretion in

15   providing the instruction because the preponderance of the evidence standard indicates that if "the

16   probabilities of [the] facts being true or false appear equal the plaintiff has not met his burden of

17   proof . . . ."  *Id.* at 579; *see also In re Stein*, 208 B.R. 209, 214 (D. Or. 1997) ("If upon any

18   question in the case, the evidence appears to be equally balanced, or if the court cannot say upon

19   which side it weighs heavier, the question must be resolved against the party upon which the

20   burden of proof rests.").  Therefore, this instruction is an accurate statement of the law and is an

21   appropriate instruction to be provided to the jury.

22       Moreover, the relevant portion of this instruction is necessary in order to avoid potential

23   juror confusion.  The model instruction provides no guidance on the proper result in the event that

24   the evidence is equally weighted in favor of both parties.  In such an event, the preponderance of

25   the evidence standard indicates that the party that bears the burden has failed to meet that burden.

26

27

28

## JURY INSTRUCTION NO. 7

### What Is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1.     The sworn testimony of any witness, *whether from the witness stand, video deposition, or deposition transcripts that are read aloud*;

2.     The exhibits which are received into evidence; and

3.     Any facts to which the lawyers have agreed.

Authority:     Ninth Circuit Model Instruction 1.6, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.) (modified).

GIVEN:        _____

REFUSED:     _____

MODIFIED:    _____

WITHDRAWN:  _____

_____
United States District Judge

**JURY INSTRUCTION NO. 8**

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


Authority:      Ninth Circuit Model Instruction 1.7, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

**JURY INSTRUCTION NO. 9**

**Evidence for Limited Purpose**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and for no other purpose.]

Authority:     Ninth Circuit Model Instruction 1.8, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:                 _____

REFUSED:              _____

MODIFIED:            _____

WITHDRAWN:        _____

_____
United States District Judge

**JURY INSTRUCTION NO. 10**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.


Authority:       Ninth Circuit Model Instruction 1.9, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 11**

2

**Ruling on Objections**

3       There are rules of evidence that control what can be received into evidence. When a

4   lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that

5   it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the

6   question may be answered or the exhibit received. If I sustain the objection, the question cannot

7   be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question,

8   you must ignore the question and must not guess what the answer might have been.

9       Sometimes I may order that evidence be stricken from the record and that you disregard or

10   ignore the evidence. That means that when you are deciding the case, you must not consider the

11   evidence that I told you to disregard.

12

13   Authority:       Ninth Circuit Model Instruction 1.10, *Ninth Circuit Manual of Model Jury
                      Instructions — Civil* (West Group 2007 ed.).

14

15   GIVEN:

16                      _____

     REFUSED:

17                      _____

18   MODIFIED:

19                      _____

     WITHDRAWN:

20                      _____

21

22                                          _____

23                                                  United States District Judge

24

25

26

27

28

**JURY INSTRUCTION NO. 12**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;

2.   the witness's memory;

3.   the witness's manner while testifying;

4.   the witness's interest in the outcome of the case and any bias or prejudice;

5.   whether other evidence contradicted the witness's testimony;

6.   the reasonableness of the witness's testimony in light of all the evidence; and

7.   any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.


Authority:       Ninth Circuit Model Instruction 1.11, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:         _____

REFUSED:      _____

MODIFIED:     _____

WITHDRAWN:   _____


_____
United States District Judge

**JURY INSTRUCTION NO. 13**

**Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

Authority:     Ninth Circuit Model Instruction 1.12, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

REFUSED:      _____

MODIFIED:     _____

WITHDRAWN:    _____

              _____

_____
                    United States District Judge

**JURY INSTRUCTION NO. 14**

**No Transcript Available to Jury**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.  However, if you want to rehear testimony, please communicate your request to the court and the attorneys and I will endeavor to locate the portion or portions of the transcript that are appropriate to have reread to you.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.


Authority:      Ninth Circuit Model Instruction 1.13, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____


_____
                              United States District Judge

**JURY INSTRUCTION NO. 15**

**Taking Notes**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

Authority:     Ninth Circuit Model Instruction 1.14, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:          _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:      _____

_____
                                        United States District Judge

**JURY INSTRUCTION NO. 16**

**Bench Conferences and Recesses**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess.  Please understand that while you [are] [were] waiting, we [are] [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum.  I [may] [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.


Authority:      Ninth Circuit Model Instruction 1.18, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

                    _____

REFUSED:

                    _____

MODIFIED:

                    _____

WITHDRAWN:

                    _____


                                                    _____
                                                                United States District Judge

**JURY INSTRUCTION NO. 17**

**Outline of Trial**

The next phase of the trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

After opening statement, the plaintiffs will present evidence.  After plaintiffs' counsel conducts a direct examination of a witness, counsel for the defendants may cross-examine the witness.  If testimony is presented by video deposition, counsel for the defendants have had an opportunity to cross-examine the witness during the deposition.  During plaintiffs' presentation of evidence, the Court may, for efficiency reasons, require defendants to conduct their examination of the witness following plaintiffs' examination.  When plaintiffs have concluded their presentation of evidence, defendants may present additional evidence, and counsel for the plaintiffs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Authority:      Ninth Circuit Model Instruction 1.19, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.) (modified).

GIVEN:

REFUSED:          _____

MODIFIED:         _____

WITHDRAWN:        _____

                  _____


_____
                    United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JURY INSTRUCTION NO. 18

### Activities Not At Issue (*DISPUTED)*

   The defendants' liability can be based only on those allegations as to which I will instruct you, not on any other activities.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                         United States District Judge

**Defendants' Argument For Instruction No. 18**

Although it is self-evident to judges and lawyers that a finding of liability or non-liability against a defendant must be based on facts bearing only on the legal theories as to which the jury has been instructed, that may not be self-evident to jurors.  And while Defendants have moved *in limine* to preclude the introduction of anticipated evidence or argument that is irrelevant, inevitably not all such evidence or argument can be anticipated and kept from the jury.  Defendants submit that this proposed instruction is appropriate to ensure that the jury does not base its verdict on evidence or argument immaterial to the legal theories of liability as to which they are instructed.

**Plaintiffs' Argument Against Instruction No. 18**

Defendants' concern about irrelevant evidence being considered by the jury is unrealistic.  The court will make evidentiary rulings that will deny admissibility to any evidence found irrelevant.  Clearly, the evidence found relevant and admitted should be considered by the jury.  Accordingly, no instruction about what the jury should consider is necessary – it will and should consider all evidence that is admitted.

Moreover, the proposed instruction is derived from the Model Criminal Instructions which are not applicable in this case.

The proposed instruction is confusing, unbalanced and erroneously heightens plaintiffs' burden of proof.   Telling the jury to ignore all evidence other than "those allegations" on which the court will instruct effectively tells the jury to ignore most of the evidence.

**JURY INSTRUCTION NO. 19**

**Discredited Testimony (*DISPUTED)***

If you do not believe a witness's testimony as to a particular fact, you may disregard that testimony. But discredited testimony is not a sufficient basis for you to draw a contrary conclusion, and is not a substitute for proof of a party's claims or defenses.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 19**

2          The proposed jury instruction accurately reflects and articulates an important subtlety in

3    the law that the jury otherwise is unlikely to understand.  The Supreme Court has repeatedly held

4    that while a trier of fact may disregard testimony that he or she does not believe, such discredited

5    testimony may not be the basis for drawing a contrary conclusion and consequently may not a

6    substitute for proof of a party's claims or defenses.  *Bose Corp. v. Consumers Union*, 466 U.S.

7    485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply

8    disregard it.  Normally the discredited testimony is not considered a sufficient basis for drawing a

9    contrary conclusion"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (a plaintiff may

10   not defeat summary judgment "without offering any concrete evidence from which a jury could

11   return a verdict in his favor and by merely asserting that the jury might, and legally could,

12   disbelieve the defendant's [testimony] . . . [D]iscredited testimony is not normally considered a

13   sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative

14   evidence . . .") (quotations marks, brackets, and citation omitted); *Moore v. Chesapeake & O. R.*

15   *Co.,* 340 U.S. 573, 574 (1951) ("True, it is the jury's function to credit or discredit all or part of

16   the testimony.  But disbelief of [a witness's] testimony would not supply a want of proof");

17   *Bunt v. Sierra Butte Gold Mining Co.,* 138 U.S. 483, 485 (1891) ("[D]isbelief of [witness's]

18   testimony could not supply a want of proof").

19          Plaintiffs' suggestion that a contrary conclusion may be drawn from discredited testimony

20   as long as there is other evidence "tending to support the contrary conclusion" is inconsistent with

21   the law.  Other evidence does not breathe life into discredited testimony thereby allowing

22   contrary conclusions to drawn therefrom.  Rather, contrary conclusions may be drawn only from

23   such other evidence.

24

**Plaintiffs' Argument Against Instruction No. 19**

25          This proposed instruction is not authorized or even suggested by the Ninth Circuit Model

26   Jury Instructions.  If any instruction on this topic is given at all, the jury should be instructed that

27   if it finds that a witness testified falsely about any matter, the jury may disregard that part of the

28   testimony or it may disregard the witness's testimony in its entirety.

JOINT PROPOSED JURY INSTRUCTIONS                                                                32
C-02-1486 CW (EDL)
sf-2384909

1    The proposed instruction is also confusing and not supported by the authority cited.  The

2    legal proposition correctly stated is that discredited testimony about a fact in issue is not a

3    sufficient basis for drawing a contrary conclusion in the absence of any other evidence tending to

4    establish the contrary conclusion.  Such an instruction is not necessary since any claim that is

5    supported only by discredited testimony will be dismissed.

1

**JURY INSTRUCTION NO. 20**

2

**Defendant's Financial or Job Status (*DISPUTED*)**

3       The fact that you may think a defendant is wealthy should not affect your verdict. All

4   persons are equal before the law and are entitled to the same fair and conscientious consideration

5   regardless of wealth. Similarly, the mere fact that a defendant has or had a high-level job should

6   not affect your verdict.

7

8

9   GIVEN:

10                  _____

11  REFUSED:

                    _____

12  MODIFIED:

13                  _____

14  WITHDRAWN:

15                  _____

16                  _____

                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument For Instruction No. 20**

Evidence of an individual defendant's wealth would tell the jury nothing about whether or not that defendant committed the wrongdoing alleged in this case. At the least, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. More likely, such evidence is entirely irrelevant. In the words of the Ninth Circuit:

> A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

*United States v. Mitchell,* 172 F.3d 1104, 1108-09 (9th Cir. 1999) (finding prejudicial error and setting aside jury verdict); *accord United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) (noting that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should be ever alert to prevent them" and condemning, among other references to defendants' privileged positions, characterization of defendants as "malefactors of great wealth"); *see also United States v. Stahl,* 616 F.2d 30, 32-33 (2d Cir. 1980) (reversing jury verdict because references to defendant's wealthy lifestyle were "improper and have no place in a court room"); *Peters v. N. Trust Co.,* No. 92 C 1647, 2001 WL 1002499, at *1 (N.D. Ill. Aug. 29, 2001) (excluding references to defendant as a millionaire or a wealthy man).

Because evidence of an Individual Defendant's wealth and lifestyle has no probative value whatsoever but presents a high risk of unfair prejudice, confusion of the issues, and misleading the jury, defendants have moved *in limine* to exclude such evidence under Federal Rules of Evidence 402 and 403. In addition, Defendants request the foregoing instruction to help assure that any speculation by the jury as to the Individual Defendants' wealth does not factor into their verdict.

For the same reasons, Defendants request the foregoing instruction to help ensure that the mere fact that the Individual Defendants' held high-level positions at JDSU does not factor into their verdict.

1

**Plaintiffs' Argument Against Instruction No. 20**

2     This proposed instruction seeks to circumvent what the defendants foresee as a denial of

3  their in limine motion number 2.  The evidence is admissible and should be considered by the

4  jury for the reasons set forth in plaintiffs' opposition to defendants' in limine motion number 2.

5     Moreover, this proposed instruction is unnecessary and potentially confusing.  Part of

6  plaintiffs' case is to show that the individual defendants acquired great wealth in connection with

7  their sale of JDSU stock.  This evidence bears on plaintiffs' insider trading claims as well as the

8  issue of defendants' scienter and although maybe "prejudicial" in the sense that it is harmful to

9  defendants, it is also extremely probative.

10     Additionally, the cited authority does not support the proposed instruction.  The cases

11  establishing that evidence of poverty is not admissible to prove motive to steal are inapposite and

12  are premised on entirely different principles than those applicable in this case.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 21**

**Stipulated Testimony**

The parties have agreed what [*witness*]'s testimony would be if called as a witness.  You should consider that testimony in the same way as if it had been given here in court.


Authority:         Ninth Circuit Model Instruction 2.1, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

                    _____

REFUSED:

                    _____

MODIFIED:

                    _____

WITHDRAWN:

                    _____


                              _____
                                        United States District Judge

**JURY INSTRUCTION NO. 22**

**Stipulations of Fact**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you].  You should therefore treat these facts as having been proved.


Authority:       Ninth Circuit Model Instruction 2.2, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:
                        _____

REFUSED:
                        _____

MODIFIED:
                        _____

WITHDRAWN:
                        _____


                              _____
                              United States District Judge

**JURY INSTRUCTION NO. 23**

**Judicial Notice**

The court has decided to accept as proved the fact that [*state fact*], even though no

evidence has been introduced on the subject.  You must accept this fact as true.


Authority:      Ninth Circuit Model Instruction 2.3, *Ninth Circuit Manual of Model Jury
                Instructions — Civil* (West Group 2007 ed.).

GIVEN:

                _____

REFUSED:

                _____

MODIFIED:

                _____

WITHDRAWN:

                _____


_____
                        United States District Judge

**JURY INSTRUCTION NO. 24**

**Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken out of court and before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded and often, as in this case, the entire deposition is recorded on videotape. When a person is unavailable to testify at trial, the deposition or portions of the deposition of that person may be used at the trial. You should consider the portions of deposition testimony, presented to you in court by videotape or read aloud in lieu of live testimony, in the same way as if the witness had been present here in court to testify.

Authority: Ninth Circuit Model Instruction 2.4, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.) (modified).

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

**JURY INSTRUCTION NO. 25**

**Use Of Interrogatories Of A Party**

Evidence is now to be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions which were submitted in writing under established court procedures.  The answers are entitled to the same consideration and are to be judged as to credibility and weight, and otherwise considered by you insofar as possible, as if the answers were made from the witness stand.

Authority:  Ninth Circuit Model Instruction 2.13, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2001 ed.).

GIVEN:    _____

REFUSED:    _____

MODIFIED:    _____

WITHDRAWN:    _____

_____
United States District Judge

**JURY INSTRUCTION NO. 26**

**Use Of Admissions Of A Party**

Evidence is now to be presented to you in the form of admissions of one of the parties to written requests for admission submitted by the other side.  These admissions have been given in writing and under oath, before the actual trial, in response to requests for admission which were submitted in writing under established court procedures.  You should treat any matter that has been admitted as having been conclusively established for purposes of this case.


Authority:      Fed. R. Civ. P. 36(b).


GIVEN:              _____

REFUSED:            _____

MODIFIED:           _____

WITHDRAWN:          _____


_____
                           United States District Judge

**JURY INSTRUCTION NO. 27**

**Transcript of Tape Recording**

      You [are about to listen] [have listened] to a tape recording that has been received in evidence.  [Please listen to it very carefully.]  Each of you [has been] [was] given a transcript of the recording to help you identify speakers and as a guide to help you listen to the tape.  However, bear in mind that the tape recording is the evidence, not the transcript.  If you [hear] [heard] something different from what [appears] [appeared] in the transcript, what you heard is controlling.  After the tape has been played, the transcript will be taken from you.


Authority:      Ninth Circuit Model Instruction 2.5, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

          _____

REFUSED:

          _____

MODIFIED:

          _____

WITHDRAWN:

          _____


_____
            United States District Judge

**JURY INSTRUCTION NO. 28**

**Impeachment Evidence — Witness**

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.


Authority:        Ninth Circuit Model Instruction 2.8, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

                    _____

REFUSED:

                    _____

MODIFIED:

                    _____

WITHDRAWN:

                    _____


                                        _____
                                        United States District Judge

**JURY INSTRUCTION NO. 29**

**Missing Witness (*DISPUTED*)**

   If it is within the exclusive power of either plaintiffs or defendants to produce a witness who could give relevant testimony on an issue in this case, failure to call that witness may give rise to an inference that this testimony would have been unfavorable to that party.  No such inference should be drawn by you, however, with regard to a witness who is equally unavailable to both parties or where the testimony of that witness would be merely repetitive or cumulative.

GIVEN:    _____

REFUSED:   _____

MODIFIED:   _____

WITHDRAWN:  _____


         _____
           United States District Judge

1

**Plaintiffs' Argument For Instruction No. 29**

2      "A "missing witness" instruction is permissible when a party fails to call a witness who is

3  either (1) "favorably disposed" to testify for that party, by virtue of status or relationship with the

4  party or (2) "peculiarly available" to that party, such as being within the party's "exclusive

5  control." *Grajales-Romero v. American Airlines, Inc.,*194 F.3d 288 (1st Cir. 1999), *quoting*

6  *United States v. DeLuca*, 137 F.3d 24, 38 (1st Cir.1998).   Many of the witnesses on defendants'

7  witness list who reside outside the subpoena power of this Court are current employees of JDSU,

8  or are former employees who are represented by counsel for JDSU and whose attorneys' fees are

9  paid by JDSU.  Current employees who are outside the jurisdiction of the Court are peculiarly

10  available to JDSU and are within JDSU's exclusive control.  Similarly, former employees who

11  are represented by counsel for JDSU and whose attorneys' fees JDSU is paying are favorably

12  disposed to testify for that party by virtue of status and relationship.

13

**Defendants' Argument Against Instruction No. 29**

14      This instruction is an incorrect statement of the law.  It is also confusing and would be

15  unduly prejudicial to the Defendants.  In particular, Plaintiffs' instruction goes against the weight

16  of authority.  For example, Rule 804 of the Federal Rules of Evidence enumerates five

17  circumstances in which a witness is deemed to be "unavailable" to give live testimony at trial for

18  the purpose of introducing that witness' out-of-court statements.  *See* Fed. R. Evid. 804(a)(1)-(5).

19  Those circumstances include instances where a witness is outside of the court's subpoena power,

20  is unable to testify due to poor health, or lacks memory.  *See* Fed. R. Evid. 804(a)(3)-(5).

21  Nowhere does Rule 804 provide that a party who has "exclusive power" over a witness must

22  produce that witness to testify at trial.  Similarly, Rule 32 of the Federal Rules of Civil Procedure,

23  which also addresses the issue of a witness' availability, contradicts Plaintiffs' instruction.  *See*

24  Fed. R. Civ. P. 32(a)(3)(B) (no requirement that party take affirmative steps to procure witness'

25  attendance at trial in order to use that witness' deposition testimony); *see also Groggel v. Horsely*

26  *Co.*, 333 B.R. 261, 301 n.20 (W.D. Pa. 2005) (corporation's counsel informing employees "that

27  they did not need to attend the trial if they did not wish to do so . . . amounts to nothing more than

28  a benign failure to facilitate such individual's presence at trial.").

1    Nor is a witness deemed to be in the "exclusive power" of a party by virtue of the witness'

2    employment relationship with that party.  The availability of an employee witness is determined

3    by the same rules as apply to other witnesses.  Therefore, a party does not have a duty to produce

4    a witness who meets the "unavailable" definition under the Federal Rules of Evidence and Civil

5    Procedure.  *See, e.g.*, *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 203 (1st Cir. 1988)

6    (corporation's employees who were at sea at time of trial were unavailable); *Air Turbine Tech.,*

7    *Inc., v. Atlas Copco AB*, 217 F.R.D. 545, 546 (S.D. Fla. 2003) (company's employees who

8    resided in Sweden were outside of court's subpoena power and did not have to appear at trial).

9    Furthermore, the case Plaintiffs cite provides absolutely no support for giving a "missing

10   witness" instruction in this matter because, in that case, there was evidence that a party who *could*

11   *have* produced a witness had intentionally failed to do so.  *See Grajales-Romero v. Am. Airlines,*

12   *Inc.*, 194 F.3d 288 (1st Cir. 1999).  In *Grajales-Romero*, a company had listed one of its

13   employees as a trial witness.  *Id*. at 297-98.  Although the witness was present during part of the

14   trial, he failed to appear when he was called to testify by the plaintiffs.  *Id*.  There was evidence

15   that the company intentionally failed to produce the witness for tactical reasons.  *Id*. at 298.

16   Based on this evidence, the circuit court affirmed the trial court's "missing witness" instruction.

17   *Id*.  Unlike *Grajales-Romero*, Plaintiffs have pointed to no evidence that Defendants intentionally

18   failed to produce witnesses.  Therefore, even assuming that a "missing witness" instruction was

19   appropriate in some instances, it would be inapplicable and unduly prejudicial to Defendants here.

20   Furthermore, *Grajales-Romero* did not address the issue of whether a witness was available to

21   attend trial in the first place since it was clear that the witness in that case was available to testify.

22   *Id*. at 297-98.

23   For these reasons, the Court should exclude this instruction.

24

25

26

27

28

1      **JURY INSTRUCTION NO. 30**

2      **Electronic Mail (Email) Presumptively Received (*DISPUTED*)**

3          To the extent the evidence presented to you involves email communications, you must

4      presume that such email communications were actually received by the intended recipients.

5      Defendants may overcome this presumption if they prove by a preponderance of the evidence that

6      such email communications were not, in fact, received by the intended recipients.

7

8

9      GIVEN:

10                    _____

11     REFUSED:

                      _____

12     MODIFIED:

13                    _____

14     WITHDRAWN:

                      _____

15

16                                        _____

                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

1 **Plaintiffs' Argument For Instruction No. 30**

2        A jury is permitted to infer that information sent via electronic mail was received,

3 provided it is accepted as generally reliable and that the particular message was properly

4 dispatched. *Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005). JDSU

5 has never raised the issue that their email communication system is unreliable. Nor has any

6 witness on either parties' witness list affirmatively testified that he or she did not receive or did

7 not properly dispatch a particular email. In fact, the vast majority of witnesses, when asked,

8 testified that they had no reason to doubt that they received a particular email.

9 **Defendants' Argument Against Instruction No. 30**

10        This instruction is inappropriate in this case. The two cases cited by Plaintiffs are

11 inapposite and provide no support for including this sweeping instruction. Both cases arise in the

12 context of a party's motion to reopen the time to appeal based on the alleged failure to receive

13 notice of final judgment. *See Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910 (8th

14 Cir. 2005); *Dempster v. Dempster*, 404 F. Supp. 2d 445 (E.D.N.Y. 2005). In both cases, the

15 Courts rely on the fact that there was a court clerk's docket entry to establish that the e-mail was

16 sent on a particular date and time and not returned as undeliverable. *Am. Boat Co.*, 418 F.3d at

17 913; *Dempster*, 404 F. Supp. 2d at 447. In *Dempster*, the Court held that the presumption was

18 applicable because the Eighth and Second Circuit had adopted the underlying maxim that "the

19 clerk's docket entries are presumed correct in the absence of reliable evidence to the contrary."

20 404 F. Supp. 2d at 449. Plaintiffs cite no authority that this maxim applies outside that context.

21        Moreover, this instruction is highly prejudicial to Defendants, because it would

22 improperly shift the burden to Defendants to prove absence of knowledge on certain claims.

23 Plaintiffs cite no authority that shifting the burden in that manner is appropriate in this case.

24        This instruction should not be given.

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                                                    49
C-02-1486 CW (EDL)
sf-2384909

**JURY INSTRUCTION NO. 31**

**Expert Opinion**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.


Authority:    Ninth Circuit Model Instruction 2.11, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

**JURY INSTRUCTION NO. 32**

**Liability Of Corporations — Scope Of Authority Not In Issue (*DISPUTED*)**

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**Plaintiffs' Argument For Instruction No. 32**

2        Plaintiffs request that the jury be instructed as proposed in this instruction and as proposed

3   in Instruction Nos. 33 and 34.  These instructions are derived from the Ninth Circuit Model Jury

4   Instructions (2007 ed.), Instructions 4.2, 4.5 and 4.6.  Defendants' objections that these

5   instructions are "vague and overbroad" are not persuasive.  The model language is plain and

6   clear.  The objections that the concepts incorporated in these instructions "circumvent the

7   requirements of the Securities Act" are misplaced.  Clearly JDSU is responsible for the acts of its

8   employees, agents, directors and officers performed within the scope of authority.  Defendants

9   refer to *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).  But that

10  case is inapposite and defendants cite no authority even suggesting that these basic concepts of

11  respondeat superior do not apply.  They do apply.  *Hollinger v. Titan Capital Corp.*, 914 F.2d

12  1564, 1576-78 (9th Cir. 1990).

13

**Defendants' Argument Against Instruction No. 32**

14       Plaintiffs' jury instructions regarding general principals of agency law are not applicable

15  and should not be given.  Notably, Plaintiffs provide no legal authority for these instructions.

16       First, the instructions are vague and overbroad.  No single principle of agency law applies

17  to all claims made in Plaintiff's Second Amended Complaint.  To the extent that the jury needs to

18  be instructed on issues of agency, they should be instructed on a claim-by-claim basis, as

19  relevant.  Providing these general instructions to the jury would be confusing.

20       Second, in seeking these instructions, Plaintiffs attempt to circumvent the requirements of

21  the Securities Act.  The federal securities statutes and applicable case law set forth the specific

22  elements required to hold a person, or corporation, liable for an alleged violation.  Moreover, the

23  Securities Act provides defenses to JDSU that are not available to the Individual Defendants, yet

24  these instructions suggest that JDSU will automatically be found liable on a claim if an Individual

25  Defendant is liable.

26       Third, it is unclear whether general common-law theories of liability are applicable to

27  federal securities cases unless provided by statute.  In *Central Bank of Denver v. First Interstate*

28  *Bank of Denver*, 511 U.S. 164 (1994), the Court, applying a strict statutory construction, held that

1    private actions based on aiding and abetting are not permitted under Section 10(b).  Some

2    commentators have noted that the Court's language and tenor suggest that other common law

3    theories of liability likewise will be rejected.  *See* 3 Thomas Lee Hazen, *Law of Securities*

4    *Regulation* § 22.24[5]; Mathews, "The Supreme Court's Central Bank Decision," National Law

5    Journal, May 23, 1994, at B4, B6.  Moreover, Plaintiffs' statement that *Central Bank* is inapposite

6    is incorrect.  *Central Bank*, 511 U.S. 164 (1994) (citing *Hollinger* and stating "These decisions

7    likewise appear unlikely to survive the Court's decision.") (Stevens, J., dissenting).  There is no

8    post-*Central Bank* case in the Ninth Circuit holding to the contrary.

9            Finally, Plaintiffs' reliance on *Hollinger* is misplaced.  *Hollinger*, a case decided well

10   before *Central Bank*, is limited to the use of respondeat superior liability in the context of a

11   Section 20(a) claim.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576-77 (9th Cir. 1990).

12   Even if *Hollinger* is still good law, it does not suggest that the application of agency law is

13   appropriate to any other claims under federal securities laws.  Moreover, in *Hollinger*, the court

14   noted that Section 20(a) supplemented the common law theory of respondeat superior.  *Id.*

15   Plaintiffs' argument does not provide the necessary caveats or explain the limited relationship

16   between this broad and likely inapplicable theory of agency and current federal securities laws.

17   As such, Plaintiffs' instructions are overbroad, vague, confusing and inaccurate.

18           Thus, Plaintiffs' jury instructions should be rejected.

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 33**

**Agent — Scope Of Authority Defined (*DISPUTED*)**

An agent, which can include an employee, officer or director, is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal (in this case, by JDSU).

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

**Plaintiffs' Argument For Instruction No. 33**

*See* Plaintiffs' Argument For Instruction No. 32.

**Defendants' Argument Against Instruction No. 33**

*See* Defendants' Argument For Instruction No. 32

**JURY INSTRUCTION NO. 34**

**Act Of Agent Is Act Of Principal — Scope Of Authority Not In Issue (*DISPUTED*)**

Any act or omission of an agent within the scope of authority is the act or omission of the principal (in this case, JDSU).

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

**Plaintiffs' Argument For Instruction No. 34**

*See* Plaintiffs' Argument For Instruction No. 32.

**Defendants' Argument Against Instruction No. 34**

*See* Defendants' Argument For Instruction No. 32

**JURY INSTRUCTION NO. 35**

**Charts and Summaries Not Received in Evidence**

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Authority:     Ninth Circuit Model Instruction 2.12, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:          _____

REFUSED:       _____

MODIFIED:      _____

WITHDRAWN:  _____

_____
United States District Judge

**JURY INSTRUCTION NO. 36**

**Charts and Summaries in Evidence**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


Authority:      Ninth Circuit Model Instruction 2.13, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.).

GIVEN:

          _____

REFUSED:

          _____

MODIFIED:

          _____

WITHDRAWN:

          _____


_____
                    United States District Judge

**JURY INSTRUCTION NO. 37**

**Duty to Deliberate**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your answer to each of the questions on the verdict form must be unanimous, and your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.


Authority:      Ninth Circuit Model Instruction 3.1, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.) (modified).

GIVEN:

                   _____

REFUSED:

                   _____

MODIFIED:

                   _____

WITHDRAWN:

                   _____


                   _____
                            United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 38**

**Unanimity Required (*DISPUTED*)**

Before you may find that any defendant is liable on any particular claim, you must unanimously agree that each element of that claim has been satisfied as to that particular defendant and you must unanimously agree that each element of any defenses raised by the defendant have not been satisfied.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 38**

2      This instruction is an accurate statement of the law.  The law requires that the jury reach a

3  unanimous verdict on each element of each claim and unanimously reject each affirmative

4  defense.  *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979 (9th Cir. 2002).  In *Jazzabi*, the Ninth Circuit

5  held that:

6              [E]lements and affirmative defenses are co-equal components of the
               jury's liability determination: Liability cannot be established until
7              after the jurors unanimously agree that the elements are satisfied
               *and* they unanimously reject the affirmative defenses.  This
8              approach comports well with the constitutional and statutory
               mandates that federal juries return unanimous verdicts in civil trials.
9              While it is true that these mandates do not mean that civil juries
               must reach unanimous agreement on all the preliminary factual
10             issues that underlie the verdict, it is nonetheless safe to say that
               civil juries must render unanimous verdicts on the ultimate issues of
11             a given case, not just the final verdict itself.

12 *Id.* at 984-85 (emphasis in original) (internal quotations omitted).

13     Moreover, this instruction must be provided to the jury because, under *Jazzabi*, the "Duty

14 to Deliberate" instruction fails to incorporate necessary information.  For example, the "Duty to

15 Deliberate" instruction merely says:  "Your answer to each of the questions on the verdict form

16 must be unanimous, and your verdict must be unanimous."  However, this does not comport with

17 *Jazzabi*'s holding that the jury must unanimously find that each element of each claim is

18 established, and unanimously reject each affirmative defense.  *See id.*

19

**Plaintiffs' Argument Against Instruction No. 38**

20     The proposed instruction is unnecessary as it repeats the unanimity requirement already

21 contained in Jury Instruction No. 37.

22

23

24

25

26

27

28

1

2

## JURY INSTRUCTION NO. 39

### Communication With Court

3       If it becomes necessary during your deliberations to communicate with me, you may send

4   a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members

5   of the jury.  No member of the jury should ever attempt to communicate with me except by a

6   signed writing; I will communicate with any member of the jury on anything concerning the case

7   only in writing, or here in open court.  If you send out a question, I will consult with the parties

8   before answering it, which may take some time.  You may continue your deliberations while

9   waiting for the answer to any question.  Remember that you are not to tell anyone — including

10  me — how the jury stands, numerically or otherwise, until after you have reached a unanimous

11  verdict or have been discharged.  Do not disclose any vote count in any note to the court.

12

13  Authority:        Ninth Circuit Model Instruction 3.2, *Ninth Circuit Manual of Model Jury*
                      *Instructions — Civil* (West Group 2007 ed.).

14

15  GIVEN:

16                      _____

    REFUSED:

17                      _____

18  MODIFIED:

19                      _____

    WITHDRAWN:

20                      _____

21

22                                  _____

23                                          United States District Judge

24

25

26

27

28

**JURY INSTRUCTION NO. 40**

**Return of Verdict**

I have prepared a special verdict form for you to use in recording your verdict.  This special verdict form is made up of questions concerning the important issues in this case.  Some of these questions are to be answered either "yes" or "no" as indicated, and others are to be answered by filling-in blanks as indicated.  When you have completed the form, please sign and date it and return it to the bailiff.


Authority:        Ninth Circuit Model Instruction 3.3, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2007 ed.) (modified).

GIVEN:            _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:   _____


_____
United States District Judge

1

**SECTION 10(b) INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURY INSTRUCTION NO. 41

## Elements Of Liability Under Section 10(b) [Plaintiffs' Version] (*DISPUTED*)

I will now instruct you concerning the claim that defendants JDSU, Jozef Straus, Anthony Muller, Jay Abbe, and Kevin Kalkhoven violated Section 10(b) of the Securities Exchange Act of 1934.

To establish their claim under Section 10(b), the plaintiffs bear the burden of proving all of the following elements by a preponderance of the evidence:

1.      The defendant made an untrue statement of a material fact and/or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading;

2.      The defendant acted with the intent to defraud, which is known as scienter;

3.      The defendant used or caused the use of an instrumentality of interstate commerce, such as mail or telephone, the facility of a national securities exchange, in connection with the purchase and sale of JDSU securities, regardless whether the instrumentality or facility itself was used to make an untrue statement or a material omission.  (The defendants do not dispute the existence of this element of the claim.  You are therefore instructed that Plaintiff has satisfied their burden with respect to this element);

4.      The plaintiffs justifiably relied on the defendant's untrue statement of a material fact or the defendant's omission to state a necessary material fact in buying or selling securities. The defendants do not dispute that plaintiffs are entitled to a presumption establishing their justifiable reliance.  Therefore, you are instructed that plaintiffs have satisfied their burden with respect to this element.

5.      The plaintiffs suffered damages as a result.

GIVEN:

REFUSED:          _____

MODIFIED:         _____

WITHDRAWN:        _____

                  _____

_____
                    United States District Judge

**JURY INSTRUCTION NO. 42**

**Elements Of Liability Under Section 10(b) [Defendants' Version] (*DISPUTED*)**

I will now instruct you concerning the claim that defendants JDSU, Jozef Straus, Anthony Muller, Jay Abbe, and Kevin Kalkhoven violated Section 10(b) of the Securities Exchange Act of 1934.

To establish their claim under Section 10(b), the plaintiffs bear the burden of proving all of the following elements by a preponderance of the evidence:

1.      That the defendant made a misstatement or omitted information necessary to prevent the statement made from being misleading;

2.      That the misstatement or omitted information was material;

3.      That the defendant acted with the intent to defraud, which is known as scienter; and

4.      That the material misstatement or material omission caused the plaintiffs to suffer a loss.


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:


_____
                         United States District Judge

1

**Plaintiffs' Argument**

2        The basic elements of a section 10(b) and Rule 10b-5 claim as "(1) a material

3    misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with

4    the purchase or sale of a security; (4) reliance, often referred to in cases involving public

5    securities markets (fraud-on-the-market cases) as 'transaction causation,' (5) economic loss; and

6    (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the

7    loss." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342 (2005) (internal citations omitted).

8        The defendants do not dispute the third element (relating to a connection with the

9    purchase or sale of a security) and fourth element (relating to reliance) and seek to exclude them

10   from the jury instructions.  These elements are essential to a section 10(b) and Rule 10b-5 claim.

11   Omitting any element essential to these claims would be misleading to the jury.  Therefore, the

12   jury should be instructed on them and whether each element is in dispute.

13       Defendants' proposed instruction fails to comply with Ninth Circuit Model Jury

14   Instruction 18.1 and omits the required elements of interstate commerce, in connection with the

15   purchase or sale of securities, and justified reliance.  Moreover, the proposed instruction fails to

16   instruct the jury that there is no dispute as to these elements and that the jury must find the

17   plaintiffs have satisfied their burden as to these elements.

18

**Defendants' Argument**

19       Plaintiffs' instruction is confusing and inconsistent with a number of other instructions.  It

20   combines the element of misstatement or omission with the element of materiality even though

21   these are plainly separate elements on which the jury will be separately instructed.  Plaintiffs do

22   not object to listing misstatement or omission and materiality as separate elements under the

23   introductory "elements" instructions for Sections 11, 12(a), or 14(a).  Therefore, to ensure that the

24   jury instructions are not internally inconsistent and potentially confusing, these elements should

25   be separated under Section 10(b).

26       Other parts of Plaintiffs' instruction are irrelevant.  Defendants have agreed that interstate

27   commerce and justifiable reliance are not in dispute.  Therefore, instructing the jury on these

28   elements is irrelevant and potentially confusing.  The instruction also incorrectly states that

1   Plaintiffs have "satisfied their burden with respect to" these elements.  Agreeing that an element

2   is not in dispute is not equivalent to Plaintiffs having satisfied their burden of coming forward

3   with affirmative evidence to prove an element.

4          In contrast, Defendants' instruction on the elements of a Section 10(b) violation is a

5   neutral and accurate statement of the law.  It correctly states the elements of a Section 10(b)

6   violation, including separate elements for misstatement or omission and materiality.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 43**

**Element 1 Of Section 10(b) — Misstatement Or Omission**

To satisfy the first element of their Section 10(b) claim, plaintiffs bear the burden of proving by a preponderance of the evidence that the defendants made a misstatement or omission of fact.

A misstatement is a statement that was false or misleading when it was made.  An omission is a failure to disclose a fact that needed to be disclosed to keep the statements that were actually made from being misleading.

Authority:    *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929-30 (9th Cir. 1996); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (en banc); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 514 (9th Cir. 1991); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999) (affirming summary judgment where analyst reports and news articles showed that the market was aware of allegedly undisclosed information); *Siegel v. Lyons*, No. C-95-3588 DLJ, 1996 U.S. Dist. LEXIS 22382, at *12 (N.D. Cal. Apr. 26, 1996) ("Where SEC filings actually disclose allegedly omitted information, dismissal of a claim premised upon nondisclosure is proper."); *Ash v. LFE Corp.*, 525 F.2d 215, 218-19 (3d Cir. 1975) (holding that proxy was not misleading where it disclosed information in note to table); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 491 (S.D.N.Y. 2005); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004) ("It is important to note that a 'reasonable investor' is neither an ostrich, hiding her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing."); ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 4.02[2] (1996) (modified).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                    United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 44**

**Statements Must Be Considered In Context (*DISPUTED*)**

In considering whether a statement was false or misleading, you should keep in mind the context in which the statement was made.  You must not view the statement in isolation.  Instead, you must take into account not only the words that plaintiffs challenge, but also other relevant statements contained in the document or made at the same time, as well as the circumstances under which the statement was made.

GIVEN:            _____

REFUSED:         _____

MODIFIED:        _____

WITHDRAWN:    _____

_____
United States District Judge

**Defendants' Argument For Instruction No. 44**

This instruction is an accurate statement of the law.  It is a basic tenet of securities laws that statements must be considered in context.  *See, e.g.*, *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) ("a court must appraise a misrepresentation or omission in the complete context in which the author conveys it."); *Kiyashka v. Iasiaworks, Inc.,* No. C 01-3224 SI, 2002 U.S. Dist. LEXIS 9554, at *21 (N.D. Cal. May 15, 2002) ("The Court uses a 'statement-by-statement' approach, viewing each statement in the context in which it was made."); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1471 (N.D. Cal. 1996) ("statements and alleged omissions must be analyzed in context").

Furthermore, this instruction is necessary to avoid potential prejudice to Defendants.  Plaintiffs have agreed that statements must be *presented* in context, yet object to the jury being informed that they must *consider* that context in their determination of whether a statement constitutes a misstatement or omission.  However, absent this instruction, nothing will inform the jury of that duty, resulting in potential prejudice to Defendants.  This instruction is thus necessary to avoid that prejudice.

**Plaintiffs' Argument Against Instruction No. 44**

This proposed instruction is confusing, unnecessary and unbalanced in favor of the defendants' theories.  The parties have already agreed that the alleged false statements will be presented in context.  The jury should be free to review the statements as they deem appropriate.  Moreover, the instruction on materiality suffices to inform the jury how to view the statements.

1

**JURY INSTRUCTION NO. 45**

2

**Projections (*DISPUTED*)**

3          Under Section 10(b), a projection about the future does not constitute a material

4     misstatement or omission unless plaintiffs prove:

5          1.     The statement was not genuinely believed;

6          2.     There was no reasonable basis for the belief; or

7          3.     The speaker was aware of undisclosed facts tending to seriously undermine the

8     accuracy of the statement.

9          Evidence that the projection turned out to be incorrect does not prove that it was a

10    material misstatement when it was made.

11         At the same time, you cannot find a violation of Section 10(b) based on a projection if you

12    find that the projection ultimately came true.

13

14

15    GIVEN:

16    _____

      REFUSED:

17    _____

18    MODIFIED:

19    _____

20    WITHDRAWN:

      _____

21

22    _____

                          United States District Judge

23

24

25

26

27

28

**Defendants' Argument For Instruction No. 45**

This instruction is an accurate statement of the law regarding liability for projections made by Defendants. Plaintiffs mistakenly omit this instruction and offer instead an alternative that conflates two separate doctrines regarding forward-looking statements and misplaces the burden of proof on Defendants.

The Ninth Circuit has made clear that forward-looking statements can only be actionable if Plaintiffs first establish at least one of three facts: (1) the forecast was not genuinely believed; (2) there was no reasonable basis for that belief; or (3) the speaker was aware of undisclosed facts tending to seriously undermine the accuracy of the forecast. *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870-71 (9th Cir. 1993); *In re Apple Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989); *In re Sybase Sec. Litig.,* 48 F. Supp. 2d 958, 960 (N.D. Cal. 1999). The burden is squarely on Plaintiffs to prove one of these three facts. *In re Sybase*, 418 F. Supp. 2d at 960 (emphasis added). This instruction accurately restates this test.

Separate and distinct from this three-part test for projections are two doctrines that apply to the subset of forward-looking statements accompanied by cautionary language: the PSLRA's safe harbor for forward-looking statements and the common-law bespeaks caution doctrine. 15 U.S.C. § 78u-5(c)(1)(A)-(C); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413-14 (9th Cir. 1994); *In re Hi/fn, Inc. Sec. Litig.*, No. C99-4531 SI, 2000 U.S. Dist. LEXIS 11631, at *17-18 (N.D. Cal. Aug. 9, 2000) (three-part projections test applied to forward-looking statements not including cautions, while bespeaks caution applied to statements with cautionary language). The PSLRA safe harbor and the bespeaks caution doctrine have different elements that make them separate from each other and from the three-part threshold projections test recited in this instruction. *Emplrs. Teamsters Local Nos. 175 & 515 Pension Fund v. Clorox*, 353 F.3d 1125 (9th Cir. 2004) (bespeaks caution separate from PSLRA safe harbor); *In re Stac Elecs.*, 89 F.3d at 1408 (bespeaks caution doctrine applied separately from three-part projections test ); *In re DDi Sec. Litig.*, No. CV 03-7063 NM (SJHx), 2005 U.S. Dist. LEXIS 1056, at *40-41 (N.D. Cal. Jan. 7, 2005) (applying three-part projections test, safe harbor, and bespeaks caution separately); *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-275-GLT (MLGx), 2004 U.S. Dist. LEXIS

1   28091, at *4 n.1 (C.D. Cal. Nov. 24, 2004).  Accordingly, Defendants have properly offered two

2   additional instructions related to forward-looking statements.  The PSLRA's safe harbor

3   requirements are restated in the Meaningful Cautions instruction, and the bespeaks caution

4   doctrine is restated in the Risk Disclosure instruction.

5        Plaintiffs' instruction at best conflates the PSLRA's safe-harbor with the bespeaks caution

6   doctrine.  Yet Plaintiffs' instruction regarding forward-looking statements is an accurate account

7   of neither the PSLRA safe harbor nor the bespeaks caution doctrine.  Furthermore, as explained in

8   more detail in support of the Meaningful Cautions and Risk Disclosure instructions, Plaintiffs'

9   instruction for forward-looking statements misplaces the burden of proof on Defendants.

10       None of Plaintiffs' cited authority addresses, much less supports, their omission of the

11  three-part threshold projections test or the instruction they offer in its place.  Their primary cases

12  involved only the bespeaks caution doctrine and reversals of the lower court for applying the

13  doctrine to historical statements of fact, not forward-looking statements.  *Livid Holdings Ltd. v.*

14  *Saloman Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005); *Gray v. First Winthrop Corp.*,

15  82 F.3d 877, 883 (9th Cir. 1996).  *Worlds of Wonder*, also cited by Plaintiffs, supports the

16  separate instruction for Risk Disclosure as-is.  35 F. 3d at 1413-1414.

17       **Plaintiffs' Argument Against Instruction No. 45**

18       This proposed instruction is duplicative of the instruction proposed by plaintiffs that

19  addresses the issue of forward looking statements.  There should only be one instruction on

20  forward looking statements, not the multitude of instructions on the same topic proposed by

21  defendants.  Moreover, this proposed instruction is unbalanced in favor of the defendants.

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 46**

**Statements Of Opinion Or Belief (*DISPUTED*)**

In order for a statement of opinion or belief to be false or misleading, the plaintiffs must prove two elements by a preponderance of the evidence:

    1.    That the statement was false; and

    2.    That the defendant made the statement with knowledge that it was false.

If you find that the plaintiffs have failed to prove either of these elements by a preponderance of the evidence, you cannot find that the statement was false or misleading.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

## **Defendants' Argument For Instruction No. 46**

2        This instruction is an accurate statement of the law.  A statement of opinion or belief does

3   not constitute a false statement unless the plaintiff proves that "the statement of opinion was

4   objectively and subjectively false."  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d

5   1248, 1265 (N.D. Cal. 2000) (statement must be "knowingly false.").  This rule is compelled by

6   the Supreme Court's decision in *Virginia Bankshares*:  "The teaching of *Virginia Bankshares* is

7   that an opinion is only false if the speaker does not in fact hold that opinion."  *In re McKesson*

8   *HBOC*, 126 F. Supp. 2d at 1265 (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1096

9   (1991)).  "While material statements of fact are false if they are contradicted by true facts,

10  material statements of opinion are false only if the opinion was not sincerely held."  *In re*

11  *McKesson HBOC*, 126 F. Supp. 2d at 1265; *see also Kane v. Madge Networks N.V.*, No. C 96-

12  20652 RMW, 2000 U.S. Dist. LEXIS 19984, at *24-25 (N.D. Cal. May 26, 2000) (for opinions,

13  must plead facts showing that "the speaker did not in fact believe those opinions"), *aff'd sub nom.*

14  *Kane v. Zisapel*, 32 Fed. Appx. 905 (9th Cir. 2002).  Therefore, this instruction accurately states

15  the law.

16        This statement necessary to instruct the jury on an issue in dispute.  At least one of the

17  allegedly false statements at issue is a statement of opinion or belief.  During the April 25, 2000

18  conference, call Kevin Kalkhoven says "the demand for bandwidth technology and components

19  remains incredibly strong, and I believe we will see this demand accelerated."  (Adams Decl. Ex.

20  A at No. 3.)  This instruction is thus necessary to instruct the jury on the applicable law.

21

## **Plaintiffs' Argument Against Instruction No. 46**

22        This proposed instruction is not an accurate statement of law. A statement of opinion is

23  false if the opinion is not sincerely held.  *Va. Bankshares v. Sandberg,* 501 U.S. 1083 (1991).

24  Moreover, the statement defendants' refer to is not a statement of opinion, but rather a statement

25  of fact.

26

27

28

**JURY INSTRUCTION NO. 47**

**Meaningful Cautions (*DISPUTED*)**

With respect to any written statements that constitute forward-looking statements, the defendants are not liable for those statements if the document in which the forward-looking statements appeared identified the statements as forward-looking and contained meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.  This rule applies even if the cautionary statements do not identify the factors that ultimately cause results to differ.  Furthermore, the defendants are not liable even if the defendants knew the statements made were materially false.

With respect to any oral statements that constitute forward-looking statements, the defendants are not liable for those statements if:

1.     The defendant stated that he would be making a forward-looking statement and that actual results might differ materially from those projected in the forward-looking statement;

2.     That a defendant orally directed the audience to readily available written documents that contained additional information about factors relating to the forward-looking statement; and

3.     That the readily available documents contained meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

Any document filed with the Securities and Exchange Commission or that is generally disseminated to the public is deemed to be readily available.

Plaintiffs have the burden of proving by a preponderance of the evidence that forward-looking statements are not accompanied by meaningful cautions, as described in this instruction.

1

2 GIVEN:

3 REFUSED: _____

4

5 MODIFIED: _____

6 WITHDRAWN: _____

7 _____

8

9 _____
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument For Instruction No. 47**

This instruction is an accurate statement of the law regarding the PSLRA's safe harbor provisions for forward-looking statements.  15 U.S.C. § 78u-5(c)(1)&(2); *Emplrs. Teamsters Local Nos. 175 & 515 Pension Fund v. Clorox*, 353 F.3d 1125, 1132 (9th Cir. 2004).  The instruction restates the elements of the safe harbor with no extraneous or prejudicial language.

Plaintiffs argue that the Court should have only one instruction for forward-looking statements.  Yet the one instruction Plaintiffs offer bears little resemblance to the PSLRA safe harbor, which has detailed, specific requirements Plaintiffs omit from their alternative.  Furthermore, none of Plaintiffs' cited authority supports their instruction for forward-looking statements.  Their primary cases involved only the bespeaks caution doctrine.  *Livid Holdings Ltd. v. Saloman Smith Barney, Inc*, 416 F. 3d 940, 948 (9th Cir. 2005); *Gray v. First Winthrop Corp.*, 82 F.3d 877, 883 (9th Cir. 1996).  As explained in more detail in support of the Risk Disclosure instruction, the bespeaks caution doctrine warrants a separate instruction from the PSLRA safe harbor.

Plaintiffs also dispute that they have the burden of proving Defendants forward-looking statements were not accompanied with meaningful cautions.  The PSLRA does not expressly allocate the burden of proof for establishing the elements of safe harbor under subsection A of 15 U.S.C. § 78u-5(c).  Nor have Defendants found any case law addressing this issue.  Yet the PSLRA's legislative history and related case law place the burden on Plaintiffs to prove that forward-looking statements are not accompanied by meaningful cautions required for safe harbor under subsection A.

Congress modeled subsection A on the common law "bespeaks caution" doctrine.  H.R. Conf. Rep. 104-369 at 43; S.R. 104-98 at 17; 15 U.S.C. § 78u-5(c)(1)(A); *Emplrs. Teamsters Local Nos. 175 & 515 Pension Fund v. Clorox*, 353 F.3d 1125, 1132 (9th Cir. 2004).  The bespeaks caution doctrine "developed to address situations in which optimistic projections are coupled with cautionary language . . . affecting the reasonableness of reliance on and the materiality of those projections."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414 (9th Cir. 1994).  The PSLRA safe harbor, therefore, like the bespeaks caution doctrine, "merely

1    represents the pragmatic application of two fundamental concepts in the law of securities fraud:

2    materiality and reliance."  *Id.* at 1414; *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857,

3    876 (N.D. Cal. 2004) (under safe harbor, court must consider materiality of forward-looking

4    statement); *In re DDi Sec. Litig.*, No. CV 03-7063 NM (SJHx), 2005 U.S. Dist. LEXIS 1056, at

5    *41 (N.D. Cal. Jan. 7, 2005) (cautionary language implicates materiality of forward-looking

6    statements and reasonableness of plaintiffs' reliance thereon).  Plaintiffs do not dispute that they

7    bear the burden of showing the materially of, and reasonableness of reliance on, Defendants'

8    statements.  *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) (plaintiffs have

9    burden to show statement was materially false or misleading).  By extension, Plaintiffs have the

10   burden of establishing the meaningfulness of cautionary statements.

11           Furthermore, placing the burden on Plaintiffs accords with the legislative intent of the

12   PSLRA's safe harbor to "prevent the threat of frivolous lawsuits that arises every time a

13   legitimate projection is not realized."  S.R. 104-98 at 16 (quotation omitted).  In fact, the drafters

14   of the safe harbor provision expected that plaintiffs would be required to allege and prove

15   forward-looking statements do not fall within the safe harbor.  *See, e.g.,* S.R. Rep. 104-98 at

16   16 ("pleading requirements [of the PSLRA] will apply to a complaint *alleging that a forward-*

17   *looking statement is not within the safe harbor*" and "plaintiffs have the burden of pleading *and*

18   *proving*" that "the forward-looking statement was knowingly made with the expectation, purpose,

19   and actual intent of misleading investors.") (emphasis added); H.R. Conf. Rep. 104-369 at 44

20   ("plaintiff must plead with particularity all facts giving rise to a strong inference of a material

21   misstatement in the cautionary statement").  Nothing in the legislation contradicts or undermines

22   this expectation.

23           Accordingly, this instruction is an accurate reflection of the law and should be given.

24   **<u>Plaintiffs' Argument Against Instruction No. 47</u>**

25           The proposed instruction is one of many instructions offered by defendants on the topic of

26   forward looking statements.  There should be one charge on the issue, not multiple charges.

27   Plaintiffs believe their proposed instruction on the issue of forward looking statements correctly

28   states the law without duplication.  Moreover this proposed instruction is unbalanced in favor of

1    the defendants in that is stresses how defendants are not liable and fails to give equal weight to

2    how the defendants are liable.  Finally, the proposed instruction fails to assign the burden of proof

3    on this defense theory to the defendants.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 48**

**Forward Looking Statements & Meaningful Cautions (*DISPUTED*)**

Defendants claim as a defense that certain of their alleged misstatements are protected as "forward-looking statements."  A forward-looking statement is a statement containing management's projections, forecasts, and/or opinions regarding a company's future economic performance, such as sales, revenue, or earnings.

A forward-looking statement is considered immaterial, and thus deemed to be protected, if the defendant demonstrates by a preponderance of the evidence that he has provided meaningful cautionary statements or disclosures concerning the specific subject matter of the statement at issue so as to nullify any potentially misleading effect of the statement.  Any proffered cautionary statements must be found to be substantive and tailored to the specific future projection, estimate, or opinion which the plaintiffs challenge.

If you decide that the defendants did not provide meaningful cautionary language, then you must still determine whether the plaintiffs have proven by a preponderance of the evidence that the defendants actually knew that the forward-looking statement was false when made.  If you find that defendants actually knew of the falsity of a forward-looking statement, then you must find that the plaintiffs have satisfied their burden to prove scienter with respect to such forward-looking statement.


GIVEN:          _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:      _____


_____
United States District Judge

1

**Plaintiffs' Argument For Instruction No. 48**

2      Defendants object to this instruction in favor of their proposed instruction nos. 45 and 47.

3 However, the defendants' instructions are duplicative of the instruction proposed by this

4 instruction.  There should only be one instruction on forward looking statements and meaningful

5 cautions, not the multitude of instructions on the same topic proposed by defendants.  Moreover,

6 defendants' proposed instructions are unbalanced in favor of the defendants' positions, and fails

7 to give equal weight to how the defendants are liable.  Finally, the defendants' proposed

8 instructions fail to assign the burden of proof on this defense theory to the defendants.  Plaintiffs

9 believe that this instruction correctly states the law without duplication.

10

**Defendants' Argument Against Instruction No. 48**

11      As explained more fully in Defendants' argument in support of the Projections instruction,

12 this instruction is an incomplete, inaccurate account of the law regarding forward-looking

13 statements.  Plaintiffs mistakenly omit the threshold requirements listed in the Projections

14 instruction for forward-looking statements to be actionable.  They offer instead an alternative here

15 that conflates, inaccurately, two separate doctrines regarding forward-looking statements, the

16 PSLRA safe harbor and the bespeaks caution doctrine.  This instruction also misplaces the burden

17 of proof on Defendants.  Plaintiffs' cite no authority in support of this instruction.  This

18 instruction should be rejected in place of the instructions on Projections, Meaningful Cautions,

19 and Risk Disclosure offered by Defendants.

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 49**

**Risks Adequately Disclosed (*DISPUTED*)**

A defendant also is not liable with respect to any forward-looking statement if the defendant made cautionary statements that relate directly to the subject matter of the forward-looking statement and that adequately disclose the risks involved.  The cautions need not appear in the same document or statement as the allegedly false or misleading forward-looking statement.  It does not matter that the forward-looking statement is later found to have been inaccurate or based on erroneous assumptions when made, provided the risk disclosure was conspicuous and adequately disclosed the assumptions upon which the statement was based.


GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____


_____
United States District Judge

**Defendants' Argument For Instruction No. 49**

This instruction is an accurate statement of the law regarding the bespeaks caution doctrine and should be given as this separate instruction. The bespeaks caution doctrine is a common-law doctrine providing that defendants are not liable for forward-looking statements when those statements are accompanied by adequate cautionary language about the risks involved. *In re Worlds of Wonder Sec Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994). The first and third sentences are virtually *verbatim* restatements of the doctrine as articulated by the Ninth Circuit. *In re Worlds of Wonder*, 35 F.3d at 1413-14; *Emplrs. Teamsters Local Nos. 175 & 515 Pension Fund v. Clorox*, 353 F.3d 1125, 1132 (9th Cir. 2004); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1108-09 (9th Cir. 1996). The second sentence accurately reflects the law regarding when and where cautionary statements must appear. *Grossman v. Novell*, 120 F.3d 1112, 1123 (10th Cir. 1997) (risk disclosures need not appear in same document or statement as forward-looking statement) (analyzing *Fecht v. Price Co.,* 70 F.3d 1078,1081-82 (9th Cir. 1995) (adequacy of risk disclosure depends on total mix of information available to investor)). The instruction offered by Defendants includes all elements of the doctrine and excludes any extraneous language.

The bespeaks caution doctrine is distinct from the PSLRA's safe harbor for forward-looking statements, and, as such, requires its own instruction. H.R. Conf. Rep. 104-369 at 46 (Congress "does not intend for the safe harbor provisions to replace the judicial 'bespeaks caution' doctrine"); *Clorox*, 353 F.3d at 1131 (PSLRA separate doctrine from bespeaks caution); *In Re Splash Tech. Holdings Sec. Litig.*, No. C99-00109SBA, 2000 U.S. Dist. LEXIS 15369, at *28 (N.D. Cal. Sept. 29, 2000) (legislative history shows bespeaks caution is independent protection for forward-looking statements with cautionary language); *In re Broadcom*, No. SA CV 01-275-GLT (MLGx), 2004 U.S. Dist. LEXIS 28091, *5 (C.D. Cal. Nov. 24, 2004) (safe harbor and bespeaks caution require different analysis); *In re DDi Sec. Litig.*,, No. CV 03-7063 NM (SJHx), 2005 U.S. Dist. LEXIS 1056, at *40-41 (C.D. Cal. Jan. 7, 2005) (bespeaks caution doctrine is separate doctrine from PSLRA safe harbor.); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 561 (W.D. Pa. 2006) ("Enactment of the PSLRA's safe harbor provision did not do away with the judicially created 'bespeaks caution' doctrine."). For this reason, Plaintiffs' approach – to offer

1   only one instruction for forward-looking statements – is contrary to law and would lead the Court

2   to reversible error.

3        Furthermore, for reasons explained more fully in Defendants' arguments in support of the

4   Meaningful Cautions instruction, this instruction accurately places the burden on Plaintiffs to

5   show Defendants' forward-looking statements did not have meaningful cautions.

6        In short, the instruction is accurate and should be given.

7                    **Plaintiffs' Argument Against Instruction No. 49**

8        The proposed instruction is one of many instructions offered by defendants on the topic of

9   forward looking statements.  There should be one charge on the issue, not multiple charges.

10  Plaintiffs believe their proposed instruction on the issue of forward looking statements correctly

11  states the law without duplication.  Moreover this proposed instruction is unbalanced in favor of

12  the defendants in that is stresses how defendants are not liable and fails to give equal weight to

13  how the defendants are liable.  Finally, the proposed instruction fails to assign the burden of proof

14  on this defense theory to the defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 50**

**Historical Statements (*DISPUTED*)**

A statement of events that have already occurred, or of past or current conditions, does not imply that similar events will take place in the future or that similar conditions will exist in the future.  Such a statement reports past events or current conditions and does not make predictions about the future.

GIVEN:           _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:    _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 50**

2      This instruction is an accurate statement of the law.  The Ninth Circuit has held that a

3 statement of a company's historical performance does not imply anything about the company's

4 future performance.  *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991).  In

5 *Convergent*, a company announced significant revenues from a particular customer during the

6 past year.  *Id*. at 512.  The plaintiffs argued that this statement "implied growth would continue at

7 the torrid pace" of the past.  *Id*. at 513.  The Court rejected this argument, holding that the

8 statement did not imply that similar growth would occur in the future.  *Id*.  Therefore, the

9 defendants' instruction is an accurate statement of the law.

10      This instruction is necessary to instruct the jury on an issue in dispute.  There are a

11 number of statements at issue in this case that can potentially be construed as historical

12 statements.  For example, during the October 26, 2000 conference call, Anthony Muller reported

13 the company's results for the prior quarter and explained that "these results reflect a continuing

14 surge of demand in the fiberoptics communications industry, our broad product line, our

15 extensive customer relationships, and our substantial progress in expanding capacity . . . ."

16 (Adams Decl. Ex. A at 30.)  Similarly, multiple statements at issue report balance sheet data from

17 prior periods, such as historical goodwill and inventory balances.  (*Id*. at No. 15, 16, 32, 34, 35,

18 40, 42, 44, 45, 47-54, 56.)  Therefore, the jury should be instructed on the law that applies to

19 evaluate historical statements.

20      Plaintiffs assert for the first time that the alleged falsity of the Muller statement "has

21 nothing to do with any inference that past events imply that similar events will take place in the

22 future."  Yet this assertion does not prevent Plaintiffs from arguing such falsity at trial, nor does it

23 prevent the jury from inferring such falsity.  In fact, Plaintiffs' point underscores the necessity of

24 an instruction to avoid the potential for a jury to infer falsity where none exists.

25

**Plaintiffs' Argument Against Instruction No. 50**

26      The proposed instruction is unnecessary and confusing.  First, in every conference call the

27 defendants make both historical and forward looking statements.  The proposed instruction could

28 be interpreted to immunize forward looking statements.  Second, the jury will be instructed on

1    what is required to be found before a forward looking statement can form the basis of a fraud

2    under the securities laws.  Finally, the statement from Mr. Muller referred to by defendants is

3    false and misleading because at the time he made the statement he was aware of declining

4    demand from numerous JDSU customers.  The falsity alleged has nothing to do with any

5    inference that past events imply that similar events will take place in the future.

**JURY INSTRUCTION NO. 51**

**Element 2 Of Section 10(b) — Materiality**

The plaintiffs must prove by a preponderance of the evidence that the misrepresentation or omission of the defendant was material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to her as having significantly altered the total mix of information she took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.


Authority:      Ninth Circuit Manual of Model Jury Instructions (Civil) 18.2 (West 2007 ed.).


GIVEN:            _____

REFUSED:         _____

MODIFIED:        _____

WITHDRAWN:       _____


_____
United States District Judge

1

**JURY INSTRUCTION NO. 52**

2

**Truth-on-the-Market (*DISPUTED*)**

3

Even if you find that a defendant has failed to disclose information, that information is not

4

material if it had been made available to the market and to investors by other sources.

5

6

Authority:        *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988); *In re Apple Computer Sec.*

7

*Litig.*, 886 F.2d 1109, 1114-15 (9th Cir. 1989).

8

GIVEN:

9

                      _____

REFUSED:

10

                      _____

11

MODIFIED:

12

                      _____

WITHDRAWN:

13

                      _____

14

15

                                        _____

                                              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Defendants' Argument For Instruction No. 52**

2      This jury instruction accurately reflects the law and informs the jury of a point important

3   to its deliberations.  The Ninth Circuit has held that:

4          [I]n a fraud on the market case, the defendant's failure to disclose
           material information may be excused where that information has
5          been made credibly available to the market by other sources.

6   *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1115 (9th Cir. 1989) (reasoning that "[p]rovided

7   that they have credibly entered the market through other means, the facts allegedly omitted by the

8   defendant would already be reflected in the stock's price; the mechanism through which the

9   market discovered the facts in question is not crucial"); *accord Basic v. Levinson,* 485 U.S. 224,

10  248 (1988) (same).

11      Plaintiffs' argument that Ninth Circuit Model Jury Instruction 18.2 is enough disregards

12  the facts of this particular case and would leave the jury without sufficient guidance.  Defendants

13  agree that Ninth Circuit Model Jury Instruction 18.2 is a good general instruction on materiality,

14  but it is exactly that:  a general instruction.  The drafters of the Ninth Circuit Model Jury

15  Instructions did not intend them to be exclusive,[2] and given the facts of this case — where one of

16  the defenses will be that information omitted from challenged statements was already in the

17  public domain — the jury is entitled to a more specific instruction as to the import of such

18  evidence.

19      This is not a novel idea.  Indeed, the American Bar Association's Model Jury Instructions

20  on Securities Litigation include a similar instruction:

21          In considering whether a material fact was omitted, you may
22          consider whether the information was already in the public domain.

23

24          [2] The introduction to the Ninth Circuit Manual of Model Jury Instructions — Civil states:

25          The instructions in the Manual are models.  They must be reviewed
            carefully before use in a particular case.  They are not a substitute for the
            individual research and drafting that may be required in a particular case,
26          not are they intended to discourage juddges from using their own forms
            and techniques for instructing juries  . . . .  The Court of Appeals does not
27          adopt these instructions as definitive.  (Id. at v-vi.)

28

1

Full disclosure is the underlying philosophy of federal securities
regulations; but, there is no duty to disclose information to one who
2     reasonably should already be aware of it.

3 American Bar Association, Model Jury Instructions — Securities Litigation, Model Instruction

4 2.03[1][d]: Disclosure of Information Already in the Public Domain (ABA 1996).

5       Because the availability of information in the public domain is specifically at issue in this

6 case, the requested instruction is warranted to fully apprise the jury off the law.

7 **<u>Plaintiffs' Argument Against Instruction No. 52</u>**

8       The proposed instruction improperly states the applicable law.  Most egregiously, the

9 proposed instruction fails to contain the temporal requirement that the information "made

10 available to the market" must be available to the market at the time of the failure to disclose

11 information.  *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989).  In any

12 event, the proposed instruction is unnecessary in light of a proper instruction (Ninth Circuit

13 Model Jury Instructions, 18.2) on materiality.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 53**

**Puffery (*DISPUTED*)**

A statement is not material if the statement on its face is vague or loosely optimistic boasting.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

**Defendants' Argument For Instruction No. 53**

This instruction is an accurate statement of the law.  Courts routinely hold that vague or optimistic statements constitute immaterial puffing.  *See, e.g.*, *In re Versant Object Tech. Corp. Sec. Litig.*, No. C 98-00299 CW, 2000 U.S. Dist. LEXIS 22333, at *20 (N.D. Cal. May 18, 2000) ("General statements of optimism and 'puffing' about a company or product are not actionable"); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 598 (7th Cir. 2006) (holding statements too vague and subjective to be material), *overruled on other grounds by, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007); *In re CornerStone Propane Partners, Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) (holding that "vague, unspecific assertions of corporate optimism" are immaterial puffing); *Zack v. Allied Waste Indus.*, No. CIV-04-1640-PHX-MHM, 2005 WL 3501414, at *9 (D. Ariz. Dec. 15, 2005) (defining puffery as "exaggerated, vague, or loosely optimistic statements about a company that are deemed so immaterial and unworthy of reliance that they cannot serve as the basis for liability in securities fraud actions").  Therefore, this instruction accurately states the law.

This instruction is also necessary because it relates to an issue in dispute.  The defendants intend to argue that a number of statements in this case constitute immaterial puffery.  For example, during the October 26, 2000 conference call, Jozef Straus said "we are firing on all cylinders."  (Adams Decl. Ex. A at No. 29.)  The jury will be asked to conclude that such statements were too vague or loosely optimistic to mislead a reasonable investor.  Therefore, the jury should be instructed on the law that applies to these statements.

**Plaintiffs' Argument Against Instruction No. 53**

Defendants sought summary judgment in part on the ground that certain of the alleged misrepresentations were vague, optimistic statements that were not actionable.  The Court has already ruled on those objections and it is not for the jury to second guess the Court in connection with those rulings.  Moreover, given a proper instruction on materiality as proposed by plaintiffs, the jury should not be  instructed separately on various types of statements that are and are not material.

# JURY INSTRUCTION NO. 54

## Element 3 Of Section 10(b) — Scienter (*DISPUTED*)

To satisfy the third element of their Section 10(b) claim, plaintiffs bear the burden of proving by a preponderance of the evidence that the defendants acted with what is called scienter. **[For you to find that a defendant acted with scienter, the evidence must support a cogent, powerful, and compelling inference of scienter.]** The plaintiffs bear the burden of proving scienter by a preponderance of the evidence.

1.  Except for forward-looking statements, which I will describe in a moment, a defendant acts with scienter when the defendant acts either knowingly or with deliberate recklessness.

A defendant acts knowingly when the defendant makes an untrue statement with the knowledge that the statement was false, or when the defendant knew of a fact and also knew that the failure to reveal the fact created a substantial likelihood of misleading investors.

A defendant acts with deliberate recklessness when the defendant engages in highly unreasonable conduct that is an extreme departure from the standards of ordinary care, presenting a danger of misleading investors which is either known to the defendants or is so obvious that the defendants must have been aware of it.

**[Deliberate recklessness is a form of intentional, knowing, or deliberate misconduct. It is not enough for the plaintiffs to show that a defendant acted with simple, gross, or even inexcusable negligence.]**

2.  With respect to a forward-looking statement, a defendant acts with scienter when the defendant acts with actual knowledge that the statement or projection is false when made.

**[For an individual defendant who made a forward-looking statement to be liable under Section 10(b), the plaintiffs must prove that the individual defendant had actual knowledge that the forward-looking statement was materially false or misleading at the time the statement was made. A defendant is not liable for a forward-looking statement if the statement is made with reckless disregard for whether it was materially true.**

1        **For JDSU to be liable as a company for a forward-looking statement, the plaintiffs**

2   **must prove that the forward-looking statement was made by or with the approval of an**

3   **executive officer of JDSU who had actual knowledge that the statement was false or**

4   **misleading at the time the statements were made.  Unless an individual defendant acted**

5   **with scienter, you cannot find that JDSU acted with scienter.]**

6

7   Authority:      *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007); *Ernst*
                    *& Ernst v. Hochfelder*, 425 U.S. 185, 191, 193 & n.12, 197-99, 215 (1976); *In re*
8                   *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 975-77 (9th Cir. 1999);
                    *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569-70 (9th Cir. 1990) (en
9                   banc); *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 626 (9th Cir. 1994);
                    *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994); *City of*
10                  *Philadelphia v. Fleming Co.*, 264 F.3d 1245, 1261 (10th Cir. 2001); Ninth Circuit
                    Model Instruction 18.3 and Comment, *Ninth Circuit Manual of Model Jury*
11                  *Instructions — Civil* (West Group 2007 ed.) (modified); ABA, Section of Litig.,
                    *Model Jury Instructions: Securities Litigation*, Instructions 4.02[4], 4.02[4][a]
12                  (1996) (modified).

13
    GIVEN:
14                        _____

15   REFUSED:

16                        _____

17   MODIFIED:

18                        _____
     WITHDRAWN:
19                        _____

20
                                            _____
21                                          United States District Judge

22

23

24

25

26

27

28

**Plaintiffs' Argument**

Through its additions to the standard charge on scienter, the Defendants seek to heighten Plaintiffs' burden of proof on this element.  Although the scienter formulation in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), contains or suggests some of the language proposed by Defendants ("cogent, powerful and compelling"), that standard is applicable in the context of a motion to dismiss, not a jury trial.  The jury should be informed that scienter is an element that Plaintiffs are required to establish by a preponderance of the evidence.  There is no authority that scienter must be established at trial by any other standard.  To suggest otherwise would be reversible error.

The concept of recklessness is adequately described in Model Instruction 18.3 which Plaintiffs propose that the Court adopt.  It can only serve to confuse the jury to provide additional instructions as to what recklessness is not as Defendants request.  Indeed, it is not at all clear that "inexcusable negligence" does not amount to recklessness.   Further, if the jury is instructed on what recklessness is not, it should also be instructed on the concept of willful blindness or conscious avoidance as a state of mind satisfying the scienter requirement.   See, *United States v. Heredia*, ___ F.3d ____, slip op., No. 03-10585 (9th Cir. April 30, 2007) (en banc); *United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951 (1976)

The portion of Defendants' proposed charge dealing with the scienter requirement for forward looking statements is duplicative of the charge proposed in Instruction No. 48 where the actual knowledge requirement is set out.

The portion of Defendants' proposed charge relating to the issue of JDSU liability for forward looking statements is unnecessary, confusing and improperly heightens Plaintiffs' burden of proof.  Instructions regarding JDSU's liability are adequately set forth in Instruction Nos. 32, 33 and 34.

**Defendants' Argument**

The portions of this instruction that are bracketed and in bold face are accurate statements of the law that are neutral and pose no unfair prejudice to either side.  They should each be included in the instruction.

1    • **"For you to find that the a defendant acted with scienter, the evidence must**

2    **support a cogent, powerful, and compelling inference of scienter."**

3    This statement is supported by the Supreme Court's decision in *Tellabs, Inc. v. Makor*

4    *Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). In *Tellabs*, the Court held that only a strong,

5    powerful, and compelling inference of scienter will suffice to plead a violation of Section 10(b).

6    *Id.* at 2510.

7    • **"Deliberate recklessness is a form of intentional, knowing, or deliberate**

8    **misconduct.  It is not enough for the plaintiffs to show that a defendant acted**

9    **with simple, gross, or even inexcusable negligence."**

10   This is an accurate statement of the law. In the Ninth Circuit, recklessness "only satisfies

11   scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious

12   misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999). This

13   requires a showing of "not merely simple, or even inexcusable negligence, but an extreme

14   departure from the standards of ordinary care . . . ." *Id.* at 976 (*citing Hollinger v. Titan Capital*

15   *Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc)); *see also In re Software Toolworks, Inc.*

16   *Sec. Litig.*, 50 F.3d 615, 626 (9th Cir. 1994) (same). This instruction is necessary to avoid

17   prejudice to Defendants by ensuring that the jury is provided with the correct definition of

18   deliberate recklessness.

19   • **"For an individual defendant who made a forward-looking statement to be liable**

20   **under Section 10(b), the plaintiffs must prove that the individual defendant had**

21   **actual knowledge that the forward-looking statement was materially false or**

22   **misleading at the time the statement was made.  A defendant is not liable for a**

23   **forward-looking statement if the statement is made with reckless disregard for**

24   **whether it was materially true.**

25   • **For JDSU to be liable as a company for a forward-looking statement, the**

26   **plaintiffs must prove that the forward-looking statement was made by or with the**

27   **approval of an executive officer of JDSU who had actual knowledge that the**

28   **statement was false or misleading at the time the statements were made.  Unless**

**an individual defendant acted with scienter, you cannot find that JDSU acted with scienter.”**

These paragraphs accurately state the law.  The PSLRA codified a heightened scienter standard with respect to all forward-looking statements.  15 U.S.C. § 78u-5(c)(1)(B).  For such statements, a defendant is only liable if the statement was made “with actual knowledge by that person that the statement was false or misleading.”  *Id.*; *see also, e.g.*, *In re Daou Sys., Inc. Sec. Litig.*, 397 F.3d 704, 717 (9th Cir. 2005) (“Under the PSLRA’s ‘safe harbor’ provisions, plaintiffs must prove that ‘forward-looking’ statements were made with ‘actual knowledge’ that they were false or misleading.”).  In contrast, for a corporation to be liable for a forward-looking statement, the plaintiffs must prove that the statement was made “by or with the approval of an executive officer” of the corporation and “by such officer with actual knowledge by that officer that the statement was false or misleading.”  15 U.S.C. § 78u-5(c)(1)(B)(ii)(I) & (II).  This instruction accurately states these requirements.

These paragraphs are also necessary to instruct the jury on an issue in dispute.  There are numerous statements at issue here that constitute forward-looking statements, thus triggering the “actual knowledge” scienter standard.  (*See* Adams Decl. Ex. A at No. 2, 3, 11, 26, 29, 30, 36-39, 43.)  Moreover, the plaintiffs have alleged violations of Section 10(b) against JDSU, thus requiring an instruction on corporate scienter.  (*See* SAC at ¶¶ 394-403 (Tenth Claim for Relief).)

1

**JURY INSTRUCTION NO. 55**

2

**Good Faith (*DISPUTED*)**

3        The plaintiffs bear the burden of proving by a preponderance of the evidence that the

4    defendants did not act in good faith.

5        A person who acts, or causes another person to act, on a belief or opinion honestly held is

6    not liable under Section 10(b) merely because the opinion or belief turns out to be inaccurate,

7    incorrect, wrong, or unreasonable.  An honest mistake in judgment or an honest error in

8    management or even negligence or carelessness does not rise to the level of scienter.  An honest

9    belief or good faith belief on the part of a defendant is inconsistent with fraudulent intent and

10    inconsistent with a finding that he acted with scienter.

11

12

13    GIVEN:

14                    _____

    REFUSED:
15                    _____

16    MODIFIED:

17                    _____

    WITHDRAWN:
18                    _____

19

20                                          _____
                                              United States District Judge

21

22

23

24

25

26

27

28

1

**Defendants' Argument For Instruction No. 55**

2      Because an essential element of plaintiffs' Section 10(b) case is scienter, it follows that

3   good faith on the part of the defendant is a complete defense.  *See, e.g.*, *Ernst & Ernst v.*

4   *Hochfelder,* 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to

5   be made liable for [illicit] practices unless he acted other than in good faith.").  Where defendants

6   maintain they acted in good faith, it is incumbent upon the court to define "good faith" for the

7   jury, and upon the plaintiff to prove fraudulent intent and a consequent lack of good faith by a

8   preponderance of the evidence.  *See, e.g.*, *In re Kulicke & Soffa Indus., Inc. Sec. Litig.,* 747 F.

9   Supp. 1136, 1142 (E.D. Pa. 1990), *aff'd,* 944 F.2d 897 (3d Cir. 1991) (unpubl. op.).

10      These propositions are well settled and are reflected not only in the case law, but in Judge

11   Sands' model jury instructions:

> Since an essential element of plaintiff's case is intent to defraud or
> recklessness, it follows that good faith on the part of the defendant
> is a complete defense to a charge of securities fraud.  A defendant,
> however, has no burden to establish a defense of good faith.  The
> burden is on the plaintiff to prove fraudulent intent and a
> consequent lack of good faith by a preponderance of the evidence.
>
> Under the antifraud statutes, even false representations or
> statements or omissions of material facts do not amount to fraud
> unless done recklessly or with fraudulent intent.  However
> misleading or deceptive a plan may be, it is not fraudulent if it was
> devised or carried out in good faith.  An honest belief in the truth of
> the representations made by a defendant is a good defense, however
> inaccurate the statements may turn out to be. . . .

HON. L. SANDS, ET AL., Modern Federal Jury Instructions, Inst. 82-8 (Matthew Bender 2007).

        In this case, defendants acted in good faith at all times and intend to make that point to the

jury.  Accordingly, it is necessary and appropriate for the Court to instruct the jury as to the

meaning of "good faith" as well as plaintiffs' burden to prove a lack of good faith by a

preponderance of the evidence.

**Plaintiffs' Argument Against Instruction No. 55**

        Although citing to Sand, et al., Modern Federal Jury Instructions, Inst. 82-8 (Matthew

Bender 2007), defendants do not adopt the good faith charge suggested in that treatise.   If

defendants seek to have the jury instructed on the good faith defense, the appropriate charge is as

1    quoted above from Sand in the Defendants' Argument For Instruction No. 55.  Additionally,

2    insofar as the defendants will urge as part of their good faith defense that they relied on the advice

3    of accountants or attorneys, the good faith instruction must be augmented to include the concept

4    that good faith reliance on accountants or attorneys requires evidence of full disclosure of the

5    relevant facts to the accountants or attorneys.  Furthermore, as the Ninth Circuit held in *SEC v.*

6    *Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 467 (9th Cir. 1985), if a company officer

7    knows that financial statements are false or misleading and yet proceeds to file them, "the

8    willingness of an accountant to give an unqualified opinion with respect to them does not negate

9    the existence of the requisite intent" or establish good faith reliance by the officer on the

10   accountant's opinion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 56**

**Stock Sales (*DISPUTED*)**

Because it is common for employees to sell stock, you cannot find that stock sales are evidence of scienter unless you find that the sales were dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information. For example, you should consider whether the defendant's trading patterns are consistent with prior periods, whether the defendant retained possession of a large portion of his shares, or whether the defendant's trades were executed pursuant to a trading plan.  You should also consider restrictions on a defendant's stock sales, which may provide an explanation for the timing of sales that weighs against scienter.  An explanation that a defendant sold stock when he retired from the company is an explanation that can disprove scienter, as people often sell stock when they leave a company.

Even if you do find that stock sales constitute some evidence of scienter, you cannot base a finding of scienter solely on stock sales.

In evaluating stock sales made pursuant to a stock trading plan, you should evaluate whether the defendant making the sales was aware of negative material nonpublic information only at the time he entered into the plan, not at the time the sales were made.


GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____


_____
United States District Judge

1          **Defendants' Argument For Instruction No. 56**

2          This instruction is an accurate statement of the law regarding the use of stock sales as

3   evidence of scienter and is necessary to avoid undue prejudice to Defendants.  The entire first

4   paragraph closely tracks language from decisions in the Ninth Circuit.  *In re Vantive Corp.*, 283

5   F.3d 1079, 1092 (9th Cir. 2002); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (stock

6   sales not evidence of scienter unless dramatically out of line with prior trading practices and at

7   times chosen to maximize personal gain); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986

8   (9th Cir. 1999) (amount and percentage of shares sold, timing of sales, whether sales are

9   consistent with prior trading practice, and restrictions on insiders' trading affect inference of

10  scienter); *Provenz v. Miller,* 102 F.3d 1478, 1491 (9th Cir. 1996) (sale of stock upon retirement

11  not evidence of scienter); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427-28 (9th Cir.

12  1994) (selling small amount of shares or selling for innocent reasons no evidence of scienter); *In*

13  *re Apple Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (stock sales not evidence of scienter

14  when there are "credible and wholly innocent explanations for stock sales, such as established

15  trading program and personal obligations); *In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d

16  1018, 1030 (C.D. Cal. 2003) *aff'd sub. nom., Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040

17  (9th Cir. 2006) (restrictions on permissible timing of insiders' stock trading weakens inference of

18  scienter); *In re PetsMart Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 1000 (D. Ariz. 1999) ("Where

19  corporate insider sells only a small fraction of his or her shares in the corporation, the inference of

20  scienter is weakened.).

21          Likewise, the second and third paragraphs also accurately reflect the law delineating the

22  proper consideration for stock sales.  *In re Splash Tech. Holdings Sec. Litig.*, 160 F. Supp. 2d

23  1059, 1081 (N.D. Cal. 2001) (although circumstantial evidence of scienter, "stock sales alone

24  cannot create a strong inference of scienter.") (internal quotation omitted); 17 C.F.R. § 240.10b5-

25  1(b) & (c).

26          The instruction's clarification of factors to consider when evaluating insider stock sales is

27  necessary to prevent a jury from making improper inferences from stock sales, with resulting

28  undue prejudice to Defendants.

JOINT PROPOSED JURY INSTRUCTIONS                                                                    107
C-02-1486 CW (EDL)
sf-2384909

1          Accordingly, the instruction should be given.

2                    **Plaintiffs' Argument Against Instruction No. 56**

3          The proposed instruction is heavily slanted in favor of the defense theories.  It contains

4    defense argument ("it is common for employees to sell stock") and understates the proper

5    consideration and weight the jury should give to the massive stock sales undertaken by the

6    individual defendants.  It is incorrect that the jury "cannot find" stock sales are evidence of

7    scienter unless the sales "were dramatically out of line with prior trading practices at times

8    calculated to maximize personal benefit from undisclosed inside information."  The proposed

9    instruction is also unbalanced as it incorporates a number of defense theories and arguments that

10   may be asserted (such as "restrictions on a defendant's stock sales," and "an explanation that a

11   defendant sold stock when he retired").

12         Stock sales by insiders that are suspicious may be considered by the jury as circumstantial

13   evidence of scienter.   Stock trades can be suspicious, for example, when "dramatically out of line

14   with prior trading practices at times calculated to maximize the personal benefit from undisclosed

15   inside information." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986-88 (9th Cir. 1999).

16   To evaluate suspiciousness of stock sales, the jury may consider factors such as : (1) the amount

17   and percentage of shares sold; (2) timing of the sales; and (3) consistency with prior trading

18   history. *Id.*; *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th

19   Cir. 2004).  Where as here, stock sales result in a truly astronomical figure, in determining

20   whether such sales are suspicious, less weight should be given to the fact that they may represent

21   a small portion of the defendant's holdings.  *Id.*  No one factor is controlling.  The jury should

22   determine if a defendant acted with scienter based on a fair assessment of the totality of the

23   circumstances, including the evidence concerning the defendant's stock sales.  *Id.* at 1234.

24

25

26

27

28

**JURY INSTRUCTION NO. 57**

**Access To Information (*DISPUTED*)**

Evidence that a defendant was an executive of a company, that a defendant had access to negative information, or that a defendant was involved in day-to-day management is not sufficient to establish scienter.  There must be evidence that the defendant actually knew of material information at the time of the statement or omission, or that the information was so obvious to the defendant that he must have been aware of it.

GIVEN:

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 57**

2      The courts have consistently held that the mere showing that defendants had access to

3   negative information does not approach the standard of proof for establishing scienter in the

4   Ninth Circuit, which requires a showing of behavior presenting a danger of misleading buyers or

5   sellers that it is either known to the defendant or so obvious the actor *must have been aware of it.*

6   *See, e.g., In re Allergan, Inc. Sec. Litig.*, No. SA CV 89-643AHS (RWR), 1993 WL 623321, at

7   *36 (C.D. Cal. Nov. 29, 1993) (granting summary judgment where there was no evidence

8   defendants possessed knowledge of negative information at their disposal).  "Moreover,

9   Plaintiffs' authority is inapposite.  In *Ebbers*, the court held that the defendant was consciously

10  trying to avoid information, not simply that he had access to negative information."

11     In this case, there is a danger that the jury may improperly impute to defendants

12  knowledge of negative information merely by virtue of the fact that defendants had access to such

13  information.  This is inconsistent with the law, and in the interests of justice the jury should be so

14  instructed.

15

**Plaintiffs' Argument Against Instruction No. 57**

16     The proposed charge is unnecessary and confusing.  The proper instruction defining

17  scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is

18  no authority supporting the notion that a jury, properly instructed as to scienter, is also to be

19  instructed separately on every piece of evidence the jury may consider on the issue of scienter.  In

20  fact, under certain circumstances, a defendants' access to negative information may well be

21  sufficient circumstantial evidence that gives rise to an inference of recklessness.  *United States v.*

22  *Ebbers*, 458 F.3d 110, 124 (2d Cir. 2006).

23

24

25

26

27

28

**JURY INSTRUCTION NO. 58**

**Specific Details (*DISPUTED*)**

The plaintiffs must prove specific details about the sources and content of any adverse information. To establish scienter, the plaintiffs must prove specific conversations, meetings, or reports where each individual learned the true and adverse information. The plaintiffs must also prove that each statement was made without a reasonable basis or disclosed other than in good faith.

Authority:    *In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 994 (S.D. Cal. 2002); *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1215-16 (N.D. Cal. 2000), *aff'd*, 283 F.3d 1079 (9th Cir. 2002); 17 C.F.R. § 240.3b-6 (2007).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                                    United States District Judge

1

**Defendants' Argument For Instruction No. 58**

2          This instruction is supported by courts in the Ninth Circuit.  *See In re Peerless Sys. Corp.*

3  *Sec. Litig.*, 182 F. Supp. 2d 982, 994 (N.D. Cal. 2002); *In re Vantive Corp. Sec. Litig.*, 110 F.

4  Supp. 2d 1209, 1215-16 (N.D. Cal. 2000); 17 C.F.R. § 240.3b-6 (2007).

5

6

**Plaintiffs' Argument Against Instruction No. 58**

7          The proposed charge is unnecessary and confusing.  The proper instruction defining

8  scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is

9  no authority supporting the notion that a jury, properly instructed as to scienter, is also to be

10  instructed separately on every piece of evidence the jury may consider on the issue of scienter.

11  The proposed instruction would eliminate recklessness and circumstantial evidence establishing

12  recklessness from jury consideration.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 59**

**Application of GAAP (*DISPUTED*)**

The publication of inaccurate accounting figures, or a mistake in applying generally accepted accounting principles (GAAP), does not establish that defendants knowingly or recklessly made misstatements or omissions.  An error in applying GAAP constitutes evidence of scienter only if the defendants knew at the time of the statement, or were reckless in not knowing, that they had committed an error that rendered their accounting decisions materially false or misleading.


GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____


_____
United States District Judge

**Defendants' Argument For Instruction No. 59**

This instruction is an accurate statement of the law.  The Ninth Circuit has held on numerous occasions that "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 627 (9th Cir. 1994); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994); *see also In re Pac. Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1167 (N.D. Cal. 2001).  Rather, the failure to follow GAAP constitutes evidence of scienter only if the defendants either "knew or must have been aware" of the improper accounting.  *DSAM Global Value Fund*, 288 F.3d at 390-91; *see also Morgan v. AXT, Inc.*, No. 04-4362 MJJ, 2005 U.S. Dist. LEXIS 42346, at *40-41 (N.D. Cal. Sept. 23, 2005) ("to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that: (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent.").  Therefore, this instruction accurately states the law.

Furthermore, this instruction is necessary to instruct the jury on an issue in dispute.  A number of the statements at issue involve the company's alleged failure to follow GAAP. (Adams Decl. Ex. A at No. 15, 16, 32, 34-35, 40, 42, 45-54, 56.).  Most of these statements are alleged to have violated Section 10(b), which requires proof of scienter.  (*See, e.g.*, *id*. at No. 15, 34, 40, 42, 45-54, 56.).  Therefore, the jury must be instructed on the law that applies to these statements.

**Plaintiffs' Argument Against Instruction No. 59**

The proposed charge is unnecessary and confusing.  The proper instruction defining scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is no authority supporting the notion that a jury, properly instructed as to scienter, is also to be instructed separately on every piece of evidence the jury may consider on the issue of scienter. An instruction focused on the significance of a GAAP violation may well mislead the jury into believing that unless they also find a GAAP violation they may not find there was an accounting fraud or a false representation in a financial statement.  What is required is intentionally or

1    recklessly false entries in financial statements that are material.  Plaintiffs are not also required to

2    prevail on a battle of experts over whether or not there was a GAAP violation.  *See United*

3    *States v. Ebbers*, 458 F.3d 110, 126 (2d Cir. 2006).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**JURY INSTRUCTION NO. 60**

**Awareness of Problems (*DISPUTED*)**

Dealing with problems is a large part of any business.  Corporate executives do not have a duty to disclose every problem encountered when selling a company's products.  To prove that a defendant acted with scienter, the plaintiffs must prove more than that a defendant knew about a problem or even was concerned about a problem, because much of any business consists of dealing with problems.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 60**

2      Much of any business consists of having problems and dealing with them (*Ranconi v.*

3   *Larkin,* 253 F. 3d 423, 430 (9th Cir. 2001), and a mere showing that defendants had access to

4   negative information about their company and failed to disclose it is insufficient to prove scienter.

5   *Weinberger v. Kwiker,* No. CV 85-6995 PAR (Bx), 1990 U.S. Dist. LEXIS 14085, at *27, 31

6   (C.D. Cal. Aug. 17, 1990) (U.S. Circuit Judge Pamela Ann Rymer sitting by designation, *aff'd*,

7   No. 90-56103, 1992 U.S. App. LEXIS 33853 (9th Cir. Dec. 23, 1992)); *accord Glover v. DeLuca,*

8   No. 2:03-CV-0288, 2006 WL 2850448, at * 17 (W.D. Pa. Sept. 29, 2006) (declining to find

9   scienter based simply on evidence that the company's officers were aware of certain problems,

10   noting that "Plaintiff appears to be equating a culpable state of mind with knowledge and

11   concern"); *In re Allscripts, Inc. Sec. Litig*., No. 00 C 6796, 2001 U.S. Dist. LEXIS 8897, at *26

12   (N.D. Ill. June 29, 2001) ("Corporate executives have no general duty to disclose every problem

13   that arises in selling a Company's products. . . . Where a company is candid about the risks it

14   faces in selling its product, it has no companion duty to report every glitch that arises.").

15      Instead, the relevant inquiry is whether the negative information known to defendants was

16   material and whether defendants knew or recklessly disregarded that nondisclosure of the

17   information was likely to mislead investors.  *Weinberger,* 1990 U.S. Dist. LEXIS 14085, at *27.

18   Because of the complexities and nuances of Section 10(b), the proposed instruction is necessary

19   and appropriate to avoid confusion of the issues.

20

**Plaintiffs' Argument Against Instruction No. 60**

21      The proposed charge is unnecessary and confusing.  The proper instruction defining

22   scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is

23   no authority supporting the notion that a jury, properly instructed as to scienter, is also to be

24   instructed separately on every piece of evidence the jury may consider on the issue of scienter.

25      Moreover, the proposed instruction is an incorrect statement of law.   A defendants'

26   awareness of a business problem that he does not disclose to the public may indeed by evidence

27   of scienter and fraud.  This instruction undermines the proper instruction on scienter and should

28   not be given.

**JURY INSTRUCTION NO. 61**

**Element 4 Of Section 10(b) — Loss Causation [Plaintiffs' Version] (*DISPUTED*)**

Plaintiffs must prove by a preponderance of the evidence that the defendants' alleged material misrepresentations or omissions were the cause of the economic injuries suffered by the Class members. This is called "loss causation."  Loss causation requires proof that the Class members' damages were "proximately" caused by defendants' material misrepresentations or omissions.  Loss causation has to do with the relationship between the Class members' investment loss and the information misstated or concealed by the defendants.  If that relationship is sufficiently direct, loss causation is established.  Damages are "proximately" caused by misrepresentations or omissions when it appears that the misrepresentations or omissions played a substantial part in bringing about the damage alleged.  Here, plaintiffs must show that the misrepresentations and omissions in dispute were a significant contributing cause of damages the Class members incurred. It is not necessary for plaintiffs to show that the alleged misrepresentations or omissions were the sole or exclusive cause of the damages the Class members incurred.

Plaintiffs bear the burden of proving by a preponderance of the evidence that the decline in the price of JDSU stock during the Class Period resulted at least in part from the disclosure or leakage of the truth about JDSU's business and finances.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 62**

2

**Element 4 Of Section 10(b) — Loss Causation [Defendants' Version] (*DISPUTED*)**

3        To satisfy the fifth element of their Section 10(b) claim, plaintiffs bear the burden of

4    proving by a preponderance of the evidence that the misstatements or omissions caused plaintiffs

5    to suffer an economic loss.

6        To establish causation, the plaintiffs must prove that the alleged misrepresentation or

7    omission played a substantial part in causing the injury or loss the plaintiffs suffered.  The

8    plaintiffs need not prove that the alleged misrepresentation or omission was the sole cause of the

9    economic injuries.

10        The plaintiffs must prove that the misstatement or omission concealed something from the

11    market that caused JDSU's stock price to be higher than it would have been without the material

12    misstatement or omission.  The plaintiffs must also prove that, when the concealed information

13    was revealed, it negatively and substantially affected the value of JDSU stock.

14

15

16    GIVEN:

17                    _____

18    REFUSED:

19                    _____

20    MODIFIED:

21                    _____

22    WITHDRAWN:

23                    _____

                                    _____
23                                  United States District Judge

24

25

26

27

28

1

**Plaintiffs' Argument**

2      The defendants dispute the inclusion of an instruction that the plaintiffs may prove loss

3   causation through "the decline in the price of JDSU stock during the Class Period resulted at least

4   in part from the disclosure or leakage of the truth about JDSU's business and finances."

5      The Supreme Court in its landmark case, *Dura Pharms. Inc. v. Broudo*, indicated that the

6   truth about the defendant's fraud may be revealed to the market through means other than a

7   formal corrective disclosure from the defendant, such as leakage.  The Supreme Court explained,

8   "if, say, the purchaser sells the shares quickly before the relevant truth begins to ***leak*** out, the

9   misrepresentation will not have led to any loss."  544 U.S. 336 at 342 (emphasis added).

10      Several district courts within the Ninth Circuit, interpreting *Dura* held that the decline in

11   the defendants' stock price may result from the leakage of the truth.  *See In re Daou Systems, Inc.*

12   *Sec. Litig.* 411 F.3d. 1006, 1026 (9th Cir. 2005) (suggesting that analysts can reveal the truth

13   about the fraud);  *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S.

14   Dist. LEXIS 41976, at *13-*14 (C.D. Cal. Sept. 14, 2005) (holding that market forces, including

15   highly sophisticated market participants, arbitrageurs and sell-side analysts, can slowly reveal the

16   truth about the fraud); *Ruland v. Infosonics Corp.* Nos. 06cv1231 BTM (WMc), et. al., 2006 U.S

17   Dist. LEXIS 79144, *14-*15 (S.D. Cal. Oct. 23, 2006) (holding that plaintiff did not adequately

18   plead loss causation because its allegations, in part, did not appear to include "any allegation that

19   the truth began to ***leak*** out").

20      Plaintiffs allege that the truth about the defendants' fraud was slowly disclosed, or leaked

21   out, through various market forces, including public statements by JDSU's top customers and

22   analysts.  Accordingly, the jury should receive an instruction on this component of loss causation.

23      Defendants' proposed instruction attempts to inject into this phase of the case the

24   defendants' view, rejected by the Court on several occasions, that a corrective disclosure must

25   admit the falsity of the alleged misrepresentation in order to sufficiently establish loss causation.

26   That formation is incorrect, does not take into account corrective disclosures that occur over time

27   with the relevant truth leaking into the market, and improperly heightens plaintiffs' burden of

28   proof on this element.

JOINT PROPOSED JURY INSTRUCTIONS                                                              120
C-02-1486 CW (EDL)
sf-2384909

1    Loss causation is established by the occurrence of a series of events that leak the relevant

2    truth into the market and thereby dissipate the price inflation resulting from false and misleading

3    statements. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (loss causation can be

4    established by evidence of shares being sold after "the relevant truth begins to leak out");

5    *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 411 F. Supp. 2d 1172, 1178

6    (N.D.Cal. 2005) (loss causation established through series of partial disclosures); *In re Motorola*

7    *Sec. Litig.*, 2007 WL 487738, at *31-*34 (N.D. Ill. Feb. 8, 2007) (specific disclosure correcting

8    previous representation or expressly disclosing particular fraud not required); *In re Bradley*

9    *Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006) (loss causation established where

10   truth revealed through series of disclosing events, including announcement of SEC inquiry); *In re*

11   *Bristol-Myers Squibb Sec. Litig.*, No. 00-1990, 2005 WL 2007004, at *20 (D.N.J. Aug. 17, 2005)

12   (rejecting argument that corrective disclosure must be the linguistic mirror image of the alleged

13   fraud); *Asher v. Baxter Int'l, Inc.*, No. 02-5608, 2006 WL 299068, at *7 (N..D. Ill. Feb. 7, 2006)

14   (loss causation established by evidence that company's poor earnings announcement "alerted the

15   market to the fact that …rosy predictions had not been true").

16   ## Defendants' Argument

17   Plaintiffs' proposed instruction is confusing, misleading, and prejudicial to Defendants.

18   The Court should reject it in favor of Defendants' proposed instruction, which is accurate and

19   much simpler.

20   Plaintiffs' repeated use of the word "proximately" is unnecessary and risks confusing the

21   jury.  In addition, the last sentence of Plaintiffs' proposed instruction is an inaccurate statement of

22   the law.  First, Plaintiffs use the phrase "at least in part," but Ninth Circuit law requires Plaintiffs

23   to prove that the alleged misstatement or omission played a *substantial* part in causing the alleged

24   injury.  *In re Daou Sys., Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  Second, Plaintiffs refer

25   to "leakage" without defining the term.  To establish that alleged "leakage" caused a compensable

26   loss, Plaintiffs "must provide proof that the market recognized a relationship between the event

27   disclosed and the fraud," not just that negative news was revealed and the stock price declined

28   that day.  *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1266 (N.D. Okla. 2007) (citation and

1    quotations omitted).  In other words, Plaintiffs must prove that the alleged "leakage" corrected a

2    material misstatement or omission.  *Id.* at 1257 ("[plaintiffs' expert's] approach to corrective

3    disclosures raises the question of whether the 'leakage' into the market, destroying the value of a

4    share of [the company's] stock, consisted of actual corrective disclosures which drained off a

5    fraud premium, or was, instead, leakage of the gradual realization of the increasingly grim

6    prospects for the telecommunications sector as a whole").  Third, Plaintiffs' use of the phrase "the

7    truth about JDSU's business and finances" also is misleading.  Plaintiffs must prove that they

8    suffered losses when the facts that were previously misstated or omitted became generally known.

9    *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005).  The "truth about JDSU's business and

10   finances" is far broader, and could include, for example, new information about JDSU's demand

11   in 2001 that was timely disclosed and does not correct any earlier alleged misstatement or

12   omission.

13        Defendants' instruction correctly states the law:  Plaintiffs must prove that the "concealed

14   information" was revealed and caused a loss.  It does not say that the information must be

15   revealed by JDSU or preclude Plaintiffs from arguing that the "concealed information" was

16   revealed through "leakage."

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 63**

**Loss Causation — Intervening Cause (*DISPUTED*)**

In determining whether the value of JDSU's stock was affected by the revelation of a material misrepresentation or omission by a defendant, you must consider evidence of what occurred after the misstatement or omission, including subsequent statements, changed economic circumstances, changed investor expectations, new industry-specific facts or conditions, and other events.

Factors you may consider in deciding whether other events were the cause of the plaintiffs' loss include:  (1) whether a significant period of time elapsed between the misstatement or omission and the plaintiffs' injury; (2) whether there was a subsequent statement updating the information available to the markets or otherwise influencing investors' decisions; (3) whether the plaintiffs' loss coincides with a market-wide phenomenon causing comparable losses to other investors.

GIVEN:          _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:      _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 63**

2        The proposed instruction is an accurate statement of the law.  The factors that the jury

3   may consider are set out in language that mirrors the language of the cited authorities.  *See*, *e.g.*,

4   *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) ("When a

5   significant period of time has elapsed between the defendant's actions and the plaintiff's injury,

6   there is a greater likelihood that the loss is attributable to events occurring in the interim.

7   Similarly, when the plaintiff's loss coincides with a marketwide phenomenon causing comparable

8   losses to other investors, the prospect that the plaintiff's loss was caused by the fraud

9   decreases.").

10        **Plaintiffs' Argument Against Instruction No. 63**

11        The proposed instruction is unbalanced in that it is heavily skewed in favor of the

12   defendants' theories and arguments.  The proper charge on loss causation sufficiently instructs the

13   jury that it must find that plaintiffs losses were caused by the alleged fraud.  If the jury finds such

14   losses were not caused by the fraud but by some other "intervening" factor, the jury already

15   knows that loss causation has not been satisfied.  If the defendants present any evidence

16   supporting an instruction on intervening cause, and the court rules that the defendants are entitled

17   to a separate instruction on intervening cause, the instruction should be neutral without listing and

18   thereby underwriting the factors that support the defense.

19

20

21

22

23

24

25

26

27

28

1

## JURY INSTRUCTION NO. 64

2

### Section 10(b) — Damages (*DISPUTED*)

3        If you find that the plaintiffs have proven by a preponderance of the evidence that they

4   have suffered damages, then you must determine the amount of damages that the plaintiffs have

5   suffered.  Damages are economic losses that were caused by a proven misstatement or omission

6   and that were suffered when the market learned the truth.

7        The plaintiffs do not have damages unless you find that a material misstatement or

8   omission caused inflation in the price of JDSU's stock and that later disclosures reduced the

9   amount of inflation attributable to the material misstatement or omission.  Inflation means that the

10  plaintiffs paid more for their JDSU stock than they would have paid if there had not been a

11  material misstatement or omission.  If you find that there was inflation in JDSU's stock price, you

12  must determine the dollar amount by which JDSU's stock price was inflated on each day during

13  the Class Period.

14       If you find that there was inflation in JDSU's stock price, you must also determine the

15  date and dollar amount of each loss that was caused when the market learned the truth.  For each

16  loss, you must identify the dates of the earlier misstatements or omissions that caused that loss.  If

17  one loss was caused by misstatements or omissions that occurred on more than one date, you

18  must divide the total dollar loss into the portions that are associated with each date that you

19  identified.

20

21

22

23

24

25

26

27

28

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 64**

2        Defendants' instruction is an accurate statement of the law.  Plaintiffs challenge it on the

3  ground that it instructs on the constant dollar approach to calculating inflation per share.  That is

4  not correct.  No matter which approach is used, the jury must determine the dollar amount of

5  inflation on each day during the Class Period.  Even though he uses the constant percentage

6  method for some of his calculations, Plaintiffs' own expert, Dr. Hakala, calculates the dollar

7  amount of inflation for every day no matter what method he uses.

8        In any event, as explained more fully in Defendants' motion to exclude Dr. Hakala's

9  testimony, the constant percentage inflation method is proscribed by *Dura Pharmaceuticals*,

10  because it would allow recovery for stock price declines that were not actually caused by alleged

11  misrepresentations.  *See Dura Pharms. Inc. v. Broudo*, 544 U.S. 345, 347-48, 366 (2005); *In re*

12  *Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1266 (N.D. Okla. 2007).  Plaintiffs admit that the

13  constant percentage inflation method allows recovery based on stock price changes before the

14  truth is revealed to the market.  This is plainly prohibited by *Dura Pharmaceuticals*, (stating

15  defendants are liable only "for the loss the purchaser sustains when the facts become generally

16  known and as a result share value depreciates").  *Id*. at 344.  Plaintiffs also incorrectly argue that

17  they can somehow recover for changes in inflation based on market and industry forces, even

18  though *Dura Pharmaceuticals* held the opposite.  *Id.* at 343 (distinguishing losses causes by

19  earlier misrepresentation from losses caused by "changed economic circumstances, changed

20  investor expectations, new industry-specific or firm-specific facts, conditions, or other events");

21  *Williams*, at 1256 (plaintiffs must separate "the compensable fraud-related losses from losses

22  attributable to general economic conditions, broad market trends, industry-specific stresses,

23  management incompetence, bad luck and other non-fraud factors").

24        Notably, Plaintiffs cite authorities that pre-date *Dura Pharmaceuticals*, *In re Clarent Sec.*

25  *Litig.*, No. C 01-3361 CRB, hearing transcript at *725-6 (N.D. Cal. Jan. 31, 2005), and that do not

26  address the admissibility of the constant percentage method, *In re Flag Telecom Holdings, Ltd.*

27  *Sec. Litig.*, 02 Civ. 3400 (WCC), 2007 WL 2596775, at *20 (S.D.N.Y. Sept. 4, 2007) (class

28

1  certification); *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-275 DT (MLGx), 2005 U.S. Dist.

2  LEXIS 41976 (C.D. Cal. Sept. 14, 2005) (approval of settlement).

3  <u>**Plaintiffs' Argument Against Instruction No. 64**</u>

4       The proposed instruction is duplicative, in part, with instruction No. 62 and additionally

5  carries forward the defects identified with respect to Instruction No. 62.  Moreover, defendants'

6  proposed instruction No. 64 is limited to a per share damage calculation, whereas plaintiffs intend

7  to request the jury to find aggregate damages.  See Plaintiffs' proposed instruction No. 65.

8       The defendants' proposed instruction No. 64 incorrectly instructs the jury on a constant

9  dollar approach to calculating per share inflation.  Plaintiffs intend to request the jury to calculate

10 per share inflation using the constant percentage method.  Many cases have endorsed the constant

11 percentage method, including cases in which Plaintiffs' damages expert, Dr. Scott Hakala, was an

12 expert.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 02 Civ. 3400 (WCC), 2007 WL

13 2596775, at *20 (S.D.N.Y. Sept. 4, 2007); *In re Omnicom Sec. Litig.*, No. 02 Civ. 4483 (WHP),

14 hearing transcript at *28-32 (S.D.N.Y. Aug. 24, 2007); *In re Clarent Sec. Litig.*, No. C 01-3361

15 CRB, hearing transcript at *725-26 (N.D. Cal. Jan. 31, 2005); *In re Broadcom Corp. Sec. Litig.*,

16 No. SA CV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 14, 2005).

17      Defendants dispute an instruction on the constant percentage method, because the

18 inflation in the stock changes as the stock price changes, even before the truth is revealed to the

19 market.  However, the courts and the commentators long have recognized that inflation changes

20 as the stock price changes.  Moreover, the concept that the amount of inflation in the stock price

21 can change over time as a result of market and industry forces acting on the fraud is consistent

22 with economic and valuation theory.  There is nothing illogical about investors receiving different

23 damages when they purchase stock at different times, even if the inflation as a percentage of the

24 stock price has not changed.

25

26

27

28

**JURY INSTRUCTION NO. 65**

**Section 10(b) — Aggregate Damages (*DISPUTED*)**

If you find for Plaintiffs on their Section 10(b) and 10b-5 claims, then you must decide the amount of money damages to award to the Class.  The law permits you to make a reasonable estimate of the damages suffered by the Class members based upon all of the relevant data that has been placed before you, either in the form of documents or testimony.  You may award only actual damages, in that amount which will reasonably and fairly compensate the Class members for the economic losses they sustained.[3]

Plaintiffs have provided expert testimony as to the aggregate damages suffered by the Class.  You have heard expert testimony on what JDSU's stock prices were during the Class Period, and you have heard expert testimony on the amounts JDSU's stock prices were inflated due to the false and misleading statements, misrepresentations, or omissions about JDSU's business and finances.  In order to calculate the amount of damages to be awarded, you are asked to calculate the amount by which the JDSU stock was inflated at different times during the Class Period as a result of defendants' wrongful conduct.

Plaintiffs have the burden of proving by a preponderance of the evidence the aggregate amount that the Class members lost.

---

[3] At this point, Lead Plaintiff is preserving its options to proceed under either an aggregate damages theory or a per share damages theory. Accordingly, proposed changes are submitted on both theories.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____


_____
                                   United States District Judge

**Plaintiffs' Argument For Instruction No. 65**

The defendants dispute the inclusion of this instruction in its entirety.  However, "aggregate damages awards are a 'standard practice' in securities cases."  *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2215, (S.D.N.Y. Feb. 17, 2005). The PSLRA "neither requires nor prohibits proof of aggregate damages" and "leaves it open for a court to select the most reliable method of damages proof that is available in that particular case." *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-275-GLT (MLGx), 2005 U.S. Dist. LEXIS 12118 (C.D. Cal. June 3, 2005) at *6-7.  "There is no hard-and-fast rules on the use of aggregate damages, and the determination whether that method is appropriate is governed by considerations of economy, fairness, and other equitable consideration." *Id*. at *7 (citing *In re Worldcom, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 3143, at *5 (D.N.J. 1989).  Lead Plaintiff is preserving its options to proceed under either an aggregate damages theory or a per share damages theory. Should Lead Plaintiff determine to proceed on an aggregate damages theory, the court should instruct the jury accordingly.

**Defendants' Argument Against Instruction No. 65**

As explained more fully in Defendants' trial brief, total damages should be determined in separate proceedings after the first phase of trial on classwide issues.  Because total damages must be determined on the basis of claims made, it would be unnecessary and wasteful of time for the jury to determine aggregate damages. *See In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-275 GLT (MLGx), 2005 WL 1403756, at *3 (C.D. Cal. June 3, 2005) ("lawsuit's purpose is to compensate claims lawfully made"; jury determination of aggregate damages would be "unreliable" and "not helpful").

Under the securities laws, "[t]he amount of damages is invariably an individual question." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  *See* 15 U.S.C. § 78bb(a) (no plaintiff may recover more than "his actual damages"); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 Wl 1506892, at *2 (N.D. Ill. Sept. 21, 2000) ("under the case law governing § 10(b)(5) securities actions such as this, only 'actual damages' may be awarded to each shareholder").  Accordingly, numerous courts have found it proper to reserve evidence and proof of individual damages

1   suffered by each class member to a proof-of-claim phase, to be held after a trial on class-wide

2   liability and, if liability is found, a jury calculation of damages per share.  *See, e.g.*, *Kaufman*,

3   2005 WL 1506892, at *2 ("assuming liability, an adequate remedy may be fashioned by having

4   the jury determine a per share damage loss and requiring the filing of claims by each shareholder

5   who claims that he, she or it has been damaged"); *Biben v. Card*, 789 F. Supp. 1001, 1003 (W.D.

6   Mo. 1992) (first phase of trial addressing "liability and the true value of the shares" to be

7   followed by second phase "to determine individual class member's damages"); *Jaroslawicz v.*

8   *Engelhard Corp.*, 724 F. Supp. 294, 302-03 (D.N.J. 1989) (damages to be "determined at trial

9   solely on a per share basis that will later be used in a separate proceeding on individual

10  damages"); *see also In re Broadcom*, No. SA CV 01-275 GLT (MLGx), 2005 WL 1403756, at *3

11  (C.D. Cal. June 3, 2005) (jury to determine "per share damages per day" and the "the Court can

12  easily use a claims administration process" to calculate damages).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 66**

**Section 10(b) — Per Share Damages (*DISPUTED*)**

If you find that defendants are liable under Section 10(b), the law permits you to make a reasonable estimate of the damages suffered by the Class member based upon all of the relevant data that has been placed before you, either in the form of documents or testimony.

Plaintiffs have provided testimony as to the per share damages suffered by the Class members. You have heard testimony on what JDSU's stock prices were during the Class Period, and you have heard expert testimony on the amounts JDSU 's stock prices were inflated due to the false and misleading statements, misrepresentations, or omissions about JDSU's business and finances. If you find that defendants violated Section 10(b), you must decide whether the Class is entitled to an award of monetary damages and, if so, the amount of damages to be awarded. In order to calculate the amount of damages to be awarded, you are asked to calculate the amount by which the JDSU stock was inflated at different times during the Class Period as a result of defendants' wrongful conduct.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1    **Plaintiffs' Argument For Instruction No. 66**

2    The defendants dispute this instruction in favor of their proposed instruction No. 64.

3    Instruction No. 64 is duplicative, in part, with instruction No. 62, and additionally carries forward

4    the defects identified with respect to Instruction No. 62.  Moreover, defendants' proposed

5    instruction No. 64 is limited to a per share damage calculation, whereas plaintiffs intend to

6    request the jury to find aggregate damages.  See Plaintiffs' proposed instruction No. 65.

7    The defendants' proposed instruction No. 64 incorrectly instructs the jury on a constant

8    dollar approach to calculating per share inflation.  Plaintiffs intend to request the jury to calculate

9    per share inflation using the constant percentage method.  Many cases have endorsed the constant

10   percentage method, including cases in which Plaintiffs' damages expert, Dr. Scott Hakala, was an

11   expert.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 02 Civ. 3400 (WCC), 2007 WL

12   2596775, at *20 (S.D.N.Y. Sept. 4, 2007); *In re Omnicom Sec. Litig.*, No. 02 Civ. 4483 (WHP),

13   hearing transcript at *28-32 (S.D.N.Y. Aug. 24, 2007); *In re Clarent Sec. Litig.*, No. C 01-3361

14   CRB, hearing transcript at *725-26 (N.D. Cal. Jan. 31, 2005); *In re Broadcom Corp. Sec. Litig.*,

15   No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 14, 2005).

16   Defendants dispute an instruction on the constant percentage method, because the

17   inflation in the stock changes as the stock price changes, even before the truth is revealed to the

18   market.  However, the courts and the commentators long have recognized that inflation changes

19   as the stock price changes.[4]  Moreover, the concept that the amount of inflation in the stock price

20   ───────────────

[4] *See In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341 (N.D. Cal. 1994) ("In the full
21   disclosure case, absent leakages, some fluctuation in the level of price inflation during the class
     period is to be expected.).  As the Ninth Circuit recognized in *Wool v. Tandem Computers, Inc.*,
     the degree of price inflation may change "'as a result of market forces operating on the
22   misrepresentations.'" 818 F.2d 1433, 1437 (9th Cir. 1987) (quoting *Green v. Occidental
     Petroleum Corp.*, 541 F.2d 1335, 1345 (9th Cir. 1976)"); John Finnerty and George Pushner, An
23   Improved Two-Trader Model for Estimating Damages in Securities Fraud Class Actions, 8 Stan.
     J.L. Bus. & Fin. 213, 220 (2003)(discusses adjusting the corrective events over time for a
24   "comparable stock index that recognizes both industry and market-wide influences" and adjusting
     for "firm specific factors that can be directly attributed to company announcements that are not
25   related to the fraud" using the backwardization approach based on percentage returns, not
     absolute dollar changes).  *See also* Bradford Cornell & R. Gregory Morgan, *Using Finance
26   Theory to Measure Damages in Fraud on the Market,* 37 UCLA L. Rev. 883, 899 – 900; Jon
     Koslow, *Estimating Aggregate Damages in Class Action Litigation Under Rule 10b-5 for
27   Purposes of Settlement*, 59 Fordham L. Rev. 811, 819-25 (1991); Janet Cooper Alexander, *The
     Value of Bad News in Securities Class Actions*, 41 UCLA L. Rev. 1421, 1426-27 (1994).

28

1    can change over time as a result of market and industry forces acting on the fraud is consistent

2    with economic and valuation theory.  There is nothing illogical about investors receiving different

3    damages when they purchase stock at different times, even if the inflation as a percentage of the

4    stock price has not changed.

5    **Defendants' Argument Against Instruction No. 66**

6    Plaintiffs' proposed instruction is biased, misleading, and prejudicial to Defendants.

7    Plaintiffs should not be allowed to submit their one-sided summary of the testimony in a jury

8    instruction.  The Court should reject this instruction in favor of Defendants' proposed instruction,

9    which is accurate and unbiased.

10   Plaintiffs' instruction repeatedly references the testimony of their expert, and fails to

11   mention the testimony that will be given by Defendants' expert that the alleged misleading

12   statements did not cause any losses.  The Court should give Defendants' proposed instruction,

13   which describes the determination that the jury must make in neutral terms, without biased

14   references to one party's evidence.

15   In addition, Plaintiffs' vague statement — "the law permits you to make a reasonable

16   estimate" of damages — implies a flexibility in the damages award that is unsupported by law,

17   and prejudicial to Defendants.  Plaintiffs cite no authority for this unnecessary language, which is

18   proscribed by Section 28(a) of the Exchange Act.  15 U.S.C. § 78bb(a) (Plaintiffs cannot recover

19   "a total amount in excess of . . . actual damages.").

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 67**

**Section 10(b) — Apportionment of Responsibility (*DISPUTED*)**

If you find for Plaintiff on its Section 10(b) claim, you will answer these questions that you will find on the verdict firm with respect to each defendant.

First, whether that defendant violated Section 10(b) and Rule 10b-5.

Second, if so, whether that defendant committed the violation knowingly, that is whether the defendant made an untrue statement of a material fact knowing that the statement is false or omitted a material fact with actual knowledge that the omission made the statement materially misleading.

Third, you will determine the percentage of responsibility of that defendant for the loss incurred by the Class members.  In determining the percentage of responsibility of each defendant, the law requires you to consider the nature of the conduct of each person you find contributed to the Class members' losses and the nature and extent of the causal relationship between the conduct of that person and the damages incurred by the Class members.


GIVEN:

REFUSED:          _____

MODIFIED:          _____

WITHDRAWN:          _____
          _____


_____
                    United States District Judge

1

**Plaintiffs' Argument For Instruction No. 67**

2        Any person against whom a final judgment is entered in a private securities action is

3   "liable solely for the portion of the judgment that corresponds to the percentage of responsibility

4   of that covered person."  15 U.S.C.S. § 78u-4(f)(2)(B).  "In any private action, ***the court shall***

5   ***instruct the jury*** to answer special interrogatories … with respect to each covered person and

6   each of the other person claimed by any party to have caused or contributed to the loss incurred

7   by the plaintiff."  *Id*. at 4(f)(3)(A) (emphasis added).  In determining the percentage of

8   responsibility under this paragraph, the trier of fact shall consider-- (i) the nature of the conduct of

9   each covered person found to have caused or contributed to the loss incurred by the plaintiff or

10  plaintiffs; and (ii) the nature and extent of the causal relationship between the conduct of each

11  such person and the damages incurred by the plaintiff or plaintiffs."  *Id*. at 4(f)(3)(C).

12

**Defendants' Argument Against Instruction No. 67**

13        This instruction should not be given because it would be inefficient, confusing, and

14  prejudicial to require the jury to consider proportionate liability in this phase of the trial.  Only

15  after making classwide determinations such as which Defendants are liable and the alleged true

16  value of JDSU's stock during the Class Period should the jury proceed, if necessary, to an

17  assessment of proportionate liability.

18        First, Plaintiffs' approach is inefficient because it would require the parties to present

19  evidence concerning the conduct of numerous non-parties, including Ernst & Young,

20  Pricewaterhouse Coopers, and a long list of current and former officers, directors, and employees

21  of the Company.  The substantial additional evidence could "make an orderly trial a challenge."

22  *In re Enron Corp. Sec. Litig*., 236 F.R.D. 313, 317 (S.D. Tex. 2006).

23        Second, presenting evidence and argument concerning proportionate liability at the same

24  time as evidence and argument concerning Defendants' liability would cause juror confusion.

25  *See, e.g., Acebey v. Shearson Lehman Bros., Inc*., 1994 No. CV 92-5926-WMB, 1999

26  WL 374298, at *5 (C.D. Cal. June 4, 1994) (different scienter requirements for liability and

27  damages in state law fraud and RICO claims created potential for juror confusion); *Bank of*

28

1   *Montreal v. Signet Bank*, 193 F.3d 818, 833 (4th Cir. 1999) (reversing verdict because of likely

2   juror confusion between reckless and knowing conduct).

3        Third, this instruction is prejudicial.  Each Defendant would be forced to protect against

4   potential proportionate liability by presenting evidence that other Defendants should be blamed

5   for any wrongdoing.  Courts do not hesitate to invoke their discretion to defer jury determinations

6   when evidence relevant to one issue but not others will unduly prejudice the defendant.  *See*

7   *Jones v. St. Paul Travelers*, No. C06-00717 SI, 2006 WL 2956550, at *5 (N.D. Cal. Oct. 16,

8   2006); *Drennan v. Md. Cas. Co.*, 366 F. Supp. 2d 1002, 1008 (D. Nev. 2005).  The Court should

9   do so here.

10       Plaintiffs argue that Reform Act requires the Court to instruct the jury on apportionment

11  now.  But that does not mean the Court should do so in the initial phase.  *See Green v. Baca*, 226

12  F.R.D. 624, 630 (C.D. Cal. 2005) (decision to hold separate proceedings within the Court's

13  discretion); *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 772 (9th Cir. 1996) (trifurcating

14  trial for sequential determination of issues); F.R.C.P. 42(b) (permitting Court to order the separate

15  proceedings on any issue "in furtherance of convenience or to avoid prejudice, or when separate

16  trials will be conducive to expedition and economy").

17       Finally, the second element of this instruction misstates the law.  The definition of a

18  "knowing" violation omits key information.  It should include the instruction that if the violation

19  is based on a false or misleading statement or omission, the Defendant must also have known at

20  the time the statement was made that other persons were likely to reasonably rely on that

21  misstatement or omission.  15 U.S.C. § 78u-4(f)(10)(A)(i)(I)-(II).  The instruction also incorrectly

22  implies that loss should be apportioned only among Defendants, rather than among any "persons

23  claimed by any of the parties to have caused or contributed to the loss," which could include non-

24  parties.  15 U.S.C. § 78u-4(f)(3)(A).

25

26

27

28

**JURY INSTRUCTION NO. 68**

**Insider Trading Under Section 10(b) (*DISPUTED*)**

It is a violation of Section 10(b) and Rule 10b-5 for a corporate insider to sell stock while in possession of material, nun-public information. That is because a corporate insider with access to such information by virtue of his relationship to the corporation has a duty to the shareholders to abstain from trading while possession of such material, non-public information or disclose such information prior to trading.  Plaintiffs have brought claims against the individual defendants under Section 10(b) and Rule 10b-5 based on allegations of insider trading.  In order to find for plaintiffs on these claims, you must find that plaintiffs proved by a preponderance of the evidence each of the following elements:

    1.    an individual defendant sold JDSU stock

    2.    while in possession of material, non-public information

    3.    causing plaintiffs to suffer financial damages

The definition of materiality for this claim is the same as with respect to other claims under Section 10(b).

GIVEN:    _____

REFUSED:    _____

MODIFIED:    _____

WITHDRAWN:    _____

_____
United States District Judge

1

**Plaintiffs' Argument For Instruction No. 68**

2   Defendants are mistaken in arguing that Lead Plaintiff has never asserted claims for

3   insider trading under Section 10(b) and Rule 10b-5.  In the Second Amended and Consolidated

4   Complaint, Plaintiffs allege in their Tenth Claim for Relief for Violations of Section 10(b) of the

5   Exchange Act and Rule 10b-5 that:

6
> During the Class Period, Defendants JDS, Straus, Kalkhoven,
> Muller and Abbe and each of them, carried out a plan, scheme and
7   course of conduct which was intended to and, throughout the Class
> Period, did: (i) deceive the investing public, including the Lead
8   Plaintiff and other Class members, as alleged herein; (ii) artificially
> inflate and maintain the market price of JDS securities; (iii) cause
9   the Lead Plaintiff and other members of the Class to purchase JDS
> securities at inflated prices; (iv) enable the Individual Defendants to
10  unload more than $500 million of company stock at inflated prices;
> and (v) enable other JDS insiders to unload more than $300 million
11  of Company common stock at inflated prices.  In furtherance of this
> unlawful scheme, plan and course of conduct, Defendants took the
12  actions set forth herein.

13  SACC ¶ 396.  Paragraph 400(b) of this Claim goes on to state that: "Defendants were also

14  motivated to reap tremendous financial gains by cashing out their JDS stock holdings before

15  disclosing the downturn in JDS's business, which ultimately caused the price of the Company's

16  stock to crash."

17   Connecticut's briefs have repeatedly referred to its claims for insider trading under Rule

18  10b-5, without objection by Defendants.  *See e.g.* Memorandum of Points and Authorities in

19  Opposition to Defendants' Motions for Summary Judgment (Docket No. 1262), at fn 36

20  ("plaintiff's Section 20A and 10b-5 insider trading claims should also be sustained");

21  Memorandum in Opposition re JDSU's Motion to Dismiss Second Amended Consolidated

22  Complaint (Docket No. 206 at 23)(noting that Section 20A clais rest on 10(b) violations.

23   The United States Supreme Court has held that "under the 'traditional' or 'classical

24  theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider

25  trades in the securities of his corporation on the basis of material, nonpublic information." *United*

26  *States  v. O'Hagan*,  521 U.S. 642, 651 (1997).  *See also*, *Chiarella v. United States*, 445 U.S.

27  222, 235 (1980); *accord Johnson v. Aljian*, 490 F3d. 778, 779 at fn 7 (9th Cir. 2007)(observing

28  that "Rule 10b5-1 defines when a purchase or sale constitutes trading 'on the basis of' material

1  nonpublic information in insider trading cases brought under Section 10(b) of the Act and Rule

2  10b-5 thereunder") (internal quotations omitted).

3  **<u>Defendants' Argument Against Instruction No. 68</u>**

4  The Court should reject Plaintiffs' proposed instruction regarding trading under

5  Section 10(b), because it does not relate to any claim in this case.  Plaintiffs did not plead a

6  trading claim under Section 10(b).  For that reason, such a claim has never been the subject of a

7  motion to dismiss or summary judgment motion.  Plaintiffs have only recently argued that the

8  Complaint states such a claim, but on its face it does not.  Rather, the only allegations supporting

9  the Section 10(b) claim concern alleged misstatements and omissions.  The trading allegations

10  that Plaintiffs cite relate to the scienter element of their misstatement or omission claim.  They do

11  not state an entirely separate claim.

12  The alleged trading violation of Section 10(b) is relevant *only* insofar as it can serve as a

13  predicate to Plaintiffs' claim under Section 20A.  Defendants' instruction on "Elements for

14  Liability Under Section 20A" already incorporates all of the Section 10(b) trading elements at

15  issue.  This instruction is therefore irrelevant to the issues to be decided by the jury, is unduly

16  prejudicial to the defendants, and would confuse the issues and waste time.

17  If the Court decides to give a separate instruction for Section 10(b) trading violations, it

18  should not use this instruction because it misstates the law and is confusing and prejudicial.  First,

19  the instruction completely ignores the requirement that Plaintiffs prove scienter:  the intent to

20  deceive, manipulate, or defraud.  *See United States v. Smith*, 155 F.3d 1051, 1069 (9th Cir. 1998).

21  A defendant's possession of material, non-public information must, at the least, be "knowing."

22  *See Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1198 (C.D. Cal. 2004), *aff'd,* 490 F.3d 778 (9th Cir.

23  2007).  Ninth Circuit case law further requires that the defendant "actually used" material,

24  nonpublic information in formulating or making the trade, not that the defendant merely

25  "possessed" the information.  *Id.* at 1198-99; *Smith*, 155 F.3d at 1068 ("It is the insider's use, not

26  his possession, that gives rise to an informational advantage and the requisite intent to defraud.").

27  Furthermore, Plaintiffs repeat the purported elements of an insider trading claim in the

28  first sentence of this instruction ("It is a violation of Section 10(b)… for a corporate insider to sell

1   stock while in possession of material, nun-public [sic] information."); again in the second

2   sentence of this instruction; and again in the fourth sentence.  Such repetition invites inconsistent

3   interpretations by the jury.  The jury would be far better served by receiving a single,

4   comprehensive instruction setting forth the elements Plaintiffs must prove to prevail on the 20A

5   claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 69**

**Damages for Insider Trading Under Section 10(b) (*DISPUTED*)**

The measure of damages on plaintiffs' insider trading claims under Section 10(b) and Rule 10b-5 is the disgorgement of any profits you find an individual defendant realized from engaging in such insider trading.


GIVEN:

          _____

REFUSED:

          _____

MODIFIED:

          _____

WITHDRAWN:

          _____


_____
United States District Judge

1

**Plaintiffs' Argument For Instruction No. 69**

2     *See* Plaintiffs' Argument For Instruction No. 68.   Additionally, there is support for the

3   concept that damages for insider trading under Section 10(b) is disgorgement.  *Randall v.*

4   *Loftsgaarden*, 478 U.S. 647, 663 (1986).

5

**Defendants' Argument Against Instruction No. 69**

6     The Court should reject Plaintiffs' proposed instruction.  Plaintiffs are not entitled to

7   proffer an instruction regarding damages for trading under Rule 10b-5, because Plaintiffs have

8   not alleged such a claim.  Therefore, this instruction is irrelevant to the issues to be decided by the

9   jury, is unduly prejudicial to the Defendants, and would confuse the issues.

10     Furthermore, even if Plaintiffs had pled such a claim, Plaintiffs' instruction is an

11   inaccurate statement of the law.  Any recovery under Section 10(b) is limited by Section 28(a) of

12   the Exchange Act, which states that "no person permitted to maintain a suit for damages under the

13   provisions of this chapter shall recover . . . a total amount in excess of . . . actual damages."

14   15 U.S.C. § 78bb(a).  The correct measure for recovery under Rule 10b-5 is out-of-pocket

15   damages.  *See, e.g.*, *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987)

16   ("recoverable damages [are] determined by the out-of-pocket rule.").  This limits recovery to the

17   defendants' profit caused by the illegal transaction, which is the difference between the price at

18   which the defendant sold the security and its true value had the insider information been disclosed

19   on the day of the transaction.  *See, e.g.*, *SEC v. MacDonald*, 699 F.2d 47, 54 (1st Cir. 1983) (only

20   profits causally related to the fraud can be recovered in insider-trading case).

21     Plaintiffs' proposed instruction could lead a jury to award damages greater than allowed

22   by law.  Plaintiffs' instruction allows a jury to award "disgorgement of any profits . . . an

23   individual defendant realized from engaging in such insider trading."  This language is vague and

24   ambiguous and implies that disgorgement of all profit is allowed.  However, only damages

25   causally related to the fraud are recoverable.  This means that in determining the appropriate

26   measure of damages, the jury must deduct the amount of any price change caused by extrinsic

27   market factors.  *See, e.g.*, *Miller v. Asensio & Co.*, 364 F.3d 223, 233 (4th Cir. 2004) ("in

28

1    determining recoverable damages [] contributing forces must be isolated and removed") (internal

2    citation and quotations omitted).

1

**SECTION 14(a) INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 70**

**Elements Of Liability Under Section 14(a) (*DISPUTED*)**

I will now instruct you concerning the next claim — that defendants Jozef Straus and Anthony Muller violated Section 14(a) of the Securities Exchange Act of 1934.  This claim is not brought against JDSU, Jay Abbe, or Kevin Kalkhoven.

This claim applies to the November 17, 2000 SDL Amended Registration Statement and Amended Proxy-Prospectus.

To establish their claim under Section 14(a), the plaintiffs bear the burden of proving all of the following elements by a preponderance of the evidence:

1.      That the defendants made a misstatement or omitted information necessary to prevent the statement made from being misleading;

2.      That the misstatement or omitted information was material;

3.      That the material misstatement or omission was the result of knowing, reckless, or negligent conduct on the part of the defendants;

4.      That the proxy-prospectus was an essential link in the accomplishment of the merger;

**[5.      That the corporate transaction at issue was approved as a result of the misstatement or omission in the proxy-prospectus]**; and

6.      That the plaintiffs suffered damages as a result of the material misstatement or omission.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**Plaintiffs' Argument**

2          The proposed instruction incorrectly increase plaintiffs' burden of proof to require both

3     that the proxy was an essential link in the accomplishment of the merger, and in addition, that the

4     merger was approved as a result of the material misrepresentation or omission in the proxy-

5     prospectus.  As the Supreme Court wrote in *Mills v. Electric Autolite Co.*, 396 U.S. 375, 384-85

6     (1970): "There is no need to supplement this requirement, as did the Court of Appeals, with a

7     requirement of proof of whether the defect actually had a decisive effect on the voting. Where

8     there has been a finding of materiality, a shareholder has made a sufficient showing of causal

9     relationship between the violation and the injury for which he seeks redress if, as here, he proves

10    that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was

11    an essential link in the accomplishment of the transaction."

12

**Defendants' Argument**

13         The Court should include Defendants' element number 5, which is in brackets and

14    boldface.  Defendants' proposed jury instruction correctly includes all of the elements necessary

15    to make a Section 14(a) claim, including stating the correct legal standard for the second aspect of

16    Section 14(a) causation.  As discussed below, there are two facets to causation under a Section

17    14(a) claim.  Edward Brodsky & M. Patricia Adamski, *Law of Corporate Officers and Directors:*

18    *Rights, Duties and Liabilities* § 15.22 (2007); 5A Arnold S. Jacobs, *Disclosure and Remedies*

19    *Under the Securities Laws* 4-52 (2007).  First, the proxy-prospectus must be an "essential link" in

20    the accomplishment of the corporate transaction, as provided in the parties' essential link jury

21    instruction.  *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).  Second, the

22    corporate transaction at issue must have been approved as a result of the material misstatement or

23    omission in the proxy-prospectus.  *See Minzer v. Keegan*, 218 F.3d 144, 149-150 (2d Cir. 2000);

24    *Gaines v. Haughton*, 645 F.2d 761, 775 n.23 (9th Cir. 1981).

25         This second facet of causation is not duplicative of the "essential link" instruction.

26    Moreover it does not require, as Plaintiffs' argue, "proof of whether the defect actually had a

27    decisive effect on the voting."  In fact, the court in *Minzer* was careful to note in *Va. Bankshares,*

28    *Inc. v. Sandberg,* 501 U.S. 1083 (1991), the case clarifying the Court's prior decision in *Mills,*

1   that "the Court was only relieving plaintiffs of the difficult burden of proving that, properly

2   informed, shareholders would have defeated the transaction in question.  The Court did not intend

3   to provide a windfall to plaintiffs suing over an omission that, if rectified, would not cause

4   shareholders to be any less likely to approve the transaction."  *Minzer*, 218 F.3d at 149.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY INSTRUCTION NO. 71

2

### Element 1 Of Section 14(a) — Misstatements Or Omission

3      To satisfy the first element of their Section 14(a) claim, plaintiffs bear the burden of

4  proving by a preponderance of the evidence that the defendants made a misstatement or omitted

5  information necessary to prevent the statement made from being misleading.

6      The instructions regarding misstatements and omissions are the same as those I provided

7  with respect to Section 10(b).

8

9  Authority:        *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929-30 (9th Cir. 1996); *In re GlenFed,*
                    *Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (en banc); *In re Stac Elecs.*
10                   *Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *Heliotrope Gen., Inc. v. Ford*
                    *Motor Co.*, 189 F.3d 971 (9th Cir. 1999) (affirming summary judgment where
11                   analyst reports and news articles showed that the market was aware of allegedly
                    undisclosed information); *Siegel v. Lyons*, No. C-95-3588 DLJ, 1996 U.S. Dist.
12                   LEXIS 22382, at *12 (N.D. Cal. Apr. 26, 1996) ("Where SEC filings actually
                    disclose allegedly omitted information, dismissal of a claim premised upon
13                   nondisclosure is proper."); *Ash v. LFE Corp.*, 525 F.2d 215, 218-19 (3d Cir. 1975)
                    (holding that proxy was not misleading where it disclosed information in note to
14                   table); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 491 (S.D.N.Y.
                    2005); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004)
15                   (describing "reasonable investor"); *Black's Law Dictionary* (8th ed. 2004)
                    (defining "reasonable person"); ABA, Section of Litig., *Model Jury Instructions:*
16                   *Securities Litigation*, Instructions 2.03[1], [1][a], [1][c], [1][d] (1996) (modified);
                    Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.22 (5th ed. 2007)
17                   (modified).

18

19
    GIVEN:
20                 _____

21  REFUSED:
22                 _____
23  MODIFIED:

24                 _____
    WITHDRAWN:
25                 _____

26
                                          _____
27                                          United States District Judge

28

**JURY INSTRUCTION NO. 72**

**Element 2 Of Section 14(a) — Materiality**

Under Section 14(a), when information appears in a proxy-prospectus seeking shareholder approval for a merger, the information can be deemed material only if you find that there is a substantial likelihood that a reasonable shareholder would have considered it important in deciding how to vote on the merger.

Authority:      *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988).

GIVEN:                   _____

REFUSED:              _____

MODIFIED:            _____

WITHDRAWN:       _____

_____
United States District Judge

**JURY INSTRUCTION NO. 73**

**Element 3 Of Section 14(a) — Knowing, Reckless, Or Negligent Conduct**

To satisfy the third element of their Section 14(a) claim, plaintiffs bear the burden of proving by a preponderance of the evidence that the defendants acted either knowingly, recklessly, or negligently in making a material misstatement or omission.

The definitions of knowing and reckless are the same as I provided in the instructions under Section 10(b).

A defendant acts negligently when the defendant does something that a reasonably prudent person would not do, under circumstances similar to those shown by the evidence, or fails to do something that a reasonably prudent person would do, under circumstances similar to those shown by the evidence.  In other words, the defendants fail to use ordinary or reasonable care.

Authority:          *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1142, 1147 (C.D. Cal. 2002); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1264 (N.D. Cal. 2000).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                                          United States District Judge

**JURY INSTRUCTION NO. 74**

**Element 4 Of Section 14(a) — Essential Link**

To satisfy the fourth element of their Section 14(a) claim, the plaintiffs bear the burden of proving by a preponderance of the evidence that the proxy-prospectus was an essential link in the accomplishment of the merger.


Authority:     *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1086-89, 1099-100 (1991).



GIVEN:            _____

REFUSED:        _____

MODIFIED:        _____

WITHDRAWN:     _____


                                                    _____
                                                              United States District Judge

**JURY INSTRUCTION NO. 75**

**Element 5 Of Section 14(a) — Causation (*DISPUTED*)**

To satisfy the fifth element of their Section 14(a) claim, plaintiffs bear the burden of proving by a preponderance of the evidence that the corporate transaction at issue, which is the merger with SDL, was approved as a result of the material misstatement or omission in the proxy-prospectus.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____

United States District Judge

1

**Defendants' Argument For Instruction No. 75**

2

Defendants' proposed jury instruction states the correct legal standard.  There are two

3

facets to causation under a Section 14(a) claim.  Edward Brodsky & M. Patricia Adamski, *Law of*

4

*Corporate Officers and Directors:  Rights, Duties and Liabilities* § 15.22 (2007); 5A Arnold S.

5

Jacobs, *Disclosure and Remedies Under the Securities Laws* 4-52 (2007).  First, the proxy-

6

prospectus must be an "essential link" in the accomplishment of the corporate transaction, as

7

provided in the parties' essential link jury instruction.  *See, e.g.*, *Mills v. Elec. Autolite Co.*,

8

396 U.S. 375, 385 (1970).  Second, the corporate transaction at issue must have been approved as

9

a result of the material misstatement or omission in the proxy-prospectus.  *See Minzer v. Keegan*,

10

218 F.3d 144, 149-150 (2d Cir. 2000); *Gaines v. Haughton*, 645 F.2d 761, 775 n.23 (9th Cir.

11

1981).

12

This second facet of causation is not duplicative of the "essential link" instruction.

13

Moreover it does not require, as Plaintiffs' argue, "proof of whether the defect actually had a

14

decisive effect on the voting."  In fact, the court in *Minzer* was careful to note in *Va. Bankshares,*

15

*Inc. v. Sandberg,* 501 U.S. 1083 (1991), the case clarifying the Court's prior decision in *Mills*,

16

that "the Court was only relieving plaintiffs of the difficult burden of proving that, properly

17

informed, shareholders would have defeated the transaction in question.  The Court did not intend

18

to provide a windfall to plaintiffs suing over an omission that, if rectified, would not cause

19

shareholders to be any less likely to approve the transaction."  *Minzer*, 218 F.3d at 149.

20

Plaintiffs are thus incorrect in arguing that this causation instruction is not necessary.

21

**Plaintiffs' Argument Against Instruction No. 75**

22

The proposed instruction is duplicative of the "essential link" instruction that appears in

23

Instruction No. 74.  It would incorrectly increase plaintiffs' burden of proof to require both that

24

the proxy was an essential link in the accomplishment of the merger, and in addition, that the

25

merger was approved as a result of the material misrepresentation or omission in the proxy-

26

prospectus.  As the Supreme Court wrote in *Mills v. Electric Autolite Co.*, 396 U.S. 375, 384-85

27

(1970): "There is no need to supplement this requirement, as did the Court of Appeals, with a

28

requirement of proof of whether the defect actually had a decisive effect on the voting. Where

1  there has been a finding of materiality, a shareholder has made a sufficient showing of causal

2  relationship between the violation and the injury for which he seeks redress if, as here, he proves

3  that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was

4  an essential link in the accomplishment of the transaction."

**JURY INSTRUCTION NO. 76**

**Element 6 Of Section 14(a) — Damages**

If you find that the plaintiffs have proven each of the first three elements of their claim under Section 14(a), then you must determine whether the plaintiffs have proven by a preponderance of the evidence that they have suffered damages as a result of the alleged Section 14(a) violation.

The measure of damages under Section 14(a) is the same as the measure of damages under Section 10(b), which I previously described.  Although the measure is the same, the damages calculated for the violation of Section 14(a) are limited to the damages that were caused by the alleged violation of Section 14(a).

Authority:     *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1142, 1152 n.9 (C.D. Cal. 2002) ("The standard measure of recovery under § 14(a) is out-of-pocket damages. . . ."); ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 4.02[7], 4.04[1] (1996) (modified).

GIVEN:          _____

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:      _____

_____
                                United States District Judge

**JURY INSTRUCTION NO. 77**

**No Double Damages (*DISPUTED*)**

The plaintiffs may not recover double damages.  If you find any of the defendants liable under more than one theory of liability, the plaintiffs are only entitled to recover the damages proved under one theory, not all of the theories.  In other words, the plaintiffs cannot be compensated more than once for any damage caused.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**Defendants' Argument For Instruction No. 77**

2          This instruction is necessary to assist the jury and to avoid confusion, as well as to

3    preserve Defendants' ability to challenge a jury award that improperly allows double-recovery.

4    This case involves claims under various provisions of the Exchange Act of 1934, including

5    Section 10(b), Section 14(a), Section 20(a), and Section 20A, all of which allow recovery of

6    damages.  However, the recovery of damages under those provisions is limited by the language of

7    Section 28(a), which states that no plaintiff who brings a claim under the provisions of the

8    Exchange Act "shall recover . . . a *total amount in excess of his actual damages* on account of the

9    act complained of."  15 U.S.C. § 78bb(a) (emphasis added).  Therefore, under Section 28(a),

10   Plaintiffs cannot recover amount in excess of actual damages caused by a particular wrongful act.

11   *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032 (9th Cir. 1999) (holding that

12   plaintiff could not receive full purchase price of securities and also retain securities).

13         The case Plaintiffs cite demonstrates why this instruction should be given.  In *Acevedo-*

14   *Garcia v. Monroig*, 351 F.3d 547, 568-69 (1st Cir. 2003), defendants appealed the jury award on

15   various grounds, including on the ground that the award of compensatory damages for due

16   process violations was excessive and duplicative of political discrimination damages.  *Id.* at 567.

17   The First Circuit agreed that the award may have been duplicative and that the trial court's

18   instruction prohibiting duplicative damages was unclear.  *Id.* at 569.  However, the appellate court

19   concluded that the error was not prejudicial because the defendants failed to take action to avoid

20   double-recovery despite being on notice that plaintiffs' claims made such recovery possible.  *Id.*

21   at 569.  Among other things, "[d]efendants could [] have requested jury instructions that clearly

22   directed the jury to compensate the plaintiffs' unemployment injuries just once."  *Id.*  In addition,

23   "defendants failed to lodge a pertinent objection to either the jury instruction or the verdict form."

24   *Id.*

25         For that reason, Defendants have included this instruction here, and it should be given.

26

**Plaintiffs' Argument Against Instruction No. 77**

27         The proposed instruction is unnecessary and confusing.  The jury will not

28   understand the concept of double damages and may be misled by this proposed instruction into a

JOINT PROPOSED JURY INSTRUCTIONS                                                                      160
C-02-1486 CW (EDL)
sf-2384909

1   reluctance to award any damages.  The verdict form will evidence whether the jury has

2   erroneously awarded double damages and the court can correct any error in this regard by way of

3   post trial motions.  *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 570 (1st Cir. 2003).

**SECTION 20(a) INSTRUCTIONS**

**JURY INSTRUCTION NO. 78**

**Elements Of Liability Under Section 20(a)**

I will now instruct you concerning the next claim — that defendants Jozef Straus, Anthony Muller, Jay Abbe, and Kevin Kalkhoven violated Section 20(a) of the 1934 Securities Exchange Act.  This claim is not brought against JDSU.

To prevail on this claim, the plaintiffs bear the burden of proving by a preponderance of the evidence two elements:

1.      That a defendant violated Section 10(b) or 14(a), as previously defined; and

2.      That an individual defendant was a controlling person (a term I will define shortly) of the person who committed the violation.


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:


_____
United States District Judge

**JURY INSTRUCTION NO. 79**

**Definition Of Controlling Person (*DISPUTED*)**

To prevail on a Section 20(a) claim, the plaintiffs must establish that the defendants were controlling persons of the person who committed the violation of Sections 10(b) or 14(a).  To do so, the plaintiffs bear the burden of proving by a preponderance of the evidence that the defendant exerted actual power or control over the person who committed the violation at the time of the violation.

Having power or influence over the general corporate affairs of JDSU is insufficient to establish that the defendant was a controlling person.


GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____


_____
                                        United States District Judge

1

**Defendants' Argument For Instruction No. 79**

2      This case involves claims that certain Individual Defendants were controlling persons

3   within the meaning Section 20(a) of the 1934 Securities Exchange Act.  An explanation of the

4   meaning of "controlling person" under Section 20(a) is therefore necessary.  This instruction is an

5   accurate statement of the law.  The first sentence is supported by the text of the statute.  15 U.S.C.

6   §78t(a) (requiring "control" of a "person liable under any provision… rule… or regulation" of the

7   Exchange Act).

8      The second sentence tracks the language of Ninth Circuit case-law.  *Durham v. Kelly*, 810

9   F.2d 1500, 1503-04 (9th Cir. 1987) ("complainant must show that… actual power or influence

10  was exerted over the alleged controlled person"); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d

11  1054, 1081 (N.D. Cal. 2003) ("defendant must have exerted actual control").

12     The third sentence also tracks the language of Ninth Circuit case-law.  *Durham*, 810 F.2d

13  at 1505 ("actual power or influence over general corporate affairs" not enough to establish control

14  person liability); *Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at *3 (N.D. Cal. Sept.

15  24, 2001) ("general control over a company is not enough").

16     Therefore, this instruction should be given to the jury.

17

**Plaintiffs' Argument Against Instruction No. 79**

18     This proposed instruction misstates the applicable law with respect to control person

19  liability.  Defendants' charge states that the control person must have actual power or control over

20  the person who committed the violation.  The case law, however, holds that anyone who exerts

21  "direct or indirect" control is a control person.  *Paracor Finance, Inc. v. General Elec. Capital*

22  *Corp.,* 96 F.3d 1151, 1161 (9th Cir. 1996).  The use of the terms actual power or control are

23  inconsistent with the concept that there can be indirect control.

24     The proposed charge also instructs that having power or influence over corporate affairs is

25  insufficient to establish that a defendant was a control person.  That makes no sense when, as

26  here, the primary violator is the corporation.  The only way to show that a person is a control

27  person with respect to a corporation is to show power or influence over corporate affairs.

28

1

2

**JURY INSTRUCTION NO. 80**

**Violation of Section 20(a) (*DISPUTED*)**

3    In addition to considering whether a defendant is primarily liable for violation section

4    10(b) and Rule 10b-5, and section 14(a) and Rule 14a-9, you may also consider if a defendant is

5    liable for having caused another to commit the primary violation.  If you find that JDSU violated

6    section 10(b) and Rule 10b-5, or 14(a) and Rule l4a-9, then you must consider whether the

7    Individual Defendants, Jozef Straus, Kevin Kalkhoven, Anthony Muller, and/or Charles Abbe -

8    were controlling persons with respect to JDSU.

9    Under the law, a defendant (as a controlling person) may be liable if during the period that

10    someone else (a controlled person) defrauded the Class members, the defendant had the authority

11    to control that person or company.

12    Plaintiffs claim that the individual defendants are each a controlling person with respect to

13    JDSU and are therefore liable under the securities laws to the same extent JDSU is liable.  On this

14    claim, Plaintiffs have the burden of proving by a preponderance of the evidence that the

15    defendants – Jozef Straus, Kevin Kalkhoven, Anthony Muller, and Charles Abbe - possessed,

16    directly or indirectly, the actual power to direct or cause the direction of the management and

17    policies of JDSU.  It is not necessary to prove that the defendants actually participated in the

18    exercise of actual power over JDSU.

19

20

21

22

23

24

25

26

27

28

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                    United States District Judge

1

**Plaintiffs' Argument For Instruction No. 80**

2       The disputed portion of this charge is the definition of control person.  Defendants' charge

3  states that the control person must have actual power or control over the person who committed

4  the violation.  The case law, however, holds that anyone who exerts "direct or indirect" control is

5  a control person.  *Paracor Finance, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1161 (9th

6  Cir. 1996); *See also* Ninth Circuit Manual of Model Jury Instructions (Civil) 18.9 (West 2007

7  ed.).  The use of the terms actual power or control are inconsistent with the concept that there can

8  be indirect control.

9       Defendants' charge also says that having power or influence over corporate affairs is

10  insufficient to establish that a defendant was a control person.  That makes no sense when, as

11  here, the primary violator is the corporation.  The only way to show that a person is a control

12  person with respect to a corporation is to show power or influence over corporate affairs.

13

**Defendants' Argument Against Instruction No. 80**

14       The Court should reject this instruction because it is cumulative, confusing to the jury, and

15  unduly prejudicial to the Defendants.  To the extent that it sets out the general standard for

16  establishing liability under Section 20(a), it is repetitive of a separate Section 20(a) instruction

17  that informs the jury of the general standard, the specific elements, and the Individual Defendants

18  against whom Plaintiffs are bringing this claim.  Likewise, a separate Section 20(a) instruction

19  already defines the "controlling person" element, as well as the requirement that the defendant

20  exert actual power over the controlled person.  Therefore, this instruction is superfluous.

21       In addition, the final sentence of the third paragraph is an inaccurate statement of the law

22  and contradicts Plaintiffs' instruction regarding the necessary elements of Section 20(a).

23  Contrary to Plaintiffs' position in this instruction, to establish liability under Section 20(a),

24  Plaintiffs must prove that each defendant "exerted" actual power.  It is not sufficient that the

25  defendant merely possessed such power.  *See, e.g.*, *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th

26  Cir. 1987) (requiring showing that "actual power or influence was exerted over the alleged

27  controlled person"); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003)

28  ("defendant must have exerted actual control").

**JURY INSTRUCTION NO. 81**

**Defense To Section 20(a) Liability — Good Faith [Plaintiffs' Version] (*DISPUTED*)**

The Individual Defendants each contend that he is not liable even if he was a controlling person, because he acted in good faith. The Individual Defendant has the burden of proving both of the following elements by a preponderance of the evidence:

    1.    The Individual Defendant did not directly or indirectly induce the violation; and

    2.    The Individual Defendant acted in good faith.

If you find that the Individual defendant proved both of these elements, your verdict on the Section 20(a) should be for the defendant. The Individual Defendant can prove good faith only by establishing that he maintained and enforced a reasonable and proper system of supervision and internal control. If you find that the Individual Defendant failed to prove either of these elements, your verdict should be for the plaintiff.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 82**

2

**Defense To Section 20(a) Liability — Good Faith [Defendants' Version] (*DISPUTED*)**

3      The defendants assert the defense of good faith under Section 20(a).  To establish this

4   defense, the defendant must prove both of the following elements by a preponderance of the

5   evidence:

6          1.      That the defendant did not directly or indirectly induce the violation; and

7          2.      That the defendants acted in good faith.

8      The defendant can prove good faith by establishing that he maintained and enforced a

9   reasonable and proper system of supervision and internal control.

10      A person who acts, or causes another person to act, on a belief or opinion honestly held is

11   not liable under Section 20(a) merely because the opinion or belief turns out to be inaccurate,

12   incorrect or wrong.

13

14

15   GIVEN:

16                   _____

17   REFUSED:

18                   _____

19   MODIFIED:

20                   _____

21   WITHDRAWN:

22                   _____

23                                              _____
                                                    United States District Judge

24

25

26

27

28

1

**Plaintiffs' Argument**

2      Plaintiffs' instruction closely follows the Ninth Circuit's model instruction, which is the

3  controlling authority.  There is no reason to deviate from it.

4      If defendants seek to have the jury instructed on the good faith defense, the appropriate

5  charge is 82-8 of Sand, et al.  Additionally, insofar as the defendants will urge as part of their

6  good faith defense that they relied on the advice of accountants or attorneys, the good faith

7  instruction must be augmented to include the concept that good faith reliance on accountants or

8  attorneys requires evidence of full disclosure of the relevant facts to the accountants or attorneys.

9  Furthermore, as the Ninth Circuit held in *SEC v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d

10 459, 467 (9th Cir. 1985), if a company officer knows that financial statements are false or

11 misleading and yet proceeds to file them, "the willingness of an accountant to give an unqualified

12 opinion with respect to them does not negate the existence of the requisite intent" or establish

13 good faith reliance by the officer on the accountant's opinion.

14

**Defendants' Argument**

15      The Court should include Defendants' instruction regarding their right to invoke the

16 "good faith" defense under Section 20(a).  Defendants' instruction is a correct statement of the

17 law.  The two elements necessary to establish the "good faith" defense are based on the text of the

18 statute.  15 U.S.C. § 78t(a); *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th

19 Cir. 1990) ("'controlling person' can avoid liability if she acted in good faith and did not directly

20 or indirectly induce the violations").  The second and third paragraphs of the instruction are

21 supported by case law.  *See, e.g., Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 912

22 (7th Cir. 1994) (evidence that defendant "set up and enforced with reasonable diligence sufficient

23 systems of internal supervision and control" can establish good faith defense); *see also In re*

24 *Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994) (establishing good faith reliance

25 defense on opinion of accountant under different securities provision).

26      The Court should reject Plaintiffs' version of the instruction because it is an inaccurate

27 statement of the law.  Specifically, Plaintiffs state that a defendant can establish the "good faith"

28 defense "*only* by establishing that he maintained and enforced a reasonable and proper system of

1    supervision and internal control."  (Emphasis added).  This misstates the law because, although

2    providing evidence of a well-maintained system is one way of establishing the defense, it is not

3    the only way.  *See, e.g.*, *Donohoe*, 30 F.3d at 912 (indicating that "good faith" defense can be

4    established by evidence other than that defendant set up and enforced internal supervision

5    system); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1421 (affirmative defense established

6    under another securities provision by evidence of good faith reliance on opinion of accountant).

7    For this reason, the Court should accept Defendants' instruction and reject the one proffered by

8    Plaintiffs.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECTION 20A INSTRUCTIONS**

**JURY INSTRUCTION NO. 83**

**Elements Of Liability Under Section 20A [Plaintiffs' Version] (*DISPUTED*)**

I will now instruct you concerning the claim that the Individual Defendants violated Section 20A of the 1934 Act.

To establish their claim under Section 20A, the plaintiffs must prove each of the following elements by a preponderance of the evidence:

    1.    the Individual Defendant sold JDSU stock;

    2.    while in the possession of material, non-public information:

    3.    that such conduct violated Section 10(b) of the 1934 (I instruct you that a corporate insider's sale of corporate stock while in possession of material, non-public information violates Section 10(b)) and,

    4.    that some members of the Class purchased stock in JDSU contemporaneously with the sale of JDSU stock by the Individual Defendant.

GIVEN: _____

REFUSED: _____

MODIFIED: _____

WITHDRAWN: _____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 84**

2

**Elements Of Liability Under Section 20A [Defendants' Version] (*DISPUTED*)**

3      I will now instruct you concerning the claim that the individual defendants violated

4   Section 20A of the Securities Exchange Act of 1934.  This claim is not brought against JDSU.

5      Because the section number for this claim sounds the same as section 20(a), when I refer

6   to this section, I will call it "Section 20-capital-A."

7      To establish their claim under Section 20A, the plaintiffs bear the burden of proving all of

8   the following elements by a preponderance of the evidence for each defendant:

9      1.      That when the defendant sold stock in JDSU, the defendant had actual knowledge

10   of negative information that was not publicly available;

11     2.      That the non-public information was material;

12     3.      That the defendant used this material non-public information in formulating and

13   consummating a trade in JDSU stock; and

14     4.      That for each trade, the plaintiffs purchased JDSU stock on the same day that the

15   defendant allegedly used negative material non-public information in selling JDSU stock.

16

17

18   GIVEN:

19   _____

     REFUSED:

20   _____

21   MODIFIED:

22   _____

     WITHDRAWN:

23   _____

24

25   _____

     United States District Judge

26

27

28

**Plaintiffs' Argument**

The proposed instruction on the elements of the Section 20A claim is erroneous because it requires the jury to find that the defendant actually "used" the material, non-public information in formulating and consummating a trade in JDSU stock. The proper instruction should inform the jury that what is required is that the defendant traded while in possession of material, non-public information. The statute's plain language provides sufficient support for this proposition: Section 20A, as enacted at 15 U.S.C.A. Section 78t-1, provides:

> Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security **while in possession of material, nonpublic information** shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

(Emphasis supplied.)

Furthermore, the proposed instruction sets forth as an element that the plaintiffs trading take place on the same day that the defendant sold JDSU stock. The plain language of the statutes requires "contemporaneous" trading without providing a definition. The jury should be instructed that it is sufficient if the trading by a class member occurred within a few days after the defendant's sale. *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1196 (C.D. Cal. 2004), *aff'd in part*, 490 F.3d 778 (9th Cir. 2007).

**Defendants' Argument**

Defendants' instruction on the elements of liability under Section 20A should be used, and not Plaintiffs' competing instruction, because Defendants' instruction is a clear and accurate statement of the elements, while Plaintiffs' instruction is inaccurate, confusing and redundant.

Defendants' instruction is an accurate statement of the law. The first sentence accurately describes Plaintiffs' Section 20A claim. The second sentence is necessary to distinguish between instructions the jury will be given regarding Sections 20A Securities Exchange Act of 1934 and Section 20(a) of the Securities Act of 1933. (Plaintiffs' instruction omits this necessary explanation.) The third sentence is supported by the text of Sections 20A and 10(b) and the rules

1   and regulations promulgated thereunder.  15 U.S.C. §§78t-1, 78j(b) and 17 C.F.R. § 240.10b-5;

2   Ninth Circuit Model Civil Jury Instruction 18.1 (2007) (Plaintiff must prove 10(b) elements by a

3   preponderance of the evidence).

4        Element 1 of Defendants' instruction is supported by the text of Section 20A and by Ninth

5   Circuit caselaw.  15 U.S.C. §78t-1 (requiring that the information traded upon be "nonpublic");

6   *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1198-99 (C.D. Cal. 2004); *SEC v. Clark*, 699 F.Supp.

7   839, 845 (W.D.Wash. 1988) (trader must have had actual knowledge of inside information);

8   *SEC v. Pardue*, 2005 WL 736884 (E.D. Pa. April 1, 2005) ("In an insider trading case, scienter is

9   established by proof that the defendant was aware of his duty of confidentiality and had actual

10  knowledge of the material, non-public information.").

11       Elements 2 and 3 are supported by the statute and Ninth Circuit caselaw.  15 U.S.C. §78t-

12  1 (requiring that the information traded upon be "material"); *Lipton v. PathoGenesis Corp.,*

13  284 F.3d 1027, 1035 n.15 (9th Cir. 2002) (absent pleading scienter with particularity, there can be

14  no 20A liability); *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1198 (C.D. Cal. 2004) (Section 20A

15  liability requires Plaintiffs prove scienter, applying rule that "inside trader *actually used* material

16  nonpublic information in consummating his transaction") (citation and internal quotations

17  omitted), *aff'd*, 490 F.3d 778 (9th Cir. 2007); *SEC v. Truong*, 98 F. Supp. 2d 1086, 1100 (N.D.

18  Cal. 2000) (requiring that "defendant actually used the material non-public information in

19  formulating and executing a trade"); *In re Redback Networks, Inc. Sec. Litig.*, No. C03-

20  5642JF(HRL), 2006 U.S. Dist. LEXIS 47055, at *24,  (N.D. Cal. March 20, 2006) ("Even

21  assuming that Plaintiffs had alleged a viable § 10(b) claim, and met the contemporaneous

22  requirement, the Court concludes that Plaintiffs' allegations regarding the Redback Defendants'

23  use of inside information are insufficient because they are conclusory.").

24       Element 4 is supported by Ninth Circuit caselaw.  *In re Redback Networks, Inc. Sec.*

25  *Litig.*, No. C03-5642JF(HRL), 2006 U.S. Dist. LEXIS 47055 at *24 (N.D. Cal. March 20, 2007)

26  (contemporaneous requirement is not met unless the trades occurred "on the same day"); *In re*

27  *Aldus Sec. Litig.,* No. C 92-885C, 1993 U.S. Dist. LEXIS 5008, at *22-23 (W.D. Wash. Mar. 1,

28  1993) (dismissing claims when trades did not occur on same day).; *In re AST Research Sec.*

1    *Litig.,* 877 F. Supp. 231, 234 (C.D. Cal. 1995) ("The same day standard is the only reasonable

2    standard given the way the stock market functions."); *Buban v. O'Brien*, No. C 94-0331 FMS,

3    1994 U.S. Dist. LEXIS 8643, at *8-9 (N.D. Cal. June 23, 1994) (holding that trades three days

4    apart did not meet contemporaneous requirement); *Copland v. Grumet*, 88 F. Supp. 2d 326, 338

5    (D.N.J. 1999) (must be same day; rejecting trades two days apart); *Backman v. Polaroid Corp.*,

6    540 F. Supp. 667, 671 (D. Mass. 1982) (trades two days apart insufficient).

7         Plaintiffs' competing instruction is confusing, misleading, and misstates the law.  First,

8    Plaintiff's purported definition of a Section 10(b) violation in its Element 3 is confusing and

9    redundant.  The alleged 10(b) "insider trading" violation is relevant only as it relates to Plaintiffs'

10   Section 20A claim.   The parties agree that Section 20A requires a predicate violation of the

11   Exchange Act, and they agree that in this case, only a Section 10(b) insider trading violation can

12   serve as that predicate violation.

13        Second, the instruction's definition of Section 10(b) is confusing and redundant because

14   Plaintiffs attempt to separately define a Section 10(b) insider trading violation in their proposed

15   instruction "Insider Trading Under Section 10(b) and Rule 10b-5".  This adds yet another layer of

16   unnecessary confusion to Plaintiffs' instructions.  There is also no need to define the elements of

17   Section 10(b) insider trading multiple times in multiple instructions.   It is confusing and invites

18   inconsistent interpretations by the jury.

19        Plaintiffs' instruction is also misleading and misstates the law. Elements 1 and 2 of

20   Plaintiffs' instruction only requires Plaintiffs to prove that Defendants "sold JDSU stock *while in*

21   *possession*" of inside information.  But, as discussed above, Ninth Circuit caselaw requires that

22   Plaintiffs prove scienter by establishing that Defendants "*actually used* material nonpublic

23   information in consummating his transaction," not merely that Defendants traded "while in

24   possession" of the information.  *See, e.g.*, *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1035

25   n.15 (9th Cir. 2002) (absent pleading scienter with particularity, there can be no 20A liability);

26   *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1198-99 (C.D. Cal. 2004) (Section 20A liability requires

27   Plaintiffs prove scienter, applying rule that "inside trader *actually used* material nonpublic

28   information in consummating his transaction") (emphasis in original, internal quotations omitted),

1  *aff'd*, 490 F.3d 778 (9th Cir. 2007); *SEC v. Truong*, 98 F. Supp. 2d 1086, 1100 (N.D. Cal. 2000)

2  (requiring that "defendant actually used the material non-public information in formulating and

3  executing a trade"); *In re Redback Networks, Inc. Sec. Litig*, No. C03-5642JF (HRL), 2006 U.S.

4  Dist. LEXIS 47055 at *24, (N.D. Cal., Mar. 30, 2007) (Plaintiffs' allegations regarding

5  "defendants' use of inside information" held "insufficient because they are conclusory").

6       Element 2 of Plaintiffs' instruction inaccurately omits the requirement that Plaintiffs prove

7  the alleged insider had actual knowledge of the material, non-public information.  As discussed

8  above, mere possession of inside information is not enough.  *See SEC v. Clark*, 699 F. Supp. 839,

9  845 (W.D. Wash. 1988) (trader must have had actual knowledge of inside information); *SEC v.*

10  *Pardue*, No. CIV 02-8048, 2005 WL 736884 (E.D. Pa. Apr. 1, 2005) ("In an insider trading case,

11  scienter is established by proof that the defendant was aware of his duty of confidentiality and

12  had actual knowledge of the material, non-public information.").

13       For all of these reasons, Defendants' instruction should be given.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 85**

**Materiality (*DISPUTED*)**

To prove a claim under Section 20A, the plaintiffs bear the burden of proving by a preponderance of the evidence that when the defendant sold stock in JDSU, the defendant had actual knowledge of material negative information that was not publicly available. The term material as used in Section 20A has the same definition as that which I previously gave to you in connection with Section 10(b).

**[Facts and information are non-public if such facts and information are not generally known by the public but rather known only by JDSU insiders by virtue of access to such information.  Plaintiffs need not prove that such information was actually used by the insiders in deciding to sell.]**

GIVEN:            _____

REFUSED:         _____

MODIFIED:        _____

WITHDRAWN:    _____

_____
                           United States District Judge

**Plaintiffs' Argument**

*See* Plaintiffs' Argument in connection with Instruction No. 84.

**Defendants' Argument**

The Court should not include the bracketed, boldface language.  It is an inaccurate statement of law and is highly prejudicial to Defendants.  First, its implication that Defendants' mere "access" to information means that the information was "known" to Defendants is inaccurate and conflicts with the preceding paragraph.  The instruction also conflicts with Plaintiffs' instruction on the elements of 20A liability:  Elements 1 and 2 of Plaintiffs' 20A Elements instruct that Defendants must have been "in possession" of inside information when they made the trades.  Plaintiffs cite no authority in support of their "access" to information instruction.

Second, as discussed above in reference to "Section 20A of the Exchange Act – Elements," Plaintiffs must prove that the material, nonpublic information was actually used by Defendants in formulating or consummating their trades.  Ninth Circuit caselaw requires that Plaintiffs prove scienter by establishing that Defendants "*actually used* material nonpublic information in consummating [their] transaction," not merely that Defendants traded "while in possession" of the information.  *See, e.g., Lipton v. PathoGenesis Corp.,* 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) (absent pleading scienter with particularity, there can be no 20A liability); *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1198-99 (C.D. Cal. 2004) (Section 20A liability requires Plaintiffs prove scienter, applying rule that "inside trader *actually used* material nonpublic information in consummating his transaction") (emphasis in original, internal quotations omitted), *aff'd*, 490 F.3d 778 (9th Cir. 2007); *SEC v. Truong*, 98 F. Supp. 2d 1086, 1100 (N.D. Cal. 2000) (requiring that "defendant actually used the material non-public information in formulating and executing a trade"); *In re Redback Networks, Inc. Sec. Litig.*, No. C03-5642JF (HRL), 2006 U.S. Dist. LEXIS 47055 at *24, (N.D. Cal. Mar. 20, 2007) (claims regarding "defendants' use of inside information" held insufficient).

**JURY INSTRUCTION NO. 86**

**Contemporaneous Trading (*DISPUTED*)**

If you find that class members purchased JDSU securities contemporaneously with the defendants' sales of JDSU's securities, then this element is met.  Contemporaneous means happening or existing at the same period of time as something else.  For purposes of Section 20A, "contemporaneous" does not mean simultaneous and cannot be measured without absolute precision.


GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1    **Plaintiffs' Argument For Instruction No. 86**

2    *See* Plaintiffs' Argument in connection with Instruction no. 84.

3    **Defendants' Argument Against Instruction No. 86**

4    Defendants' instruction on "contemporaneous" trades, included in Defendants' instruction

5    "Elements of Liability Under Section 20A," is an accurate statement of the law.  Section 20A of

6    the Exchange Act allows Plaintiffs to recover losses they incurred by trading

7    "contemporaneously" with a Defendant who traded on the basis of material, nonpublic

8    information.  15 U.S.C. §78t-1.  While the statute does not define "contemporaneous," courts in

9    the Ninth Circuit have held that for a trade to be considered contemporaneous, Plaintiffs must

10   have purchased the stock at issue on the same day that Defendants used negative, material non-

11   public information in selling their stock.  *In re Redback Networks, Inc. Sec. Litig*, No. C03-

12   5642JF(HRL), 2006 U.S. Dist. LEXIS 47055 at *24 (N.D. Cal. Mar. 20, 2007) (contemporaneous

13   requirement is not met unless the trades occurred "on the same day"); *In re Aldus Sec. Litig.,* No.

14   C 92-885C, 1993 U.S. Dist. LEXIS 5008, at *22-23 (W.D. Wash. Mar. 1, 1993) (dismissing

15   claims when trades did not occur on same day); *In re AST Research Sec. Litig.,* 887 F. Supp. 231,

16   234 (C.D. Cal. 1995) ("The same day standard is the only reasonable standard given the way the

17   stock market functions."); *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 U.S. Dist. LEXIS 8643,

18   at *8-9 (N.D. Cal. June 23, 1994) (holding that trades three days apart did not meet

19   contemporaneous requirement); *Copland v. Grumet*, 88 F. Supp. 2d 326, 338 (D.N.J. 1999) (must

20   be same day; rejecting trades two days apart); *In re Stratus Computer Litig.*, No. CIV A89-2075-

21   7, 1992 WL 73555 (D. Mass. 1993) (only same day trades contemporaneous) (cited with approval

22   by *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995); *Backman v. Polaroid

23   Corp.*, 540 F. Supp. 667, 671 (D. Mass. 1982) (trades two and seven days apart not

24   contemporaneous) (cited with approval by *In re AST Research Sec. Litig.*, 887 F. Supp. at 234).

25   Plaintiffs, on the other hand, provide no support for their specific definition of

26   "contemporaneous" as "happening or existing at the same period of time."  Nor is Plaintiffs'

27   reliance on Section 20A's legislative history supported by the caselaw.  *See In re AST Research

28   Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (courts not "restrained by the cases initially

cited to by Congress" in defining "contemporaneous").  As the court in *In re AST Research*

explained,

> Congress in adopting 20A cited with approval three cases which
> discussed the "contemporaneous trading" requirement.
> ….
> However … *the growing trend among district courts in a number of
> circuits, including the Ninth Circuit, is to adopt a restrictive
> reading of the term "contemporaneous"* at least with respect to
> shares heavily traded on a national exchange.

*Id.* (citing H.R. Rep. No. 910, 100th Cong., 2d Sess. 27 (1988); *O'Connor & Assoc. v. Dean

Witter Reynolds, Inc.*, 559 F. Supp. 800 (S.D.N.Y. 1983); *Shapiro v. Merrill Lynch Pierce Fenner

& Smith, Inc.*, 495 F.2d 228 (2d Cir. 1981); *Wilson v. Comtech Telecommc'ns Corp.*, 648 F.2d 88

(2d Cir. 1981)) (emphasis added).

    The *Aldus* court explained that the time window for "contemporaneous" trades has shrunk

since Congress enacted Section 20A because the purpose of the rule "is to protect only those who

*might actually have traded* with insiders," and the "contemporaneous trade requirement functions

as a substitute for [contractual] privity" between buyer and seller."  *In re AST Research Sec.

Litig.*, 887 F. Supp. at 234 (emphasis added).  The ever-increasing volume of stock trades on the

national markets means that the shares Defendant sold on Day 1 were without a doubt purchased

on that day, not on Day 2, 3, or 4.  *See id.*  A trading window of greater than a day simply no

longer makes sense because there is no possibility of the privity Section 20A is intended to

require.  *Id.* ("The  same day standard is the only reasonable standard given the way the stock

market functions.").

    Plaintiffs' instruction is also vague and confusing.  It provides no guidance as to the

meaning of "contemporaneous."  It suggests only the circular definition of "happening or existing

at the same period of time."  The jury should not be left to wonder how many days between trades

constitutes that unknown "period of time."  In contrast, Defendants' instruction, in addition to

being supported by the caselaw, is clear and easy to understand.

    For all of these reasons, Plaintiffs' instruction should not be given.

**JURY INSTRUCTION NO. 87**

**Damages**

If you find that the plaintiffs have proven all of the elements of their Section 20A claim, then you must determine whether the plaintiffs have proven by a preponderance of the evidence that they have suffered damages as a result of the alleged violation of Section 20A.

The measure of damages under Section 20A is the same as the measure of damages under Section 10(b), which I previously described.  Although the measure is the same, the damages calculated for the violation of Section 20A are limited to the damages that were caused by the violation of Section 20A.

In addition, the damages under Section 20A cannot exceed the profit gained or "loss avoided" in the transaction(s) that are the subject of the violation.  "Loss avoided" means the difference between the price at which the defendant sold the stock and what the price would have been if the material non-public information had been disclosed on that date.


Authority:      15 U.S.C. §§ 78t-1(b)(1), 78bb(a).


GIVEN:

REFUSED:        _____

MODIFIED:       _____

WITHDRAWN:      _____
                _____

_____
                        United States District Judge

**SECTION 11 INSTRUCTIONS**

**JURY INSTRUCTION NO. 88**

**Elements Of Liability Under Section 11**

I will now instruct you concerning the next claim — that defendants JDSU, Jozef Straus and Anthony Muller violated Section 11 of the 1933 Securities Act. This claim is not brought against Jay Abbe or Kevin Kalkhoven.

This claim relates to the November 17, 2000 SDL Amended Registration Statement and Amended Proxy-Prospectus [**and the Registration Statement dated February 12, 2001**].[5]

To establish a claim under Section 11, the plaintiffs bear the burden of proving all of the following elements by a preponderance of the evidence:

1.     That on the date that the registration statement became effective, the registration statement contained a misstatement or omitted information necessary to prevent the statement made from being misleading;

2.     That the misstatement or omitted information was material; and

3.     That the plaintiffs suffered damages.

Authority:      15 U.S.C. § 77k; SAC ¶¶ 314-60; ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 2.03 (1996) (modified); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.20 (5th ed. 2007) (modified); *see also* Ninth Circuit Model Instruction 21.10, *Ninth Circuit Manual of Model Jury Instructions — Civil* (West Group 2001 ed.) (modified).

---

[5] Plaintiffs believe that defendants issued shares pursuant to the registration statement dated February 12, 2001 which repeated misrepresentations contained in the November 17, 2000 registration statement. Accordingly, both dates should be included in the instruction. Defendants do not agree that shares were issued pursuant to the February 12, 2001 statement.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 89**

2

**Element 1 Of Section 11 — Misstatements Or Omissions**

3        To satisfy the first element of their Section 11 claim, plaintiffs bear the burden of proving

4    by a preponderance of the evidence that the registration statement at issue contained a

5    misstatement or omitted information necessary to prevent the statement made from being

6    misleading.

7        The instruction regarding what constitutes a misstatement or omission is the same as the

8    instruction I provided with respect to Section 10(b).

9

10   Authority:        15 U.S.C. § 77k(a); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929-30 (9th Cir.
                       1996); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (en
11                     banc); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *Heliotrope
                       Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999) (affirming summary
12                     judgment where analyst reports and news articles showed that the market was
                       aware of allegedly undisclosed information); *Siegel v. Lyons*, No. C-95-3588 DLJ,
13                     1996 U.S. Dist. LEXIS 22382, at *12 (N.D. Cal. Apr. 26, 1996) ("Where SEC
                       filings actually disclose allegedly omitted information, dismissal of a claim
14                     premised upon nondisclosure is proper."); *Ash v. LFE Corp.*, 525 F.2d 215, 218-19
                       (3d Cir. 1975) (holding that proxy was not misleading where it disclosed
15                     information in note to table); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d
                       472, 491 (S.D.N.Y. 2005); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656
16                     (4th Cir. 2004) (describing "reasonable investor"); *Black's Law Dictionary* (8th
                       ed. 2004) (defining "reasonable person"); ABA, Section of Litig., *Model Jury
17                     Instructions: Securities Litigation*, Instructions 2.03[1], [1][a], [1][c], [1][d] (1996)
                       (modified); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.22 (5th ed.
18                     2007) (modified).

19

20   GIVEN:

21                     _____

     REFUSED:
22
                       _____

23   MODIFIED:

24                     _____

25   WITHDRAWN:

                       _____
26

27                     _____

                                            United States District Judge
28

**JURY INSTRUCTION NO. 90**

**Materiality — Voting Decision**

Under Section 11, when information appears in a registration statement seeking

shareholder approval for a merger, the information can be deemed material only if you find that

there is a substantial likelihood that a reasonable shareholder would have considered it important

in deciding how to vote on the merger.

Authority:     *In re McKesson HBOC, Inc., Sec. Litig.*, 126 F. Supp. 2d 1248, 1260-61 (N.D. Cal.
2000) (holding that the failure to disclose information that would have been
positive to the voters of the proposed merger, although "important" to the
investors, was not material under Section 11 because the true facts "would not
have made a reasonable HBOC shareholder less likely to approve the merger").

GIVEN:        _____

REFUSED:      _____

MODIFIED:     _____

WITHDRAWN:    _____

_____
                         United States District Judge

**JURY INSTRUCTION NO. 91**

**Section 11 — Damages**

The measure of damages under Section 11 depends on whether the plaintiffs have sold the securities.  There are three separate ways of calculating damages based on the time when the stock was sold:

1.     When the plaintiffs have not sold the securities, the measure of damages is the difference between the price paid for the securities and the value of the securities at the date suit was filed;

2.     When the plaintiffs have sold the securities before the lawsuit was filed, the measure of damages is the difference between the price paid and the price at which the securities were sold before the lawsuit was filed; and

3.     When the plaintiffs sold the securities after the lawsuit began, the measure of damages is the difference between the price paid and the price at which the securities were sold after the lawsuit was filed but before judgment, if such damages are less than the difference between the amount paid for the security and the value when the suit was filed.

In no event may the amount of loss per share recoverable by the plaintiffs exceed the price per share at which the security was offered to the public.

Authority:     15 U.S.C. § 77k(e); ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 2.06 (1996) (modified); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.91 (5th ed. 2007) (modified).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

**JURY INSTRUCTION NO. 92**

**Defense To Section 11 Liability — Negative Causation**

The negative causation defense to Section 11 liability is available to all of the defendants.

Under Section 11, if the defendants prove by a preponderance of the evidence that some portion of the decline in value of the JDSU stock that the plaintiffs purchased resulted from factors other than the alleged violation of Section 11, then such portion of the decline in value is not recoverable by the plaintiffs as damages.

Authority:    15 U.S.C. § 77k(e); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-46 (2005); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.Supp. 2d 579, 588-91 (S.D.N.Y. 2006); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 658-59 (S.D.N.Y. 2004); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.74 (5th ed. 2007) (modified).

GIVEN:         _____

REFUSED:       _____

MODIFIED:      _____

WITHDRAWN:     _____

                                    _____
                                    United States District Judge

1

**JURY INSTRUCTION NO. 93**

2

**Defense To Section 11 Liability — Reasonable Reliance**

3        The next defense to the plaintiffs' Section 11 claim is that the individual defendants

4  reasonably relied on the audit of JDSU's financial statements for the fiscal year ended June 30,

5  2000 by JDSU's independent auditor Ernst & Young.  This defense is not available to JDSU.

6        In order to establish reasonable reliance, the individual defendants must prove by a

7  preponderance of the evidence that, for the audited financial statement for the fiscal year ended

8  June 30, 2000, the defendants had no reasonable ground to believe, and did not believe, that the

9  financial statement was untrue or that there was an omission to state a material fact required to be

10 stated therein or necessary to make the statements therein not misleading.

11

12 Authority:        15 U.S.C. § 77k(b)(3)(C); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421
                     (9th Cir. 1994); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 663
13                   (S.D.N.Y. 2004).

14

15 GIVEN:

16                  _____

    REFUSED:

17                  _____

18 MODIFIED:

19                  _____

    WITHDRAWN:

20                  _____

21

22                                              _____
                                                United States District Judge

23

24

25

26

27

28

**JURY INSTRUCTION NO. 94**

**Defense To Section 11 Liability — Due Diligence**

The Section 11 defense of due diligence is available to the individual defendants. The defense is not available to JDSU.

In order to establish due diligence, the individual defendants must prove by a preponderance of the evidence:

1.     That they acted with reasonable diligence, and

2.     That they had reasonable ground to believe, and did believe, that the statements were true and that there was no omission making them materially misleading.

Authority:       15 U.S.C. § 77k(b)(3)(A); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994); *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 621 (9th Cir. 1994); *In re Int'l Rectifier Sec. Litig.*, No. CV 91-3357-RMT (BQRx), 1997 U.S. Dist. LEXIS 23966, at *16 (C.D. Cal. Apr. 2, 1997); *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.71 (5th ed. 2007) (modified).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
                                United States District Judge

1

**SECTION 12(a) INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 95**

**Elements Of Liability Under Section 12(a)**

I will now instruct you concerning the next claim — that defendant JDSU violated Section 12(a) of the 1933 Securities Act.  This claim is made against JDSU only, and does not apply to any of the individual defendants.

This claim relates to the November 17, 2000 SDL Amended Registration Statement and Amended Proxy-Prospectus.

To establish their claim under Section 12(a), the plaintiffs bear the burden of proving all of the following elements by a preponderance of the evidence:

    1.    That JDSU sold, offered to sell, or solicited the sale of the security to the plaintiffs by means of a prospectus that contained a misstatement or omitted information necessary to prevent the statement made from being misleading;

    2.    That the misstatement or omission in the prospectus was material; and

    3.    That the plaintiffs suffered damages.

Authority:    15 U.S.C. § 77l(a)(2); SAC ¶¶ 361-81; ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 3.02 (1996) (modified); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.130 (5th ed. 2007) (modified); *In re Itel Sec. Litig.*, 89 F.R.D. 104, 115 (N.D. Cal. 1981); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 306 (N.D. Cal. 1978).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

1

**JURY INSTRUCTION NO. 96**

2

**Element 1 Of Section 12(a) — Misstatements Or Omissions**

3      To satisfy the first element of their Section 12(a) claim, plaintiffs bear the burden of

4   proving by a preponderance of the evidence that the prospectus contained a misstatement or

5   omission of fact.

6      The instruction regarding what constitutes a misstatement or omission is the same as the

7   instruction I provided with respect to Section 10(b).

8

9

10   Authority:   *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929-30 (9th Cir. 1996); *In re GlenFed,*
              *Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (en banc); *In re Stac Elecs.*
11              *Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *Heliotrope Gen., Inc. v. Ford*
              *Motor Co.*, 189 F.3d 971 (9th Cir. 1999) (affirming summary judgment where
12              analyst reports and news articles showed that the market was aware of allegedly
              undisclosed information); *Siegel v. Lyons*, No. C-95-3588 DLJ, 1996 U.S. Dist.
13              LEXIS 22382, at *12 (N.D. Cal. Apr. 26, 1996) ("Where SEC filings actually
              disclose allegedly omitted information, dismissal of a claim premised upon
14              nondisclosure is proper."); *Ash v. LFE Corp.*, 525 F.2d 215, 218-19 (3d Cir. 1975)
              (holding that proxy was not misleading where it disclosed information in note to
15              table); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 491 (S.D.N.Y.
              2005); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004)
16              (describing "reasonable investor"); *Black's Law Dictionary* (8th ed. 2004)
              (defining "reasonable person"); ABA, Section of Litig., *Model Jury Instructions:*
17              *Securities Litigation*, Instruction 2.03[1] (1996) (modified); Kevin F. O'Malley et
              al., 3B *Fed. Jury Prac. & Instr.* § 162.22 (5th ed. 2007) (modified).

18

19

20   GIVEN:

21                _____
     REFUSED:
22                _____

23   MODIFIED:

24                _____
     WITHDRAWN:
25                _____

26

27                _____
                             United States District Judge

28

**JURY INSTRUCTION NO. 97**

**Element 2 Of Section 12(a) — Materiality — Voting Decision**

Under Section 12(a), when information appears in a registration statement seeking

shareholder approval for a merger, the information can be deemed material only if you find that

there is a substantial likelihood that a reasonable shareholder would have considered it important

in deciding how to vote on the merger.

Authority:      *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1260-61 (N.D. Cal.
2000) (holding that the failure to disclose information that would have been
positive to the voters of the proposed merger, although "important" to the
investors, was not material because the true facts "would not have made a
reasonable HBOC shareholder less likely to approve the merger").

GIVEN:            _____

REFUSED:          _____

MODIFIED:         _____

WITHDRAWN:        _____

_____
United States District Judge

**JURY INSTRUCTION NO. 98**

**Element 3 Of Section 12(a) — Damages**

To satisfy the last element of their Section 12(a) claim, plaintiffs bear the burden of proving by a preponderance of the evidence that they have suffered damages.

The measure of damages under Section 12(a) depends on whether the plaintiffs still own the security.  If the plaintiffs still own the security, then the plaintiffs are entitled to rescind the purchase and recover the consideration paid for the security, less any income received on the security.  If the plaintiffs no longer own the security, then they are entitled to recover the difference between the price paid for the security and the value received when the security was sold.

Authority:        15 U.S.C. § 77l(a); ABA, Section of Litig., *Model Jury Instructions: Securities Litigation*, Instruction 3.06 (1996) (modified); *Randall v. Loftsgaarden*, 478 U.S. 647, 655-56 (1986).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

_____
United States District Judge

**JURY INSTRUCTION NO. 99**

**Defense To Section 12(a) Liability — Negative Causation**

JDSU asserts a negative causation defense to liability under Section 12(a).

Under Section 12(a), if JDSU proves by a preponderance of the evidence that some portion of the decline in value of the JDSU stock that the plaintiffs purchased resulted from factors other than the alleged violation of Section 12(a), then such portion of the decline in value is not recoverable by the plaintiffs as damages.

Authority:     15 U.S.C. § 77l(b); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-46 (2005); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.Supp. 2d 579, 588-91 (S.D.N.Y. 2006); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 658-60 (S.D.N.Y. 2004); Kevin F. O'Malley et al., 3B *Fed. Jury Prac. & Instr.* § 162.173 (5th ed. 2007) (modified).

GIVEN:

REFUSED:     _____

MODIFIED:     _____

WITHDRAWN:     _____

_____

_____
United States District Judge

**JURY INSTRUCTION NO. 100**

**Defense To Section 12(a) Liability — Reasonable Care**

JDSU asserts a reasonable care defense to liability under Section 12(a).  To establish this defense, JDSU must prove by a preponderance of the evidence that it did not know, and in the exercise of reasonable care, could not have known, of the alleged material misstatement or omission that violated Section 12(a).  JDSU can satisfy this defense by demonstrating the reasonable care of the employee or employees involved in making the statement at issue.

Authority:      15 U.S.C. § 77l(a)(2); *In re Itel Sec. Litig.*, 89 F.R.D. 104, 115 (N.D. Cal. 1981); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 205 (E.D.N.Y. 2000); A. Jacobs, 5 *Disclosure and Remedies Under the Securities Laws*, § 3:161 (West 2007); *DeMarco v. Edens*, 390 F.2d 836, 841-43 (2d Cir. 1968); *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1019 (2d Cir. 1989).

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____

United States District Judge

1

**SECTION 15 INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY INSTRUCTION NO. 101

2

### Elements Of Liability Under Section 15

3        I will now instruct you concerning the next claim — that defendants Jozef Straus and

4    Anthony Muller violated Section 15 of the 1933 Securities Act.  This claim is not brought against

5    JDSU, Jay Abbe, or Kevin Kalkhoven.

6        To prevail on this claim, the plaintiffs bear the burden of proving by a preponderance of

7    the evidence two elements:

8        1.      That a defendant violated Section 11 or 12(a), as previously defined; and

9        2.      That an individual defendant was a controlling person (a term I will define shortly)

10    of the person who committed the violation.

11

12

13   Authority:      15 U.S.C. § 77o; SAC ¶¶ 382-93; *In re Exodus Commc'ns, Inc. Sec. Litig.*,
                     No. C 01-2661 MMC, 2005 U.S. Dist. LEXIS 20222, at *138 (N.D. Cal. Aug. 5,
14                   2005); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y.
15                   2003).

16

17   GIVEN:

18                    _____

19   REFUSED:

                      _____

20   MODIFIED:

21                    _____

22   WITHDRAWN:

                      _____

23

24                                      _____

25                                            United States District Judge

26

27

28

**JURY INSTRUCTION NO. 102**

**Definition Of Controlling Person (*DISPUTED*)**

To prevail on their Section 15 claim, the plaintiffs must establish that a defendant was a controlling persons of the person who committed the violation of Section 11 or 12(a).  To do so, the plaintiffs bear the burden of proving the following two elements by a preponderance of the evidence:

1.     That the defendant exerted **[actual] [direct or indirect]** power or influence over the person who committed the violation at the time of the violation, if any; and

2.     That the defendant was a culpable participant in the activity that is alleged to have been unlawful.

Having power or influence over the general corporate affairs of JDSU is insufficient to establish that the defendant was a controlling persons.

GIVEN:

_____

REFUSED:

_____

MODIFIED:

_____

WITHDRAWN:

_____

_____
United States District Judge

**Plaintiffs' Argument**

*See* Plaintiffs' Argument in connection with Instruction No. 79.

**Defendants' Argument**

Defendants disagree with Plaintiffs on the proper language of Subsection (1) of the second paragraph.  Defendants have proposed to insert the word "actual" so that the subsection reads: "That the defendant exerted *actual* power or influence over the person who committed the violation at the time of the violation."  (Emphasis added).  This language is supported by case law.  *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d 754, 765 (D. Ariz. 2006) (Section 15 require that the controlling person "exerted actual power or influence" over the controlled person) (internal citation and quotation marks omitted).  Therefore, Defendants' proposed language is appropriate.

1

**ACCOUNTING-RELATED INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY INSTRUCTION NO. 103**

2

**Generally Accepted Accounting Principles (*DISPUTED*)**

3      Generally Accepted Accounting Principles, or GAAP, are the principles and guidelines a

4    company follows to prepare financial statements that fairly present its operating results, cash

5    flows, and financial position.  The measurement and presentation of financial information,

6    including financial statements, involves matters of professional judgment and reasonable people

7    may disagree.  The fact that different accountants or finance personnel may have made a different

8    judgment than the accountants or finance personnel in this case does not mean that the

9    accountants or finance personnel here did not comply with GAAP.

10

11

12

13    GIVEN:

14                      _____

REFUSED:

15                      _____

16    MODIFIED:

17                      _____

WITHDRAWN:

18                      _____

19

20                                                _____

                                                       United States District Judge

21

22

23

24

25

26

27

28

1

**Defendants' Argument For Instruction No. 103**

2      This case involves claims relating to JDSU's accounting for goodwill, inventory, and

3  equity-level investments.  These claims are the subject of expert testimony and raise complex

4  questions of the interpretation and application of GAAP.  An introduction to the concept of

5  GAAP is thus necessary to aid the jury's understanding and resolution of these issues.

6      Furthermore, this instruction is an accurate statement of the law.  The first sentence

7  closely tracks the ABA's model jury instructions on securities litigation.  ABA, Section of Litig.,

8  *Model Jury Instructions: Securities Litigation, Instruction* 5.04[2] (1996).  The second and third

9  sentences are supported by the accounting literature and Ninth Circuit case law.  Accounting

10  Principles Board Opinion No. 22 ("Applying generally accepted accounting principles requires

11  that judgment be exercised as to the relative appropriateness of acceptable alternative principles

12  and methods of application in specific circumstances of diverse and complex economic

13  activities."); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (noting that

14  "reasonable accountants could reach different conclusions" when issues involve "complex issues

15  of accounting"); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1457 (N.D. Cal. 1996)

16  ("GAAP is not a set of rules ensuring identical treatment of identical transactions; rather, it

17  tolerates a range of reasonable treatments, leaving the choice among alternatives to

18  management.").  Nothing in this instruction indicates that a violation of GAAP is required to

19  prove a violation of the securities laws, so Plaintiffs' straw man argument is unavailing.

20      Therefore, this instruction should be given to the jury.

21

**Plaintiffs' Argument Against Instruction No. 103**

22      The proposed charge is unnecessary and confusing.  The proper instruction defining

23  scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is

24  no authority supporting the notion that a jury, properly instructed as to scienter, is also to be

25  instructed separately on every piece of evidence the jury may consider on the issue of scienter.

26  An instruction focused on the significance of a GAAP violation may well mislead the jury into

27  believing that unless they also find a GAAP violation they may not find there was an accounting

28  fraud or a false representation in a financial statement.  What is required is intentionally or

1    recklessly false entries in financial statements that are material.  Plaintiffs are not also required to

2    prevail on a battle of experts over whether or not there was a GAAP violation.  *See United States*

3    *v. Ebbers*, 458 F.3d 110, 126 (2d Cir. 2006).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY INSTRUCTION NO. 104**

2

**Unqualified Audit Opinion (*DISPUTED*)**

3       An unqualified audit opinion is a conclusion by a company's auditors that they have

4   conducted an audit that conforms with the professional standards governing the performance of

5   an audit, and that, in the auditors' opinion, the company's financial statements contain no material

6   misstatement and that they fairly present, in all material respects, the financial position, operating

7   results, and cash flows of the company in conformity with GAAP.

8

9

10

11   GIVEN:

12                    _____

13   REFUSED:

                     _____

14   MODIFIED:

15                    _____

16   WITHDRAWN:

                     _____

17

18                                  _____

                                     United States District Judge

19

20

21

22

23

24

25

26

27

28

1

**Defendants' Argument For Instruction No. 104**

2        This instruction is necessary to assist the jury and to avoid confusion.  An "unqualified

3   audit opinion" is a term of art that has a specific meaning in the accounting field.  The jury will

4   hear testimony that JDSU's independent auditors conducted annual audits of the company's

5   financial statements and issued unqualified audit opinions at all relevant times.  This instruction

6   will aid the jury's understanding of this testimony and its resolution of the accounting claims.

7        This instruction is an accurate statement of the law.  It closely tracks the ABA's model

8   jury instructions on securities litigation.  ABA, Section of Litig., *Model Jury Instructions:*

9   *Securities Litigation*, Instruction 5.04[9] (1996).  It is also supported by the relevant accounting

10   literature.  Codification of Accounting Standards and Procedures, Reports on Audited Financial

11   Statements, AU 508.8, 508.10 (Am. Inst. of Certified Pub. Accountants 2006).  Nothing in this

12   instruction indicates that fraud on the part of JDSU's auditors is necessary to find liability under

13   the securities laws.

14        Therefore, this instruction should be given to the jury.

15

**Plaintiffs' Argument Against Instruction No. 104**

16        The proposed charge is unnecessary and confusing.  The proper instruction defining

17   scienter to include actual knowledge of falsity or recklessness encompasses the concept.  There is

18   no authority supporting the notion that a jury, properly instructed as to scienter, is also to be

19   instructed separately on every piece of evidence the jury may consider on the issue of scienter.

20   An instruction focused on the significance of an audit opinion may well mislead the jury into

21   believing that unless they also find a the auditors committed fraud they may not find there was an

22   accounting fraud or a false representation in a financial statement.  What is required is

23   intentionally or recklessly false entries in financial statements that are material.  Plaintiffs are not

24   also required to prevail on a battle of experts over whether or not JDSU's auditors properly

25   conducted an audit of JDSU's financial statements.  *See United States v. Ebbers*, 458 F.3d 110,

26   126 (2d Cir. 2006).

27

28

1     Dated:  September 24, 2007          Barbara J. Hart
                                          Jonathan M. Plasse
2                                         Mark S. Arisohn
                                          Anthony J. Harwood
3                                         Michael Stocker (179083)
                                          Stefanie J. Sundel
4                                         LABATON SUCHAROW LLP
                                          140 Broadway
5                                         New York, New York 10005
                                          Telephone:  (212) 907-0700
6                                         Facsimile:  (212) 818-0477

7                                             - and -

8

9                                         Joseph J. Tabacco, Jr.
                                          Christopher T. Heffelfinger
10                                        BERMAN DeVALERIO PEASE
                                              TABACCO BURT & PUCILLO
11                                        425 California Street, Suite 2025
                                          San Francisco, CA 94104-2205
12                                        Telephone: (415) 433-3200
                                          Facsimile: (415) 433-6382
13

14                                        By: _____/s/  Mark S. Arisohn_____
                                                    Mark S. Arisohn
15

16                                        Attorneys for Lead Plaintiff
                                          Connecticut Retirement Plans and Trust
17                                        Fund

18
      Dated: September 24, 2007           James P. Bennett
19                                        Jordan Eth
                                          Terri Garland
20                                        Philip T. Besirof
                                          MORRISON & FOERSTER LLP
21                                        425 Market Street
                                          San Francisco, California  94105
22                                        Telephone: (415) 268-7000
                                          Facsimile: (415) 268-7522
23                                        pbesirof@mofo.com

24
                                          By: _____/s/  Jordan Eth_____
25                                                   Jordan Eth

26                                        Attorneys for the JDSU Defendants

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                        214
C-02-1486 CW (EDL)
sf-2384909

Dated: September 24, 2007

Michael J. Shepard
Howard S. Caro
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94104
hcaro@hellerehrman.com

Michael L. Charlson
J. Christopher Mitchell
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California  94025

By:   /s/   Howard S. Caro
_____
        Howard S. Caro

Attorneys for Defendant
Kevin Kalkhoven

1

<u>GENERAL ORDER 45 ATTESTATION</u>

2

3        I, Jordan Eth, am the ECF User whose ID and password are being used to file these Joint

4    Proposed Jury Instructions.  In compliance with General Order 45, X.B., I hereby attest that Mark

5    S. Arisohn, attorney for CRPTF, and Howard S. Caro, attorney for Defendant Kevin Kalkhoven,

6    have concurred in this filing.

7    Dated:   September 24, 2007                MORRISON & FOERSTER LLP

8                                               By:  /s/ Jordan Eth
                                                      Jordan Eth
9
                                               Attorneys for the JDSU Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28