JAMES P. BENNETT (BAR NO. 65179)
JORDAN ETH (BAR NO. 121617)
TERRI GARLAND (BAR NO. 169563)
PHILIP T. BESIROF (BAR NO. 185053)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: pbesirof@mofo.com

Attorneys for Defendants JDS Uniphase Corporation,
Jozef Straus, Anthony Muller, and Charles Abbe

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re JDS UNIPHASE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:  All Actions | Master File No. C–02–1486 CW (EDL)<br><br>**JDSU DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:     TBD<br>Time:    TBD<br>Ctrm:    2, 4th Floor<br>Before:  Hon. Claudia Wilken<br><br>Trial Date: October 22, 2007 |

**INTRODUCTION**

After Defendants spent nearly six years and tens of millions of dollars defending themselves, a jury confirmed that Lead Plaintiff's entire case lacked merit. Defense counsel does not seek sanctions lightly, however, and has rarely requested them in any case. At the same time, certain violations of Rule 11 were so egregious here that they must be raised. Therefore, while the JDSU Defendants do not seek anything approaching full compensation for the expense of litigating this case, they request an order finding that Lead Plaintiff and its counsel violated Rule 11 by making certain allegations and an award of comparatively modest monetary sanctions. As explained below, the JDSU Defendants seek relief for the following violations of Rule 11: (1) the overly broad class period alleged in the First Amended Complaint ("FAC"); (2) certain allegations in the Second Amended Complaint ("SAC"); and (3) Plaintiffs' motion to deem those allegations admitted by moving to strike portions of the JDSU Defendants' answer.

First, any reasonable investigation would have shown that no evidentiary support existed for alleging that Defendants foresaw declining demand as early as *July 1999*, as asserted in the FAC. As shown in publicly available information, demand in the telecommunications industry was undisputedly strong in 1999 and beyond. In addition, as Lead Plaintiff itself admitted, JDSU achieved record revenues throughout calendar 2000. Second, certain allegations in the SAC could not have been the product of any reasonable investigation. Those allegations were based on information purportedly supplied by "confidential witnesses." Yet one witness *admitted receiving payment from Lead Counsel*, a fact that by itself raises serious concerns about the reliability of the investigation. Another witness testified that he contacted investigators to disabuse Lead Counsel of their claims. In sum, over three dozen "confidential witnesses" provided sworn testimony contradicting the allegations attributed to them by Lead Plaintiff. Third, any reasonable investigation would have shown that Lead Plaintiff's motion to strike Defendants' answer also lacked the required basis, as it had neither legal nor factual support.

As explained further below, the Court should find that Lead Plaintiff and its counsel violated Rule 11 in these three ways and should enter the requested order.

JDSU DEFS.' MOT. RE SANCTIONS PURSUANT TO RULE 11  
Master File No. C–02–1486 CW (EDL)  
sf-2432336

1

**ARGUMENT**

The Private Securities Litigation Reform Act ("Reform Act") requires the Court to make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. §§ 77z-1(c)(1), 78u-4(c)(1). Sanctions are mandatory where "a party or attorney violated any requirement of Rule 11(b)." 15 U.S.C. §§ 77z-1(c)(2), 78u-4(c)(2). Rule 11(b)(3) requires that allegations and other "factual contentions have evidentiary support." *See* Fed. R. Civ. P. 11(b)(3). Sanctions are warranted where allegations are baseless and made without a reasonable and competent investigation. *See, e.g.*, *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). The fact that a complaint contains some allegations that survive motion practice does not insulate a plaintiff from Rule 11 sanctions. *See, e.g.*, *id.* at 677 ("mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions") (citation and quotations omitted).

## I.   FIRST AMENDED COMPLAINT

The FAC included claims dating back to *July 1999*, even though it did not allege that demand declined until Spring or Summer of 2000. (FAC ¶¶ 33, 35-44, 47-51, 70(a)-(b), 103, 125, 130, 141.) The FAC acknowledged that JDSU "did experience impressive growth through strong demand for its products," yet contended that Defendants were aware of "red flags signaling that danger lay ahead as early as July 1999." (*Id.* ¶ 98.) The alleged "red flags" were (1) orders that "were not indicative of true demand" because customers were purportedly over-ordering (*id.* ¶¶ 99-102) and (2) orders made during the early part of the Class Period (starting July 1999) that JDSU supposedly deferred to show stronger demand later in the Class Period (*id.* ¶¶ 103-06). The FAC violated Rule 11(b)(3) because the "red flag" allegations lacked evidentiary support and could not have been the product of a reasonable investigation.

In moving to dismiss, JDSU argued that Lead Plaintiff "back-dated" the class period so that it could "sweep in" additional stock sales, a tactic expressly disapproved by the Ninth Circuit. (JDSU Defs.' Mot. to Dismiss [Docket No. 142] at 2 (citing *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002).) In granting that motion, the Court found that the FAC's

demand allegations were "simply illogical" given the strong demand the Company experienced in 1999 and 2000. (Nov. 3, 2003 Order at 10.) The Court dismissed these claims on the ground that Lead Plaintiff failed to "provide a reasonable explanation" for its allegations. (*Id.* at 11.)

Any reasonable investigation would have shown that it was baseless to allege declining demand for JDSU's products as far back as July 1999. The record in this case is rife with evidence showing the strength of the telecommunications industry throughout calendar 2000, and most of that information was publicly available before this action was even filed. Lead Plaintiff needed no discovery of internal documents and no expert analysis to determine that demand for JDSU's products was undisputedly strong in 1999 and beyond.[1]

For these reasons, the FAC's allegations about events before March 2000 violated Rule 11(b)(3). *See Holgate*, 425 F.3d at 676 .

## II. SECOND AMENDED COMPLAINT

The SAC alleged that in "March 2000, demand for JDS's products began to dramatically decline" (SAC ¶ 12), causing higher inventory levels and forcing management to begin restructuring of the Company, including "major" layoffs and facilities closings. (SAC ¶¶ 80-90, 96-105, 112-40 (alleging declining demand prior to August 2000, inventory build up and company restructuring).) These allegations violated Rule 11(b)(3) because they lacked evidentiary support and because a reasonable investigation would have shown them to be false.

The allegations regarding declining demand before August 2000 were based entirely on the purported statements of confidential witnesses. (*Id.*) To locate potential witnesses, Lead

---

[1] Subsequent events confirm that Lead Plaintiff's "red flag" allegations lacked an evidentiary basis. When Lead Plaintiff amended its complaint, it abandoned *all* claims relating to the first three months of the Class Period (SAC ¶ 1) and *all* allegations regarding the two alleged "red flags." Instead, the SAC alleged that before March 2000, JDSU had acted improperly to create the *appearance* of strong demand. (*Id.* ¶¶ 70-74, 191, 195, 199, 207, 210.) Lead Plaintiff attempted to support those new allegations with reference to confidential witnesses. In discovery, JDSU obtained sworn testimony from those witnesses contradicting Lead Plaintiff's allegations. (SAC ¶¶ 64-79, 191-211; Zeller Decl. ¶¶ 7-9, 31-35, 43-47, 50, 53-55, 58, 64, 66.) Lead Plaintiff ultimately dropped all pre-March 2000 claims before summary judgment. At trial, Lead Counsel told the jury that "JDSU's business in the year 2000, in fact, was booming. Its revenues, in fact, were growing quarter after quarter. The growth, in fact, was explosive." (Decl. of S. Zeller ISO the JDS Defs.' Mot. Re Sanctions Pursuant to Rule 11 ("Zeller Decl.) Ex. 3 at 3480:23-25.)

Plaintiff ran ads in areas where JDSU operated plants. (Zeller Decl. Ex. 42.) One witness testified that he responded to explain that the plant where he worked was "on the up-and-up" and that its management was "top-notch and ethical." (*Id*. ¶ 129.) He first learned that Lead Plaintiff had listed him as "confidential witness" only after JDSU obtained that information in discovery and contacted him. (*Id*.) Another witness testified that he received a payment of $1,200 from Lead Counsel (*id*. ¶ 12.) — a fact that was not disclosed in the SAC. Witness after witness provided testimony that either contradicted the allegations that Lead Plaintiff attributed to them or admitted that they lacked any personal knowledge for those allegations. (*Id*. ¶¶ 5-154.) In many instances, the witnesses explained that Lead Plaintiff had gotten the date wrong by alleging that an event occurred in 2000 when in fact the witness had said it happened in 2001. (*Id.* ¶¶ 14, 24-25, 45, 55, 78, 81, 96, 100-03, 106-07, 110, 126, 145.) In a fraud case premised on "who knew what and when," the timing of events is crucial. A reasonable investigation would have shown that Lead Plaintiff's allegations about this key piece of information lacked support.[2]

The nature and number of discrepancies between Lead Plaintiff's allegations and the confidential witnesses' sworn testimony demonstrate that Lead Counsel either was not diligent or simply ignored facts that did not support their theory of the case. Under these circumstances, sanctions are warranted. *See Avirgan v. Hull*, 932 F.2d 1572, 1581-82 (11th Cir. 1991) (affirming Rule 11 sanctions where witness statements in complaint were contradicted by sworn testimony by witnesses themselves); *see also Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) (allegations that counsel "must have known were false" are sanctionable).[3]

---

[2] Lead Counsel touted the confidential witnesses in opposing Defendants' motion to dismiss the SAC, stating: "[I]f . . . the 50 witnesses haven't filled the gap where we had nine before and what you had suggested was that we needed to fill the gap, we got 41 more witnesses." (Zeller Decl. Ex. 1 at 32; *id*. Ex. 2 at 41.) The Court cited the confidential witnesses in denying Defendants' motion. (Jan. 6, 2005 Order at 14.) In contrast, Lead Plaintiff failed to use testimony from even one confidential witness on summary judgment or at trial. Lead Plaintiff's abandonment of the confidential witness allegations confirms that those allegations lacked an evidentiary basis.

[3] The scope of Lead Plaintiff's misrepresentations about the confidential witnesses distinguishes this case from others. A few discrepancies about material allegations might be explained as coincidence; more than three dozen cannot. If Lead Counsel asserts its investigation as a basis for the confidential witness allegations, the JDSU Defendants request that the Court conduct an *in camera* review of *all records* — from Lead Counsel and their investigators —
(Footnote continues on next page.)

### III. MOTION TO STRIKE THE JDSU DEFENDANTS' ANSWER

Lead Plaintiff again violated Rule 11 by seeking to have certain allegations deemed admitted. Specifically, Lead Plaintiff moved under Rule 12 to strike the JDSU Defendants' answer to 18 paragraphs from the SAC — an application of Rule 12 that the Court stated it had "never seen." (Mot. to Strike [Docket No. 248] at 1; Zeller Decl. Ex. 2. at 11:3.) Lead Plaintiff argued that, because the JDSU Defendants must have known about the activities allegedly described by the confidential witnesses, those allegations should be deemed admitted. (Mot. to Strike [Docket No. 248] at 12-16.)

Lead Plaintiff's motion failed to comply with the requirement of Rule 11. In addition to being untimely, the motion sought "factual determinations that are not appropriate" in connection with a motion to strike. (July 21, 2005 Order at 5, 7.) Moreover, the allegations that Lead Plaintiff sought to have admitted supposedly had been supplied by confidential witnesses who did not support Lead Plaintiff's allegations. (Zeller Decl. ¶¶ 24, 34, 35, 38, 85-86, 88, 93, 97, 101, 110, 122-23, 145, 151.) Accordingly, the Court should find that Lead Plaintiff violated Rule 11 by asking the Court to deem false allegations admitted. *See* Fed. R. Civ. P. 11(b)(1), (3).

### CONCLUSION

The JDSU Defendants request an order finding that Lead Plaintiff and Lead Counsel violated Rule 11 and sanctioning them in the amount of $150,000, which represents only a portion of the reasonable attorneys' fees and other expenses incurred as a direct result of the violations. (*See* Declaration of Raymond M. Hasu, filed herewith, ¶¶ 1-30.)

Dated: December 14, 2007            MORRISON & FOERSTER LLP

By: _____/s/ Jordan Eth_____
        Jordan Eth

Attorneys for the JDSU Defendants

---

(Footnote continued from previous page.)

relating to these witnesses. *See, e.g.*, Fed. R. Civ. P. 11 advisory committee's notes (noting availability of *in camera* review).