1

2

3

4

5

6

7

8

9            UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11                 OAKLAND DIVISION

12

13  In re JDS UNIPHASE CORPORATION          Master File No. C–02–1486 CW (EDL)
    SECURITIES LITIGATION
14                                          **[PROPOSED] FINDINGS OF FACT
    This Document Relates To:  All Actions  AND CONCLUSIONS OF LAW RE
15                                          JDSU DEFENDANTS' MOTION FOR
                                            SANCTIONS PURSUANT TO RULE 11
16                                          OF THE FEDERAL RULES OF CIVIL
                                            PROCEDURE**
17

18

19

20

21

22

23

24

25

26

27

28

Having considered the JDSU Defendants' Motion for Sanctions pursuant to Rule 11 of the Federal Rule of Civil Procedure 11 (the "Motion"), the supporting declarations of Stephanie L. Zeller and Raymond Hasu, Lead Plaintiffs' Opposition, and the entire record in this action, and finding good cause, the Court makes the following Findings of Fact and Conclusions of Law:

## I.   FINDINGS OF FACT

1.      On October 11, 2002, Lead Plaintiff filed the First Amended Consolidated Complaint for Violation of the Securities Laws (the "FAC").  The FAC alleged that JDSU had committed securities fraud by failing to disclose that "customer demand began to slow dramatically in the Spring of 2000 and had reached crisis proportions by June-July 2000."  (FAC ¶ 3.)  Based on this allegation, the FAC asserted multiple claims under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  (FAC ¶¶ 149-290.)

2.      The FAC was brought on behalf of two sub-classes, whose combined class periods ran from July 27, 1999, through July 26, 2001.  (FAC ¶ 1.)  Lead Plaintiff alleged throughout the FAC that the alleged decline in customer demand began in the spring of 2000.  (*See* FAC ¶¶ 3, 33, 35, 36-44, 47-51, 57, 70(a)-(b), 103, 125, 130, 141.)  The FAC included claims on behalf of investors who bought JDSU stock beginning in July 1999, however.  (FAC ¶ 2.)  Lead Plaintiff based these claims on the allegation that, although JDSU "did experience impressive growth through strong demand for its products," Defendants were aware of "red flags signaling that danger lay ahead as early as July 1999."  (FAC ¶ 98.)

3.      On November 3, 2003, this Court dismissed the allegations related to the early part of the class period as "simply illogical" in light of Lead Plaintiff's concessions that "that JDSU reported strong sales for the first year and a half of the two year class period," and that JDSU's "reported sales figures" were accurate.  (November 3, 2003 Order at 3, 10.)

4.      On January 9, 2004, Lead Plaintiff filed the Second Amended Consolidated Complaint for Violation of the Federal Securities Laws (the "SAC").  Like the FAC, the SAC alleged claims under the Securities Act and the Exchange Act.  (SAC ¶¶ 314-443.)  The class period alleged in the SAC began on October 28, 1999, whereas the class period that had been

1
2
3
4
5
6

alleged in the FAC began on July 27, 1999. The SAC did not include the FAC's allegations about "red flags." Instead, the SAC alleged that, before March 2000, JDSU sought to create the appearance of strong demand. (SAC ¶¶ 70-74, 191, 195, 199, 207, 210.) This was contrary to the FAC's allegation that, until the spring of 2000, JDSU benefited from strong demand for its products (*see* FAC ¶ 103), but Lead Plaintiff claimed that its new allegation was based on information obtained from confidential witnesses. (SAC ¶¶ 64-79, 191-211.)

7
8
9
10

5.     Also based on the alleged statements of confidential witnesses, the SAC alleged that in "March 2000, demand for JDS's products began to dramatically decline" (SAC ¶ 12), causing higher inventory levels and forcing management to begin dramatic restructuring of the Company, including "major" layoffs and facilities closings. (SAC ¶¶ 80-90, 96-105, 112-40.)

11
12
13
14

6.     In its order denying Defendants' motion to dismiss the FAC, the Court noted that "Lead Plaintiff has identified more then fifty confidential witnesses." (Jan. 6, 2005 Order at 14.) Lead Plaintiff also represented to this Court that it had relied on the confidential witnesses to survive Defendants' motion to dismiss.

15
16
17
18
19
20
21
22
23
24

7.     Sixteen of the confidential witnesses were deposed and Defendants interviewed and obtained declarations from at least 21 others, as set forth in the December 14, 2007 Declaration of Stephanie L. Zeller ("Zeller Decl"). These confidential witnesses either contradicted the allegations that Lead Plaintiff attributed to them or admitted that they lacked any personal knowledge for those allegations. (Zeller Decl. ¶¶ 5-154.) In many instances, the witnesses explained that Lead Plaintiff had gotten the date wrong by alleging that an event occurred in 2000 when in fact the witness had said it happened in 2001. (*Id.* ¶¶ 14, 24-25, 45, 55, 78, 81, 96, 100-03, 106-07, 110, 126, 145.) One witness also said he was paid $1,200 by Lead Plaintiff. (*Id.* ¶ 12.) Another witness testified that he contacted investigators to disabuse them of Lead Plaintiff's claims. (*Id.* ¶ 129.)

25
26
27
28

8.     On April 21, 2005, Lead Plaintiff moved to strike the JDSU Defendants' Answer with respect to 18 paragraphs from the SAC. (*See* Mot. to Strike at 1.) Each paragraph at issue in the motion was allegedly based on information supplied by confidential witnesses, and Lead Plaintiff's motion sought to have these paragraphs deemed admitted. Lead Plaintiff argued that,

1    because the JDSU Defendants must have known about the activities allegedly described by the

2    confidential witnesses, those allegations should be deemed admitted. (*Id.* at 12-16.) On July 27,

3    2005, the Court denied Lead Plaintiff's motion. (July 27, 2005 Order at 5, 7.)

4          9.     Lead Plaintiff did not rely on testimony from any confidential witnesses to support

5    its claims on summary judgment or at trial. Prior to summary judgment, Lead Plaintiff dropped

6    its claims that JDSU had begun concealing a decline in demand in 1999. At trial, Lead Plaintiff

7    argued to the jury as follows: "JDSU's business in the year 2000, in fact, was booming. Its

8    revenues, in fact, were growing quarter after quarter. The growth, in fact, was explosive." (Trial

9    Tr. 3480:23-25.)

10         10.    Lead Plaintiff did not introduce evidence at trial that would have provided an

11   evidentiary basis for any of its claims relating to the pre-March 2000 class period or the "red flag"

12   allegations from the FAC. The evidence adduced at trial and elsewhere in this case showed that

13   JDSU's industry was booming throughout 1999 and 2000. Much of that evidence was public.

14   **II.     CONCLUSIONS OF LAW**

15        **A.     The Private Securities Litigation Reform Act and Rule 11(b)**

16         11.    As a private class action alleging violations of the Securities Act and the Exchange

17   Act, this case is subject to the Private Securities Litigation Reform Act (the "Reform Act"). *See*

18   15 U.S.C. §§ 77z-1(a)(1), 78u-4(a)(1). The Reform Act requires courts "to include in the record

19   specific findings regarding each party and each attorney representing any party with each

20   requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive

21   pleading, or dispositive motion." *See* 15 U.S.C. §§ 77z-1(c)(1), 78u-4(c)(1); *see also* Civ. L.R.

22   58-1. The Reform Act also provides that "the court shall impose sanctions" on any party or

23   attorney found to have violated Rule 11(b) with respect to any of the specified documents. *See*

24   15 U.S.C. §§ 77z-1(c)(2), 78u-4(c)(2).

25         12.    Rule 11(b) of the Federal Rules of Civil Procedure governs representations to the

26   Court. Allegations in a complaint that are "both baseless and made without a reasonable and

27   competent inquiry" violate Rule 11(b). *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir.

28

2005).  Allegations that counsel "must have known were false" are likewise sanctionable.  *See Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002).

### B.    Lead Plaintiff Violated Rule 11(b) In Three Ways

#### 1.    Pre-March 2000 Allegations in the FAC

13.    Alleging that as early as July 1999, JDSU could foresee a decline in demand was baseless and could not have been the product of a reasonable investigation.  Contrary to Lead Plaintiff's allegation, the record in this case shows that demand for JDSU's products was strong in 1999 and beyond.  Most of this information was publicly-available and could have been accessed by Lead Plaintiff and Lead Counsel before the FAC was filed.

14.    Subsequent events also show that Lead Plaintiff's allegations about "red flags" during the period before March 2000 were not the product of a reasonable investigation.  In the SAC, Lead Plaintiff abandoned the first three months of the class period that had been alleged in the FAC, as well as the FAC's allegations about "red flags."  Instead, Lead Plaintiff made new allegations about the period before March 2000 based on information supplied by confidential witnesses, who contradicted these allegations under oath.  By the eve of summary judgment, Lead Plaintiff had abandoned its claims relating to events before March 2000 and, at trial, Lead Plaintiff acknowledged that JDSU's business "was booming" in 2000.

15.    For all of these reasons, Lead Plaintiff's allegations about events before March 2000 violated Rule 11(b)(3) because they were baseless and made without a reasonable inquiry.  *See Holgate*, 425 F. 3d at 676.

#### 2.    Confidential Witnesses

16.    The SAC's fundamental allegations were based on information allegedly supplied by confidential witnesses, and Lead Plaintiff represented to the Court that it had obtained this information to state a claim that could survive a motion to dismiss.  The bulk of Lead Plaintiff's allegations about confidential witnesses, however, proved false or, at best, lacked any foundation.  As the timing of the events allegedly supplied by confidential witnesses was the core issue in this case, the record indicates that Lead Plaintiff misrepresented the information it obtained from the confidential witnesses to state a claim.  At a minimum, these facts show that Lead Plaintiff failed

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE JDSU DEFS.' MOT. RE SANCTIONS
Master File No. C–02–1486 CW (EDL)
sf-2437539

4

1  to make reasonable inquiries about the information it received from confidential witnesses, and

2  this conduct violated Rule 11(b)(3).  *See Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d

3  1146, 1153 (9th Cir. 2002) (allegations that counsel "must have known were false" are

4  sanctionable); *see also Avirgan v. Hull*, 932 F.2d 1572, 1581-82 (11th Cir. 1991) (affirming Rule

5  11 sanctions where witness statements in complaint were contradicted by sworn testimony by

6  witnesses themselves).

7                          **3.      Motion to Strike the JDSU Defendants' Answer**

8          17.      Because Lead Plaintiff's Motion to Strike the JDSU Defendants' Answer sought to

9  have false allegations supplied by confidential witnesses deemed admitted, the motion was filed

10 for an "improper purpose" and without suitable factual support.  For these reasons, the motion

11 violated Rule 11(b)(1) and (b)(3).

12                 **C.      Sanctions**

13         18.      The JDSU Defendants do not seek to shift the entire cost of defending the case to

14 Lead Plaintiff and Lead Counsel.  Rather, they ask for the sum of $150,000 and have supplied

15 evidence showing that using conservative assumptions, they incurred at least $163,000 as a direct

16 result of the violations discussed here.  *See* Fed. R. Civ. P. 11(c)(2).  The Court has reviewed the

17 evidence supplied by the JDSU Defendants and concludes that imposing sanctions against Lead

18 Plaintiff and Lead Counsel of $150,000 is "sufficient to deter repetition of such conduct or

19 comparable conduct by others."  *See id.*

20         **III.     OTHER FINDINGS**

21         19.      The Court has reviewed the responsive pleadings and dispositive motions filed in

22 this action.  Based on this review, the Court finds that none of the Defendants or their attorneys

23 violated Rule 11(b).

24 Dated: _____

25                                        _____
                                         HONORABLE CLAUDIA WILKEN
26                                         United States District Judge

27         Submitted by Morrison & Foerster LLP, counsel for the JDSU Defendants.

28